UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CARLOS GOMEZ and<br>MARY GILDEA,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)    CRIMINAL NO. 05-10022<br>)<br>)<br>)<br>)<br>) |

## JOINT RESPONSE OF DEFENDANTS CARLOS GOMEZ
## AND MARY GILDEA TO REVISED PRESENTENCE REPORTS

Defendants Carlos Gomez and Mary Gildea (collectively, the "Gomezes" or the

"Defendants") respectfully submit this Joint Response to the revised Presentence Reports

("PSR") dated September 20, 2005. The Gomezes have previously submitted a Sentencing

Memorandum, dated August 15, 2005, that sets forth in detail various legal and factual issues for

the Court to consider in imposing sentence. The Gomezes will not repeat those arguments here.

Rather, this memorandum is solely intended to provide the Court with a brief description of the

documents the Gomezes are submitting in response to certain factual issues left unresolved in the

revised PSR regarding: (1) the Gomezes' payments of $1,000,000 to the Internal Revenue

Service ("IRS"); (2) the Gomezes' payments of $250,000 to the Massachusetts Department of

Revenue; (3) the Gomezes' payments of $886,992 to Liberty Mutual in full satisfaction of

Liberty's audits of Lanco Scaffolding, Inc. ("Lanco") for the policy years 2000, 2001 and 2002;

(4) Carlos Gomez's and Mary Gildea's irreplaceable roles in the success and survival of Lanco;

(5) the status of restitution efforts with the Carpenters' union; (6) the status of restitution efforts

with the Laborers' Union; (7) settlement of the civil lawsuit filed against the Gomezes on June

10, 2005; and (8) the ownership of 2 Hialeah Court, Wilmington, Delaware.

Counsel for Ms. Gildea has reviewed the financial documents referenced herein with

Assistant U.S. Attorney Paul G. Levenson and it is our understanding that the government will

not dispute the fact that the below-referenced payments were, in fact, made by the Gomezes to

the IRS, the Massachusetts Department of Revenue and Liberty Mutual.

## I.    Internal Revenue Service Payments of $1,000,000 (PSR ¶ 45)

The Gomezes do not dispute the IRS loss figure of $831,484 set forth in PSR ¶ 45, but

note that they have already made a $900,000 payment to the IRS in the name of Mary Gildea and

a $100,000 payment to the IRS in the name of Carlos Gomez. These amounts currently show as

credits and can be applied to the $831,481 loss figure if appropriate. In response to Probation's

questions as to whether the checks previously submitted to the Court as evidence of these

payments are legitimate, the Gomezes submit the following additional documentation:

1.    East Cambridge Treasurer Check, dated April 8, 2004, front and back, in
      the amount of $900,000 made payable to the IRS, showing check was
      deposited to U.S. Treasury, and containing Ms. Gildea's social security
      number and the notation "2003 Form 4868" (Exhibit A-1);

2.    Letter from Pamela M. Barry, Chief, Accounts Management Division,
      Department of the Treasury, IRS, dated September 23, 2005, attaching
      record of accounts showing a $900,000 credit to the account of Ms. Gildea
      as of September 19, 2005 for tax period December 2003 (Exhibit A-2);

3.    Check from Carlos Gomez in the amount of $100,000, front and back,
      dated April 15, 2004, made payable to U.S. Treasury, and containing Mr.
      Gomez's social security number and notation "2003 Form 4868" (Exhibit
      A-3);

4.    Letter from Pamela M. Barry, Chief, Accounts Management Division,
      Department of the Treasury, IRS, dated September 23, 2005, attaching
      record of accounts showing a $100,000 credit to the account of Mr.
      Gomez as of September 19, 2005 for tax period December 2003 (Exhibit
      A-4).

2

**II.    Massachusetts Department of Revenue Payments of $250,000 (Gomez PSR ¶ 175; Gildea PSR ¶ 173)**

In response to Probation's questions regarding the checks submitted as evidence that the

Gomezes made a payment of $200,000 on behalf of Mary Gildea to the Massachusetts

Department of Revenue on April 15, 2004, and a payment of $50,000 on behalf of Carlos Gomez

to the Massachusetts Department of Revenue on April 15, 2004, the Gomezes submit the

following:

1.    Cancelled check number 2837, front and back, dated April 15, 2005, in the amount of $200,000 made payable to the "Mass. Dept. of Revenue," with notation "▮▮▮▮▮▮ Mary Gildea" (Exhibit B-1);

2.    Cancelled check number 2838, front and back, dated April 15, 2005, in the amount of $50,000 made payable to the "Mass. Dept. of Revenue," with notation "▮▮▮▮▮▮ Form 2003" (Exhibit B-2);

3.    Excerpt from East Cambridge Savings Bank statement for Mary Gildea/Carlos Gomez for May 1 through May 31, 2004 reflecting debits of $200,000 for check number 2837, and $50,000 for check number 2838 on May 3, 2004 (Exhibit B-3).

**III.    Liberty Mutual Payments Insurance Group Payments of $884,910 (Gomez PSR ¶ 173; Gildea PSR ¶ 171)**

In response to Probation's questions as to whether the Gomezes have made payments to

Liberty Mutual in the amount of $866,992 in restitution for the underpayment of premiums for

policy years 2000, 2001 and 2002, the Gomezes submit the following documents:

1.    Letter from David Reeder, Accountant, IMS Financial Operations, on Liberty Mutual letterhead, to Lanco, dated July 18, 2003, setting forth a balance of $116,113 for the audit on expired policy (012) (the 2002 policy year) requesting one installment payment of $29,029 and three installment payments of $29,028 (Exhibit C-1);

2.    Liberty Mutual Premium Invoice Producer Copy, dated October 7, 2003, addressed to Lanco, assessing additional assigned risks premiums in the following amounts based on further audits: $267,133 for policy year 2002;

$298,829 for policy year 2000; and $400,745 for policy year 2001 for a total of $966,707 (Exhibit C-2);

3.    Letter from David Reeder, Accountant, IMS Financial Operations, on Liberty Mutual letterhead, to Lanco, dated February 20, 2004, setting forth balance of $532,571 for the audits for the policy years 2001 and 2002 (Exhibit C-3);

4.    Liberty Mutual Premium Invoice dated April 22, 2005, addressed to Lanco Scaffolding, setting forth the following credits: $52,351 for policy year 2000; $83,119 for policy year 2002; and $46,150 for policy year 2001, for a total credit of $181,620, and reflecting a balance of $44,364 (Exhibit C-4);

5.    Email from David Reeder of Liberty Mutual, dated June 14, 2005, to Mary Gildea, stating, in part: "We have received your payment of $44,364 on May 18, 2005. All audits for the 010, 011, 012 and 013 policy records are paid to date, subject to any further revisions that might be done at a future time." (Exhibit C-5);

6.    Letter from David Reeder, Supervising Accountant, IMS Financial Operations, on Liberty Mutual letterhead, dated October 12, 2005, enclosing Statement of Account and stating, in relevant part: "This is to advise you that your account is paid up to date, including all audits for prior policy years. Please note that audits are subject to revision." (Exhibit C-6);

7.    Statement of Account for Lanco Scaffolding, dated October 12, 2005, on Liberty Mutual letterhead, also documenting the above referenced assessments on dates indicated, and showing the following payments, which were in connection with audits for the policy years 2000, 2001, and 2002 (Exhibit C-7) (copies of the front and backs of the checks further documenting virtually all of these payments are also attached as Exhibits as noted below):

### Assessments [Credits]

| Date | Assessment [Credit] | Policy |
|---|---|---|
| 06/25/2003 | $116,113.00 (Final Audit) | WC1-31S-320965-0102 |
| 10/07/2003 | $267,133.00 (Revised Audit) | WC1-31S-320965-0102 |
| 10/07/2003 | $298,829.00 (Revised Audit) | WC1-31S-320965-0100 |
| 10/07/2003 | $400,745.00 (Revised Audit) | WC1-31S-320965-0101 |
| 04/22/2005 | $52,351.00 [Credit] | WC1-31S-320965-0100 |
| 04/22/2005 | $83,119.00 [Credit] | WC1-31S-320965-0102 |
| 04/22/2005 | $46,150.00 [Credit] | WC1-31S-320965-0101 |
| TOTAL | $901,200.00 [Assessments minus credits] | |

**Payments**

| Date | Payment | Exhibit |
|---|---|---|
| 09/09/2003 | $29,029.00 | check unavailable |
| 09/30/2003 | $29,028.00 | Exhibit C-8 |
| 10/28/2003 | $29,028.00 | Exhibit C-9 |
| 12/15/2003 | $29,028.00 | check unavailable |
| 12/29/2003 | $100,000.00 | Exhibit C-10 |
| 02/19/2004 | $500,000.00 | Exhibit C-11 |
| 03/24/2004 | $106,515.00 | Exhibit C-12 |
| 05/16/2004 | $44,364.00 | Exhibit C-13 |
| **TOTAL** | **$866,992.00** | |

8.     A chart detailing these assessments and payments is attached hereto as Exhibit C-14.[1]

**IV.     Defendants' Roles in the Success and Survival of Lanco (Addendum to Gomez PSR Obj. # 42, ¶ 182; Addendum to Gildea PSR Obj. # 39, ¶ 180)**

In response to Probation's statement regarding the Gomezes' request for downward departure pursuant to the First Circuit Court of Appeals decision in United States v. Olbres, 99 F.3d 28 (1st Cir. 1996), that "[T]he defendants could hire someone to handle Ms. Gildea's administrative duties, and they could rely on Kendal Moran and the other workers to handle the day-to-day job site operations," the Gomezes submit the following evidence:

1.     Affidavit of Carlos L. Gomez, describing Mr. Gomez's integral role and duties at Lanco (Exhibit D);

2.     Affidavit of Mary E. Gildea, describing Ms. Gildea's integral role and duties at Lanco (Exhibit E);

3.     Affidavit of Kendal I. Moran, describing Mr. Moran's limited role and duties at Lanco (Exhibit F);

---

[1] There appears to be a discrepancy between the $901,200 assessed based on the above-referenced documents and the $866,992 paid for the three policy years 2000, 2001 and 2002, which we are attempting to clarify. However, it is indisputable, as evidenced by Mr. Reeder's letter of October 12, 2005 (Exhibit C-6), that it is Liberty Mutual's position that Lanco has satisfied all of its outstanding liabilities to Liberty based on Liberty's audits for the policy years 2000, 2001, and 2002.

4.      Joint affidavit of Roberto Gomez and Fernando Gomez, describing their limited role and duties at Lanco (in Spanish, with English translation attached) (Exhibit G);

5.      Letters from clients and industry colleagues, describing Mr. Gomez's integral role and duties at Lanco (Exhibit H).

These documents demonstrate that Mr. Moran cannot step into Mr. Gomez's role at Lanco. Exhibit F at ¶ 10. Nor could any of the other workers take over; even Mr. Gomez's brothers, Roberto and Fernando, despite their long tenures and experience at Lanco, are not equipped to perform Mr. Gomez's duties. See Exhibit G at ¶ 7. Mr. Gomez performs a number of functions at Lanco that simply cannot be assumed by anyone else in the company, because no one else possesses the necessary skills. See Exhibit D at ¶¶ 2-7. Many clients employ Lanco's scaffolding services specifically because of the expertise that Mr. Gomez himself brings to each project. See Exhibit H. Additionally, Ms. Gildea performs innumerable duties requiring close coordination with Mr. Gomez and intimate familiarity with the workers and customers, beginning in the early morning hours and continuing into the late evenings and weekends, to ensure that Lanco runs efficiently and professionally. These duties cannot be readily assigned to an outside individual, and her absence would deprive the workers of a vital behind-the-scenes influence. See Exhibit E at ¶¶ 3-5.

## V.      Status of Restitution to Carpenters' Union (Gomez PSR ¶ 174; Gildea PSR ¶ 172)

Attached as Exhibit I is a letter from Harry Dow, Executive Director of the Carpenters Benefit Funds, dated October 14, 2005, reflecting an understanding that the Gomezes will make full restitution, and setting forth Mr. Dow's plea for leniency for the Gomezes.

## VI.     Status of Restitution to Laborers' Union (Gomez PSR ¶ 172; Gildea PSR ¶ 170)

Attached as Exhibit J is a letter from counsel for Mr. Gomez to Thomas Masiello, Administrator of the Massachusetts Laborers' Benefit Funds, dated October 13, 2005, reflecting

6

discussions for a repayment plan and reflecting the Gomezes' commitment to make full restitution to the Laborers.

## VII.   Settlement of Civil Lawsuit (Gomez PSR ¶ 144; Gildea PSR ¶ 142)

In reference to the civil class-action lawsuit filed against the Gomezes on June 10, 2005, the parties to that suit entered into a settlement agreement on September 27, 2005.  The Gomezes have remitted full payment pursuant to the settlement agreement, and the civil case has been dismissed with prejudice.  The Settlement Agreement and Release of Claims; Stipulation and Order of Dismissal With Prejudice; and copies of East Cambridge Treasurer Checks in the amounts of $30,000, $30,000, and $20,000, are attached as Exhibit K.

## VIII.   Ownership of 2 Hialeah Court, Wilmington, Delaware Property (Gomez PSR ¶ 138; Gildea PSR ¶ 136)

Attached as Exhibit L is a deed reflecting the transfer of ownership of the 2 Hialeah Court, Wilmington, Delaware property from Mary Gildea to her sister Graceann Gildea, on January 28, 2003.

Respectfully submitted,


/s/ Harry L. Manion III
Harry L. Manion III, BBO # 317440
Christopher J. Cunio, BBO # 634518
Cooley Manion Jones LLP
21 Custom House Street
Boston, MA  021110
617-737-3100
*Counsel for Defendant Carlos Gomez*


/s/ Joseph F. Savage, Jr.
Joseph F. Savage, Jr., BBO # 443030
Kevin P. McGrath, BBO # 550123
Goodwin Procter LLP
Exchange Place
Boston, MA 02109
617-570-1000
*Counsel for Defendant Mary Gildea*


Dated:  October 14, 2005

149689.1

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 14th day of October, 2005, a copy of the Joint Response of Defendants Carlos Gomez and Mary Gildea to Revised Presentence Reports was served via first-class mail upon U.S. Probation Officer Stephanie K. Henshaw and Assistant U.S. Attorney Paul G. Levenson.

/s/ Christopher J. Cunio _____

9

Exhibit A

Exhibit A-1

### Web Client-NetImage East Cambridge Savings



| | |
|---|---|
| **Account Number** | 3002367 |
| **Amount** | 900,000.00 |
| **Posting Date** | 04/27/2004 |
| **Check Number** | 109280 |
| **TranCode** | 0 |
| **Routing Number** | 211370419 |

**Tracer Number** R: B: S:11280530

C View Query Results  C View Front  C View Back  ⦿ View Front AND Back

**EAST CAMBRIDGE SAVINGS BANK**       TREASURER CHECK

109280

Date April 08, 2004

Pay to the Order of ********* INTERNAL REVENUE SERVICE *********       Amount $ *****900,000.00

Nine Hundred Thousand and 00/100 ********************************       DOLLARS

2003 Form 486B

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

Two signatures required over $50,000

⑆109280⑆ ⑈211370419⑈ 3002367⑈       ⑆0090000000⑆

⑆211-7041⑆       ⑆0090000000⑆

FLEET

FLEET

MALDEN, MA 04242004    U.S. TREASURY

Exhibit A-2

**Department of the Treasury**
**Internal Revenue Service**

In reply refer to:  0152314523
September 23, 2005    LTR 387(ICP) SB
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    200312        000

P.O. Box 606
Buffalo, NY 14225-0606


MARY E GILDEA
33 EARLE ST
SOMERVILLE, MA 02143


Taxpayer Identification Number: ████████

Tax Period(s):  December 31, 2003   December 31, 2004

Form:

Dear Taxpayer:

Thank you for your inquiry dated September 23, 2005.

We have enclosed the record of accounts you requested.  Please examine your records and let us know about any difference you find.

If you have any questions, please call us toll free at 1-800-829-8374.

If you prefer, you may write to us at the address shown at the top of the first page of this letter.

Sincerely,

Pamela M. Barry
Chief, Accounts Management Division


Enclosure(s): Record of accounts

PAGE NO-0001                                    IRS EMPLOYEE 0152314523

DATE REQUESTED 09-23-2005                         PRINT DATE 09-23-2005

FORM NUMBER: 1040                                TAX PERIOD: DEC  2003

                    TAXPAYER IDENTIFICATION NUMBER: ███████0
            ** SPOUSE TAXPAYER IDENTIFICATION NUMBER: ███████*

        MARY E GILDEA
        33 EARLE ST
        14 DARRELL DR
        NORTH READING         MA 01864-1541-145         BODC-SB BODCLC-W

--- ANY MINUS BELOW SIGNIFIES A CREDIT AMOUNT ---

        ACCOUNT BALANCE:        900,000.00-
        ACCRUED INTEREST:             0.00   AS OF 09-19-2005
        ACCRUED PENALTY:              0.00   AS OF 09-19-2005

        ACCOUNT BALANCE
           PLUS ACCRUALS:       900,000.00-


        RETURN NOT PRESENT FOR THIS ACCOUNT

                            TRANSACTIONS

                                                        MONEY AMOUNT
CODE            EXPLANATION               DATE        (IF APPLICABLE)
 460 EXTENSION OF TIME TO FILE         04-15-2004
     EXT. DATE   08-15-2004
 670 SUBSEQUENT PAYMENT                04-15-2004        900,000.00-
 460 EXTENSION OF TIME TO FILE         08-15-2004
     EXT. DATE   10-15-2004

Exhibit A-3



Exhibit A-4

**Department of the Treasury**
**Internal Revenue Service**

In reply refer to: 0152314523
September 23, 2005    LTR 387(ICP) SB
████████    200312    000

P.O. Box 606
Buffalo, NY 14225-0606


CARLOS L GOMEZ
33 EARLE ST
SOMERVILLE, MA 02143


        Taxpayer Identification Number: ████████
              Tax Period(s):  December 31, 2003    December 31, 2004

                    Form:

Dear Taxpayer:

Thank you for your inquiry dated September 23, 2005.

We have enclosed the record of accounts you requested.  Please examine your
records and let us know about any difference you find.

If you have any questions, please call us toll free at 1-800-829-8374.

If you prefer, you may write to us at the address shown at the top of the
first page of this letter.

                              Sincerely,

                              *Pamela M. Barry*

                              Pamela M. Barry
                              Chief, Accounts Management Division


Enclosure(s): Record of accounts

PAGE NO-0001

IRS EMPLOYEE 0152314523

DATE REQUESTED 09-23-2005

PRINT DATE 09-23-2005

FORM NUMBER: 1040

TAX PERIOD: DEC  2003

```
                   TAXPAYER IDENTIFICATION NUMBER:  ███████1
         ** SPOUSE TAXPAYER IDENTIFICATION NUMBER:  ███████0*
```

CARLOS L GOMEZ
14 DARRELL DR
NORTH READING         MA 01864-1541-145          BODC-SB BODCLC-W

--- ANY MINUS BELOW SIGNIFIES A CREDIT AMOUNT ---

```
  ACCOUNT BALANCE:        100,000.00-
  ACCRUED INTEREST:             0.00   AS OF 09-19-2005
  ACCRUED PENALTY:              0.00   AS OF 09-19-2005

  ACCOUNT BALANCE
     PLUS ACCRUALS:        100,000.00-
```

RETURN NOT PRESENT FOR THIS ACCOUNT

TRANSACTIONS

|      |                                              |            | MONEY AMOUNT |
|------|----------------------------------------------|------------|--------------|
| CODE | EXPLANATION                                  | DATE       | (IF APPLICABLE) |
| 460  | EXTENSION OF TIME TO FILE                    | 04-15-2004 |              |
|      | EXT. DATE  08-15-2004                        |            |              |
| 670  | SUBSEQUENT PAYMENT                           | 04-15-2004 | 100,000.00-  |
| 460  | EXTENSION OF TIME TO FILE                    | 08-15-2004 |              |
|      | EXT. DATE  10-15-2004                        |            |              |

Exhibit B

Exhibit B-1

FROM : LANCO SCAFFOLDING INC        FAX NO. : 617+776+9260        Oct. 13 2005 07:35AM P2

---

CARLOS GOMEZ
33 EARLE STREET
SOMERVILLE, MA 02143

EAST CAMBRIDGE SAVINGS BANK
CAMBRIDGE, MA 02141-1303

2837

NUMBER

53-704/113    412021770000

PAY: Two Hundred Thousand 00/100    DATE 4-15-04    AMOUNT 200,000.00

TO THE
ORDER
OF    Mass Dept of Revenue

MARY GILDEA    2003 FORM M-4868

AUTHORIZED SIGNATURE

Mary Gildea

#00 20000000#

---

Seq# 22886420, Ck# 2637, Acct# 1737303477, Amt. $200,000.00, Date 0

LOCATION:781 551 3410        RX TIME   10/11 '05 09:51

# Exhibit B-2

FROM : LANCO SCAFFOLDING INC          FAX NO. : 617+776+9260          Oct. 13 2005 07:36AM P3

| | | | | 2838 |
|---|---|---|---|---|
| CARLOS GOMEZ | | EAST CAMBRIDGE SAVINGS BANK | | NUMBER |
| 33 EARLE STREET | | CAMBRIDGE, MA 02141-1363 | | |
| SOMERVILLE, MA 02143 | | 53-704/2112 | | |

PAY: *Lifty Thousand* ⁰⁰/100  412021770136  DATE 7/15/04  AMOUNT 50,000.00

TO THE ORDER OF: *MASS Dept of Revenue*

*FORM 2003  M 4868*

AUTHORIZED SIGNATURE

⑈000 5000000⑈

Seq# 22887820, Ck# 2838, Acct# 1737303477, Amt. $50,000.00, Date 0

# Exhibit B-3

FROM : LANCO SCAFFOLDING INC        FAX NO. : 617+776+9260        Oct. 12 2005 11:50AM P2

## EAST CAMBRIDGE SAVINGS BANK
*A Symbol of Community Strength Since 1854*
Belmont • Cambridge • Somerville • Waltham

617.354.7700
E-mail info@ecsb.com
Web www.ecsb.com
Customer Service Center 866.354.ECSB (3272)
The Banking Connection℠ 24-hour banking services
617.354.7700 / 800.869.3423

MARY GILDEA OR
CARLOS GOMEZ
33 EARLE ST
SOMERVILLE MA  02143-4203

ACCOUNT NUMBER:

STATEMENT BEGIN DATE: 06-01-2004
STATEMENT END DATE: 05-31-2004

CHECKS ENCLOSED:                50

STATEMENT SUMMARY

| ACCOUNT NUMBER | TYPE | | BALANCE |
|---|---|---|---|
| 1737303477 | BASIC CHECKING | | 30,059.08 |

## ACCOUNT SUMMARY FOR BASIC CHECKING -

| STARTING BALANCE | + | DEPOSITS | + | INTEREST PAID | - | WITHDRAWALS | - | SERVICE CHARGES | = | ENDING BALANCE |
|---|---|---|---|---|---|---|---|---|---|---|
| 271,460.30 | | 81,047.04 | | 0.00 | | 322,404.26 | | 44.00 | | 30,059.08 |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## TRANSACTIONS FOR BASIC CHECKING - 1737303477

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 05-04 | DEPOSIT | 2,744.42 |
| 05-06 | DESCRIPTIVE DEPOSIT WIR TRF MARY GILDEA TRADE SECURITIES | 22,000.00 |
| 05-06 | DESCRIPTIVE WITHDRAWAL WIRE TRF FEES | -3.00 |
| 05-06 | DEPOSIT | 851.31 |
| 05-10 | DEPOSIT | 851.31 |
| 05-12 | EXTERNAL DEPOSIT MBNA  - ACH ADVNCE | 7,300.00 |
| 05-20 | DEPOSIT | 7,000.00 |
| 05-22 | DEPOSIT | 3,800.00 |
| 05-27 | DEPOSIT | 36,500.00 |
| 05-29 | EXCESS CHECK CHARGE | -41.00 |
| 05-29 | MAINTENANCE SERVICE CHARGE | -3.00 |

## CHECKS FOR BASIC CHECKING - 1737303477

| DATE | CHECK NUMBER | AMOUNT | DATE | CHECK NUMBER | AMOUNT |
|---|---|---|---|---|---|
| 05-05 | 177 | 63.00 | 05-03 | 2851 | 201.19 |
| 05-07 | 178 | 10,000.00 | 05-03 | 2852 | 153.74 |
| 05-03 | 2837* | 200,000.00 | 05-05 | 2853 | 130.60 |
| 05-03 | 2838 | 50,000.00 | 05-06 | 2854 | 8,450.00 |
| 05-03 | 2847* | 386.71 | 05-06 | 2855 | 3,075.61 |
| 5-03 | 2848 | 20.90 | 05-04 | 2856 | 3,425.00 |
| 05-03 | 2849 | 15.00 | 05-03 | 2857 | 219.33 |
| 05-03 | 2850 | 15.00 | 05-07 | 2858 | 137.79 |

Exhibit C

Exhibit C-1



July 18, 2003

78 Remittance Drive Suite 1837
Chicago, IL 60678-1837
800-653-7583

LANCO SCAFFOLDING INC
ATTN: CARLOS GOMEZ
33 EARLE ST
SOMERVILLE, MA 02143
Fax: 617-776-9260

    *NOTE : CORRECTED ACCOUNT #*

Dear Mr. Gomez:

Thank you for your fax requesting payment terms on the outstanding balance on your account. I have reviewed your account with your agent, Bob Marino. Your active (U13) policy is already on a monthly pay plan and has been billed accordingly. The balance of $35,509.00 for the endorsement on your active policy was due 7/16/03 and should be sent now.

We are generally permitted to allow payment terms on an audit balance in equal monthly installments extending up to 90 days from the original date due. After review with Mr. Marino, I will extend that term to 120 days. The balance of $116,113.00 for the audit on your expired (012) policy will be paid as follows:

| Amount | Due |
|---|---|
| $29,029.00 | 8/15/03 |
| $29,028.00 | 9/15/03 |
| $29,028.00 | 10/15/03 |
| $29,028.00 | 11/15/03 |

These terms are given with the understanding that you will stay current on all billings for your active policy. This includes the next installment of $7,906.00, which is due 7/28/03. Please remember that failure to meet these terms will result in the cancellation of your policy, with the full premium due, and referral of your audit balance to a collection agency. Please send all payments to the following address:

Liberty Mutual
75 Remittance Drive Suite 1837
Chicago, IL 60675-1837

(This is NOT an overnight mailing address. Contact customer service at 1-800-685-7899 for overnight address.)

Please remember to include your above account number with your payments to ensure accurate posting. This letter will serve as a final notice. You will not receive future invoices for this agreement. Allow sufficient mailing time for your payment to arrive on or before the due date. Your anticipated cooperation is appreciated.

Sincerely,

David G Reeder, Accountant
IMS Financial Operations

CC: Bob Marino; Fax: 781-289-4147

Exhibit C-2

# Premium Invoice
## Producer Copy



**NAME:** LANCO SCAFFOLDING INC
**ADDRESS:** 33 EARLE ST
SOMERVILLE MA 02143-0000

**PRODUCER:** ALJANE INSURANCE INC
**ADDRESS:** 281 BEACH STREET
REVERE MA 02151

**ACCOUNT #:** 132096500
**INVOICE #:** 1001200055

**INVOICE DATE:** 10/07/2003
**DUE DATE:** 10/27/2003

**BILLING INFORMATION:**

| DATE | CONTRACT NUMBER | | TRANSACTION | | AMOUNT |
|------|-----------------|---|-------------|---|--------|
| | | | PREVIOUS BALANCE | $ | 65,962.00 |
| 10/07/2003 | WC1-31S-320965-0102 | REVISED AUDIT | ASSIGNED RISK PREMIUM | $ | 255,142.00 |
| | | | MA DIA ASSESSMENT | $ | 11,991.00 |
| 10/07/2003 | WC1-31S-320965-0100 | REVISED AUDIT | ASSIGNED RISK PREMIUM | $ | 287,336.00 |
| | | | MA DIA ASSESSMENT | $ | 11,493.00 |
| 10/07/2003 | WC1-31S-320965-0103 | ENDORSEMENT 3 | ASSIGNED RISK PREMIUM | $ | 118,417.00 |
| | | | MA DIA ASSESSMENT | $ | 5,949.00 |
| 10/07/2003 | WC1-31S-320965-0101 | REVISED AUDIT | ASSIGNED RISK PREMIUM | $ | 383,583.00 |
| | | | MA DIA ASSESSMENT | $ | 17,162.00 |

**PLEASE REMIT ACCOUNT BALANCE OF** $ 1,157,035.00

"Due Date" noted here applies to current charges. The previous balance
(if applicable) is payable according to the terms expressed on the
original billing notice.

**MESSAGES:** For invoice questions, contact Liberty Mutual at (800) 653-7893.
or E-mail: IMS@LibertyMutual.com
For coverage questions, contact your producer at (781) 289-4631.
Please refer to the back of this invoice for important information.
Please return this remittance slip with your payment and use the enclosed envelope.



**INVOICE DATE:** 10/07/2003
**DUE DATE:** 10/27/2003
**ACCOUNT BALANCE:** 1,157,035.00

**ACCOUNT NUMBER:** 132096500
**INVOICE NUMBER:** 1001200055

☐ Make any changes to Insured or Producer Address on the
back of this remittance slip and check this box.

**PAYMENT AMOUNT:** _____

*Please note this is not an overnight mailing address

Producer Copy

ALJANE INSURANCE INC
281 BEACH STREET
REVERE MA 02151

LIBERTY MUTUAL INSURANCE GROUP
75 REMITTANCE DR, SUITE 1837
CHICAGO IL 60675-1937

0003019001 132096500 0001001200055 0041 20301231 00000000000 00115703500 6

Exhibit C-3

*(handwritten marks at top)* # 953 $20.00

**Liberty Mutual.**

February 20, 2004

PO Box 7202
Portsmouth, NH 03802-7202
800-653-7893

LANCO SCAFFOLDING INC
ATTN: MARY
33 EARLE ST
SOMERVILLE, MA 02143
FAX: 617-776-9260

Account Number: ▮▮▮▮▮
Current Balance Due: $532,571.00

Dear Policyholder,
This letter shall serve to confirm our agreement of payment terms regarding the outstanding balance on your account. The balance of $532,571 for the audits on your prior (011 and 012) policies will be paid as follows:

| Amount | Due | |
|---|---|---|
| $106,515.00 | 3/15/04 | *paid 3-15-04 CK # 6705* |
| $213,028.00 | 4/15/04 | |
| $213,028.00 | 5/15/04 | |

These terms are given with the understanding that you will stay current on any balance due for your active policy. Please remember that failure to meet these terms will result in the cancellation of your active policy, with the full premium due, and referral of your audit balance to a collection agency. Please send all of the above payments to my attention at the following address:

> Liberty Mutual
> Attn: David Reeder - IMS Financial
> PO Box 7202
> Portsmouth, NH 03802-7202

(This is NOT an overnight mailing address. Contact customer service at 1-800-653-7893 for overnight address.)
Please remember to include your above account number with your payments to ensure accurate posting. This letter will serve as a final notice. You will not receive future invoices for this agreement. Allow sufficient mailing time for your payment to arrive on or before the due date. Your anticipated cooperation is appreciated.

Sincerely,

David G Reeder, Accountant
IMS Financial Operations

Exhibit C-4

# Premium Invoice



**NAME:**  LANCO SCAFFOLDING INC
**ADDRESS:**  33 EARLE ST
SOMERVILLE MA 02143-0000

**PRODUCER:**  ALJANE INSURANCE INC
**ADDRESS:**  281 BEACH STREET
REVERE MA 02151

**ACCOUNT #:**  ▇▇▇▇▇▇▇
**INVOICE #:**  3001808966

**INVOICE DATE:** 04/22/2005
**DUE DATE:**  05/12/2005

**BILLING INFORMATION:**

| DATE | CONTRACT NUMBER | | TRANSACTION | AMOUNT | |
|------|-----------------|---|-------------|--------|---|
| | | | PREVIOUS BALANCE | $ | 225,984.00 |
| 04/22/2005 | WC1-31S-320965-0100 | REVISED AUDIT | ASSIGNED RISK PREMIUM | $ | 50,338.00CR |
| | | | MA DIA ASSESSMENT | $ | 2,013.00CR |
| 04/22/2005 | WC1-31S-320965-0102 | REVISED AUDIT | ASSIGNED RISK PREMIUM | $ | 79,388.00CR |
| | | | MA DIA ASSESSMENT | $ | 3,731.00CR |
| 04/22/2005 | WC1-31S-320965-0101 | REVISED AUDIT | ASSIGNED RISK PREMIUM | $ | 44,174.00CR |
| | | | MA DIA ASSESSMENT | $ | 1,976.00CR |

**PLEASE REMIT ACCOUNT BALANCE OF**   $     44,364.00

"Due Date" noted here applies to current charges.  The previous balance,
(if applicable) is payable according to the terms expressed on the
original billing notice.

**MESSAGES:**   For invoice questions, contact Liberty Mutual at (800) 653-7893.
or E-mail:  IMS@LibertyMutual.com
For coverage questions, contact your producer at (781) 289-4631.
Please refer to the back of this invoice for important information.
Please return this remittance slip with your payment and use the enclosed envelope.

Exhibit C-5

----- Original Message -----
**From:** Reeder, David
**To:** Mary Gildea
**Sent:** Thursday, June 30, 2005 9:20 AM
**Subject:** RE: Balance due on account for Lanco, 1-320965-00

Mary: We received your payment of $17,918 on 6/29 for the 014 policy audit. All policy period audits have now been paid to date, subject to any future revisions.

In addition, your current 015 policy is now paid to date through installment #3 due 6/28. Your account has a zero balance at this time, with 6 more monthly installments of $13,666 scheduled to bill on the 015 policy, subject to any changes that might be made per endorsement at a future date.

　　Dave Reeder


----- Original Message -----
**From:** Reeder, David
**To:** marygildea@comcast.net
**Sent:** Tuesday, June 14, 2005 1:49 PM
**Subject:** Balance due on account for Lanco, 1-320965-00

Mary: As per our discussion, the most recent audit revisions for the 010, 011 and 012 policies left a balance due of $44,364. We received your payment of $44,364 on 5/16. All audits for the 010, 011, 012 and 013 policy periods are paid to date, subject to any further revisions that might be done at a future time.

The current balance due on account is $36,107. This includes the recently completed 014 policy audit of $17,918 due 6/1, an endorsement on the 015 policy of $4523 due 6/1, and the next regular monthly installment on the 015 of $13,666 due 6/28.

Dave Reeder, Accountant
IMS Financial Operations
(Phone) 800-653-7893
(Fax) 603-334-8161

# Exhibit C-6

FROM : LANCO SCAFFOLDING INC          PHONE NO. : 617 776 9260          Oct. 12 2005 01:49PM P1


**Liberty Mutual.**™

October 12, 2005

LANCO SCAFFOLDING INC
ATTN: MARY GILDEA
33 EARLE ST
SOMERVILLE, MA 02143
FAX: 617-776-9260

Account #:   1-320965-00

Dear Mary,

This is to advise that your account is paid up to date, including all audits for prior policy periods. Please note that audits are subject to revision. Your next installment payment of $13,666.00 on your active policy is due 10/30/05. A statement of account has been provided.

Sincerely,

David G Reeder, Supervising Accountant
IMS Financial Operations
800-653-7893

| Post-it® Fax Note | 7671 | Date 10/12/05 | # of pages ▶ 7 |
|---|---|---|---|
| To KeVin | | From Mum. | |
| Co./Dept. | | Co. | |
| Phone # | | Phone # | |
| Fax # | | Fax # | |

Exhibit C-7

FROM : LANCO SCAFFOLDING INC        PHONE NO. : 617 776 9260        Oct. 12 2005 01:49PM P2
10-13-2005 12:42:04

## Statement Of Account



| Name: | LANCO SCAFFOLDING INC | Broker: | C J MCCARTHY INS AGENCY INC |
|---|---|---|---|
| Address: | 33 EARLE ST | | 299 BALLARDVALE STREET |
| | SOMERVILLE  MA  02143-0000 | | WILMINGTON      MA   01887 |

Statement Date:  10/12/2005
Account #: ▇▇▇▇      Account Balance:  $ 13,666.00

| Date | Transaction | Transaction Description | Contract Number | Transaction Amount |
|---|---|---|---|---|
| 10/10/2005 | 1001964503 INSTALLMENT 7 | | WC2-31S-320965-0105 | 13,666.00 |
| 9/26/2005 | P 8 | 1001919195 | PAYMENT RECEIVED, THANK-YOU | 13,666.00CR |
| 9/8/2005 | 1001949202 INSTALLMENT 6 | | WC2-31S-320965-0105 | 13,666.00 |
| 8/8/2005 | 1001919195 INSTALLMENT 5 | | WC2-31S-320965-0105 | 13,666.00 |
| 8/5/2005 | P 19 | 1001891425 | PAYMENT RECEIVED, THANK-YOU | 13,666.00CR |
| 7/22/2005 | P 1 | 1001828366 | PAYMENT RECEIVED, THANK-YOU | 13,666.00CR |
| 7/13/2005 | 1001891425 INSTALLMENT 4 | | WC2-31S-320965-0105 | 13,666.00 |
| 6/29/2005 | P 5 | REG CASH | PAYMENT RECEIVED, THANK-YOU | 12,761.00CR |
| 6/29/2005 | P 4 | REG CASH | PAYMENT RECEIVED, THANK-YOU | 905.00CR |
| 6/29/2005 | P 3 | REG CASH | PAYMENT RECEIVED, THANK-YOU | 4,523.00CR |
| 6/29/2005 | P 2 | REG CASH | PAYMENT RECEIVED, THANK-YOU | 17,918.00CR |
| 6/8/2005 | 1001865669 INSTALLMENT 3 | | WC2-31S-320965-0105 | 13,666.00 |
| 5/18/2005 | P 7 | 1001793195 | PAYMENT RECEIVED, THANK-YOU | 12,761.00CR |
| 5/16/2005 | P 41 | 3001808966 | PAYMENT RECEIVED, THANK-YOU | 44,364.00CR |
| 5/12/2005 | 1001828366 ENDORSEMENT 1 | | WC2-31S-320965-0105 | 4,523.00 |
| 5/12/2005 | 1001828362 FINAL AUDIT | | WC5-31S-320965-0104 | 17,918.00 |
| 5/9/2005 | 1001822928 INSTALLMENT 2 | | WC2-31S-320965-0105 | 12,761.00 |

Please detach remittance slip carefully and return with your payment in the enclosed envelope.



Statement Date:    10/12/2005          Account Number: ▇▇▇▇

Balance Due      $ 13,666.00

Payment Amount: _____       ☐ Make any changes to Insured or Producer address on the back of this remittance slip, and check this box.

LANCO SCAFFOLDING INC            LIBERTY MUTUAL INSURANCE GROUP
33 EARLE ST                      75 REMITTANCE DR. SUITE 1837
SOMERVILLE  MA  02143-0000       CHICAGO  IL  60675-1837

FROM : LANCO SCAFFOLDING INC          PHONE NO. : 617 776 9260          Oct. 12 2005 01:50PM P3

| Date | Transaction | Transaction Description | Contract Number | Transaction Amount |
|---|---|---|---|---|
| 4/22/2005 | C 3001808966 | REVISED AUDIT | WC1-31S-320965-0101 | 46,150.00CR |
| 4/22/2005 | C 3001808397 | REVISED AUDIT | WC1-31S-320965-0102 | 83,119.00CR |
| 4/22/2005 | C 3001808231 | REVISED AUDIT | WC1-31S-320965-0100 | 52,351.00CR |
| 4/20/2005 | P 18  1001782144 | PAYMENT RECEIVED, THANK-YOU | | 12,761.00CR |
| 4/8/2005 | I 1001792195 | INSTALLMENT 1 | WC2-31S-320965-0105 | 12,761.00 |
| 3/29/2005 | I 1001782146 | DEPOSIT | WC2-31S-320965-0105 | 38,549.00 |
| 3/8/2005 | P 1  0037496500 | PAYMENT RECEIVED, THANK-YOU | | 42,841.00CR |
| 1/28/2005 | P 12  1001657172 | PAYMENT RECEIVED, THANK-YOU | | 19,515.00CR |
| 12/31/2004 | P 4  1001634914 | PAYMENT RECEIVED, THANK-YOU | | 19,515.00CR |
| 12/9/2004 | I 1001657172 | INSTALLMENT 9 | WC5-31S-320965-0104 | 11,997.00 |
| 12/2/2004 | P 9  REG CASH | PAYMENT RECEIVED, THANK-YOU | | 19,515.00CR |
| 11/29/2004 | P 5  1001601914 | PAYMENT RECEIVED, THANK-YOU | | 19,515.00CR |
| 11/9/2004 | I 1001634914 | INSTALLMENT 8 | WC5-31S-320965-0104 | 11,998.00 |
| 10/8/2004 | I 1001601914 | INSTALLMENT 7 | WC5-31S-320965-0104 | 11,998.00 |
| 9/29/2004 | P 8  1001566904 | PAYMENT RECEIVED, THANK-YOU | | 19,515.00CR |
| 9/8/2004 | I 1001566904 | INSTALLMENT 6 | WC5-31S-320965-0104 | 11,998.00 |
| 8/28/2004 | P 8  1001634105 | PAYMENT RECEIVED, THANK-YOU | | 19,515.00CR |
| 8/11/2004 | P 18  3001480882 | PAYMENT RECEIVED, THANK-YOU | | 19,515.00CR |
| 8/9/2004 | I 1001634105 | INSTALLMENT 5 | WC5-31S-320965-0104 | 11,998.00 |
| 7/9/2004 | P 8  1001463655 | PAYMENT RECEIVED, THANK-YOU | | 19,515.00CR |
| 7/8/2004 | I 1001466180 | INSTALLMENT 4 | WC5-31S-320965-0104 | 11,998.00 |
| 7/2/2004 | C 3001495562 | ENDORSEMENT 1 | WC5-31S-320965-0104 | 45,086.00CR |
| 7/2/2004 | I 1001495432 | REVISED AUDIT | WC1-31S-320965-0103 | 25,988.00 |
| 6/21/2004 | C 3001480882 | FINAL AUDIT | WC1-31S-320965-0103 | 92,270.00CR |
| 6/19/2004 | P 2  1001431059 | PAYMENT RECEIVED, THANK-YOU | | 19,515.00CR |
| 6/9/2004 | I 1001463655 | INSTALLMENT 3 | WC5-31S-320965-0104 | 19,515.00 |
| 6/13/2004 | P 2  0026356500 | PAYMENT RECEIVED, THANK-YOU | | 19,515.00CR |

Please detach remittance slip carefully and return with your payment in the enclosed envelope.

 Liberty Mutual

Statement Date:    10/12/2005

Balance Due    $ 13,666.00

Payment Amount:

Account Number: ▇▇▇▇

Make any changes to Insured or Producer address on the back of this remittance slip, and check this box.

LANCO SCAFFOLDING INC
33 EARLE ST
SOMERVILLE  MA  02143-0000

LIBERTY MUTUAL INSURANCE GROUP
75 REMITTANCE DR, SUITE 1837
CHICAGO IL  60675-1837

FROM : LANCO SCAFFOLDING INC        PHONE NO. : 617 776 9260        Oct. 12 2005 01:50PM P4

10-12-2003  12:13:09

| Date | Transaction | | Transaction Description | Contract Number | Transaction Amount |
|---|---|---|---|---|---|
| 5/10/2004 | | 1001431059 | INSTALLMENT 2 | WC5-315-320965-0104 | 19,515.00 |
| 4/14/2004 | | 1001406323 | INSTALLMENT 1 | WC5-315-320965-0104 | 19,515.00 |
| 4/14/2004 | | 1001406322 | DEPOSIT | WC5-315-320965-0104 | 58,811.00 |
| 3/24/2004 | P | 25 | REG CASH | PAYMENT RECEIVED, THANK-YOU | 106,515.00CR |
| 3/24/2004 | P | 11 | QUOTE CASH | PAYMENT RECEIVED, THANK-YOU | 76,605.00CR |
| 2/19/2004 | P | 51 | REG CASH | PAYMENT RECEIVED, THANK-YOU | 600,000.00CR |
| 12/29/2003 | P | 15 | REG CASH | PAYMENT RECEIVED, THANK-YOU | 100,000.00CR |
| 12/29/2003 | P | 11 | 1001233287 | PAYMENT RECEIVED, THANK-YOU | 7,906.00CR |
| 12/18/2003 | | 1001274063 | INSTALLMENT 9 | WC1-315-320965-0103 | 21,739.00 |
| 12/15/2003 | P | 44 | REG CASH | PAYMENT RECEIVED, THANK-YOU | 29,028.00CR |
| 12/8/2003 | P | 2 | 1001200370 | PAYMENT RECEIVED, THANK-YOU | 7,906.00CR |
| 11/10/2003 | | 1001233287 | INSTALLMENT 8 | WC1-315-320965-0103 | 21,739.00 |
| 11/3/2003 | P | 2 | 1001200055 | PAYMENT RECEIVED, THANK-YOU | 7,906.00CR |
| 10/28/2003 | P | 19 | REG CASH | PAYMENT RECEIVED, THANK-YOU | 29,028.00CR |
| 10/15/2003 | P | 9 | 1001167099 | PAYMENT RECEIVED, THANK-YOU | 7,906.00CR |
| 10/8/2003 | | 1001200370 | INSTALLMENT 7 | WC1-315-320965-0103 | 21,739.00 |
| 10/7/2003 | | 1001200056 | REVISED AUDIT | WC1-315-320965-0101 | 400,745.00 |
| 10/7/2003 | | 1001200064 | ENDORSEMENT 3 | WC1-315-320965-0103 | 124,358.00 |
| 10/7/2003 | | 1001200053 | REVISED AUDIT | WC1-315-320965-0100 | 208,829.00 |
| 10/7/2003 | | 1001200052 | REVISED AUDIT | WC1-315-320965-0102 | 257,133.00 |
| 9/30/2003 | P | 45 | REG CASH | PAYMENT RECEIVED, THANK-YOU | 29,028.00CR |
| 9/26/2003 | P | 9 | 1001108671 | PAYMENT RECEIVED, THANK-YOU | 7,906.00CR |
| 9/9/2003 | P | 3 | REG CASH | PAYMENT RECEIVED, THANK-YOU | 29,029.00CR |
| 9/8/2003 | | 1001167099 | INSTALLMENT 6 | WC1-315-320965-0103 | 7,906.00 |
| 8/15/2003 | P | 43 | REG CASH | PAYMENT RECEIVED, THANK-YOU | 43,415.00CR |
| 8/11/2003 | | 1001140739 | INSTALLMENT 5 | WC1-315-320965-0103 | 7,906.00 |
| 7/8/2003 | | 1001108671 | INSTALLMENT 4 | WC1-315-320965-0103 | 7,906.00 |

Please detach remittance slip carefully and return with your payment in the enclosed envelope.


Liberty Mutual

| | | |
|---|---|---|
| Statement Date: | 10/12/2005 | Account Number: ▮▮▮▮▮ |
| Balance Due | $ 13,688.00 | |
| Payment Amount: | _____ | ☐ Make any changes to insured or Producer address on the back of this remittance slip, and check this box. |

LANCO SCAFFOLDING INC
33 EARLE ST
SOMERVILLE  MA  02143-0000

LIBERTY MUTUAL INSURANCE GROUP
75 REMITTANCE DR, SUITE 1837
CHICAGO IL  60675-1837

FROM : LANCO SCAFFOLDING INC          PHONE NO. : 617 776 9260          Oct. 12 2005 01:51PM P5

10-12-2005  12:43:00

| Date | Transaction | Transaction Description | Contract Number | Transaction Amount |
|------|-------------|------------------------|-----------------|-------------------|
| 7/2/2003 | P  56 | 1001077655 | PAYMENT RECEIVED, THANK-YOU | 1,988.00CR |
| 6/26/2003 | I | 1001097562 ENDORSEMENT 2 | WC1-31S-320985-0103 | 35,509.00 |
| 6/25/2003 | I | 1001095541 FINAL AUDIT | WC1-31S-320985-0102 | 116,113.00 |
| 6/9/2003 | I | 1001077655 INSTALLMENT 3 | WC1-31S-320985-0103 | 1,988.00 |
| 5/27/2003 | P  11 | 1001049602 | PAYMENT RECEIVED, THANK-YOU | 1,988.00CR |
| 5/8/2003 | I | 1001049602 INSTALLMENT 2 | WC1-31S-320985-0103 | 1,988.00 |
| 5/5/2003 | P  23 | 3001030594 | PAYMENT RECEIVED, THANK-YOU | 350.00CR |
| 4/16/2003 | C | 3001030594 ENDORSEMENT 1 | WC1-31S-320985-0103 | 894.00CR |
| 4/9/2003 | I | 1001021946 INSTALLMENT 1 | WC1-31S-320985-0103 | 2,209.00 |
| 4/9/2003 | I | 1001021946 DEPOSIT | WC1-31S-320985-0103 | 6,871.00 |
| 3/19/2003 | P  17 | 0020093600 | PAYMENT RECEIVED, THANK-YOU | 7,796.00CR |
| 1/8/2003 | P  30 | 1000919848 | PAYMENT RECEIVED, THANK-YOU | 3,036.00CR |
| 12/9/2002 | I | 1000919848 INSTALLMENT 9 | WC1-31S-320985-0102 | 3,036.00 |
| 11/25/2002 | P  28 | 1000895569 | PAYMENT RECEIVED, THANK-YOU | 3,036.00CR |
| 11/8/2002 | I | 1000895569 INSTALLMENT 8 | WC1-31S-320985-0102 | 3,036.00 |
| 11/6/2002 | P  33 | 1000872725 | PAYMENT RECEIVED, THANK-YOU | 992.00CR |
| 10/8/2002 | I | 1000872725 INSTALLMENT 7 | WC1-31S-320985-0102 | 3,036.00 |
| 9/9/2002 | I | 1000849424 INSTALLMENT 6 | WC1-31S-320985-0102 | 3,036.00 |
| 8/8/2002 | I | 1000826742 INSTALLMENT 5 | WC1-31S-320985-0102 | 3,036.00 |
| 7/19/2002 | C | 3000812603 ENDORSEMENT 3 | WC1-31S-320985-0102 | 3,126.00CR |
| 7/8/2002 | I | 1000802552 INSTALLMENT 4 | WC1-31S-320985-0102 | 3,453.00 |
| 7/8/2002 | P  17 | 1000786044 | PAYMENT RECEIVED, THANK-YOU | 8,701.00CR |
| 6/23/2002 | P  20 | 1000782328 | PAYMENT RECEIVED, THANK-YOU | 8,483.00CR |
| 6/14/2002 | I | 1000786044 ENDORSEMENT 2 | WC1-31S-320985-0102 | 218.00 |
| 6/10/2002 | I | 1000782328 ENDORSEMENT 1 | WC1-31S-320985-0102 | 1,297.00 |
| 6/10/2002 | I | 1000782323 FINAL AUDIT | WC1-31S-320985-0101 | 3,956.00 |
| 6/10/2002 | I | 1000780632 INSTALLMENT 3 | WC1-31S-320985-0102 | 3,230.00 |

Please detach remittance slip carefully and return with your payment in the enclosed envelope.



Liberty
Mutual.

Statement Date:     10/12/2005                          Account Number: ▮▮▮  ▮▮▮▮▮

Balance Due          $ 13,686.00

                                                        ☐ Make any changes to insured or Producer address on
Payment Amount:      _____                             the back of this remittance slip, and check this box.


LANCO SCAFFOLDING INC              LIBERTY MUTUAL INSURANCE GROUP
33 EARLE ST                        75 REMITTANCE DR, SUITE 1837
SOMERVILLE  MA  02143-0000         CHICAGO  IL  60675-1837

FROM : LANCO SCAFFOLDING INC          PHONE NO. : 617 776 9260          Oct. 12 2005 01:51PM P6

| Date | Transaction | Transaction Description | Contract Number | Transaction Amount |
|---|---|---|---|---|
| 5/28/2002 | P 27 | 1000757396 | PAYMENT RECEIVED, THANK-YOU | 3,230.00CR |
| 5/6/2002 | I 1000757396 INSTALLMENT 2 | | WC1-31S-320965-0102 | 3,230.00 |
| 4/26/2002 | P 27 | 1000738739 | PAYMENT RECEIVED, THANK-YOU | 1,026.00CR |
| 4/8/2002 | I 1000738739 INSTALLMENT 1 | | WC1-31S-320965-0102 | 3,230.00 |
| 4/4/2002 | I 1000734868 DEPOSIT | | WC1-31S-320965-0102 | 9,934.00 |
| 3/28/2002 | P 1 | 0018302200 | PAYMENT RECEIVED, THANK-YOU | 11,235.00CR |
| 12/31/2001 | P 44 | 1000664382 | PAYMENT RECEIVED, THANK-YOU | 2,745.00CR |
| 12/10/2001 | I 1000664382 INSTALLMENT 9 | | WC1-31S-320965-0101 | 2,745.00 |
| 11/30/2001 | P 16 | 1000647189 | PAYMENT RECEIVED, THANK-YOU | 2,737.00CR |
| 11/8/2001 | I 1000647189 INSTALLMENT 8 | | WC1-31S-320965-0101 | 2,737.00 |
| 10/29/2001 | P 27 | 1000627679 | PAYMENT RECEIVED, THANK-YOU | 2,737.00CR |
| 10/8/2001 | I 1000627679 INSTALLMENT 7 | | WC1-31S-320965-0101 | 2,737.00 |
| 10/1/2001 | P 10 | 1000607548 | PAYMENT RECEIVED, THANK-YOU | 2,737.00CR |
| 9/10/2001 | I 1000607548 INSTALLMENT 5 | | WC1-31S-320965-0101 | 2,737.00 |
| 9/4/2001 | P 6 | 1000589785 | PAYMENT RECEIVED, THANK-YOU | 2,737.00CR |
| 8/8/2001 | I 1000589785 INSTALLMENT 5 | | WC1-31S-320965-0101 | 2,737.00 |
| 7/30/2001 | P 25 | 1000571460 | PAYMENT RECEIVED, THANK-YOU | 2,737.00CR |
| 7/9/2001 | I 1000571460 INSTALLMENT 4 | | WC1-31S-320965-0101 | 2,737.00 |
| 6/29/2001 | P 19 | REG CASH | PAYMENT RECEIVED, THANK-YOU | 2,737.00CR |
| 6/26/2001 | P 16 | REG CASH | PAYMENT RECEIVED, THANK-YOU | 4,249.00CR |
| 6/12/2001 | P 12 | 1000558264 | PAYMENT RECEIVED, THANK-YOU | 2,387.00CR |
| 6/12/2001 | P 11 | 1000543610 | PAYMENT RECEIVED, THANK-YOU | 2,595.00CR |
| 6/8/2001 | I 1000564719 INSTALLMENT 3 | | WC1-31S-320965-0101 | 2,737.00 |
| 5/30/2001 | I 1000549323 FINAL AUDIT | | WC1-31S-320965-0100 | 5,095.00 |
| 5/30/2001 | I 1000549323 ENDORSEMENT 1 | | WC1-31S-320965-0101 | 27.00 |
| 5/30/2001 | I 1000549322 ENDORSEMENT 1 | | WC1-31S-320965-0101 | 1,514.00 |
| 5/17/2001 | I 1000543610 ENDORSEMENT 1 | | WC1-31S-320965-0101 | 208.00 |

Please detach remittance slip carefully and return with your payment in the enclosed envelope.


Liberty
Mutual.

| | |
|---|---|
| Statement Date: | 10/12/2005 |
| Balance Due: | $ 13,666.00 |
| Payment Amount: | |

Account Number: ▮▮ ▮▮▮▮

⬜ Make any changes to insured or Producer address on the back of this remittance slip, and check this box.

LANCO SCAFFOLDING INC
33 EARLE ST
SOMERVILLE  MA  02143-0000

LIBERTY MUTUAL INSURANCE GROUP
75 REMITTANCE DR. SUITE 1837
CHICAGO  IL  60675-1837

FROM : LANCO SCAFFOLDING INC    PHONE NO. : 617 776 9260    Oct. 12 2005 01:52PM P7
10-12-2005  12:42:09

| Date | Transaction | | Transaction Description | Contract Number | Transaction Amount |
|------|------|------|------|------|------|
| 3/8/2001 | I | 1000536264 | INSTALLMENT 2 | WC1-318-320965-0101 | 2,387.00 |
| 4/30/2001 | P | 61 | 1000523257 | PAYMENT RECEIVED, THANK-YOU | 2,348.00CR |
| 4/9/2001 | I | 1000523257 | INSTALLMENT 1 | WC1-318-320965-0101 | 2,387.00 |
| 4/2/2001 | I | 1000519827 | DEPOSIT | WC1-315-320965-0101 | 7,361.00 |
| 3/12/2001 | P | 45 | 0008625000 | PAYMENT RECEIVED, THANK-YOU | 7,522.00CR |
| 1/2/2001 | P | 24 | 1000468814 | PAYMENT RECEIVED, THANK-YOU | 2,318.00CR |
| 12/8/2000 | I | 1000468814 | INSTALLMENT 9 | WC1-318-320965-0100 | 2,318.00 |
| 11/29/2000 | P | 6 | 1000457367 | PAYMENT RECEIVED, THANK-YOU | 2,320.00CR |
| 11/8/2000 | I | 1000457367 | INSTALLMENT 8 | WC1-318-320965-0100 | 2,320.00 |
| 10/30/2000 | P | 22 | 1000445078 | PAYMENT RECEIVED, THANK-YOU | 2,320.00CR |
| 10/9/2000 | I | 1000445078 | INSTALLMENT 7 | WC1-318-320965-0100 | 2,320.00 |
| 9/21/2000 | P | 30 | 1000433584 | PAYMENT RECEIVED, THANK-YOU | 2,320.00CR |
| 9/8/2000 | I | 1000433584 | INSTALLMENT 6 | WC1-318-320965-0100 | 2,320.00 |
| 8/25/2000 | P | 29 | 1000421277 | PAYMENT RECEIVED, THANK-YOU | 2,320.00CR |
| 8/8/2000 | I | 1000421277 | INSTALLMENT 5 | WC1-318-320965-0100 | 2,320.00 |
| 7/24/2000 | P | 10 | 1000409978 | PAYMENT RECEIVED, THANK-YOU | 2,320.00CR |
| 7/11/2000 | I | 1000409978 | INSTALLMENT 4 | WC1-318-320965-0100 | 2,320.00 |
| 6/8/2000 | I | 1000397544 | INSTALLMENT 3 | WC1-315-320965-0100 | 2,320.00 |
| 5/25/2000 | P | 13 | 1000386370 | PAYMENT RECEIVED, THANK-YOU | 2,320.00CR |
| 5/15/2000 | P | 21 | 1000380779 | PAYMENT RECEIVED, THANK-YOU | 2,320.00CR |
| 5/8/2000 | I | 1000386370 | INSTALLMENT 2 | WC1-318-320965-0100 | 2,320.00 |
| 4/24/2000 | P | 1 | REG CASH | PAYMENT RECEIVED, THANK-YOU | 2,320.00CR |
| 4/21/2000 | I | 1000380779 | INSTALLMENT 1 | WC1-315-320965-0100 | 2,320.00 |
| 4/21/2000 | I | 1000380778 | DEPOSIT | WC1-315-320965-0100 | 7,174.00 |
| 3/31/2000 | P | 39 | NEW BUS | PAYMENT RECEIVED, THANK-YOU | 7,174.00CR |

**Balance Due:**    $ 13,665.00

"Balance Due" is payable upon receipt. Please remit promptly.

Please detach remittance slip carefully and return with your payment in the enclosed envelope.



| | |
|------|------|
| Statement Date: | 10/12/2005 |
| Balance Due | $ 13,665.00 |
| Payment Amount: | _____ |

Account Number: ███ ████

☐ Make any changes to Insured or Producer address on the back of this remittance slip, and check this box.

LANCO SCAFFOLDING INC
33 EARLE ST
SOMERVILLE MA  02143-0000

LIBERTY MUTUAL INSURANCE GROUP
75 REMITTANCE DR, SUITE 1837
CHICAGO  IL  60675-1837

Exhibit C-8



LANCO SCAFFOLDING INC.
33 EARLE STREET
SOMERVILLE, MA   02143

EAST CAMBRIDGE SAVINGS BANK

53-7041/2113

NUMBER

5932

PAY: Twenty-Nine Thousand Twenty-Eight and 0/100
Dollars

DATE Sep 15, 2003   AMOUNT
*****$29,028.00*

TO THE
ORDER
OF

NORTHERN TRST CHICAGO>0710001525
801 S. CANAL      >0710001525
Liberty Mutual Insurance Co228560 09-29-03
75 REMITTANCE DR. SUITE 1837
CHICAGO, IL  60675-1837
1-320965-00

⑈211370419⑈                    ⑇000 290 2800⑇

CR TO ACCT OF PAYEE ABSENCE OF ENDORSE GTD 99637-4921-38

343228560 042 FLEET

2397 023 21 99 10012003
0202654961

343228560  4761000000000 4761 64

0710-0015-2
0710-0015-2

343327311 09-30-03

Seq# 43290310, Ck# 5932, Acct# 1808005740, Amt. $29,028.00, Date 1/2003

LOCATION:781 551 3410            RX TIME  09/28 '05 11:50

Exhibit C-9



# Exhibit C-10

1-320965-00

**LANCO SCAFFOLDING INC.**
33 EARLE STREET
SOMERVILLE, MA  02143

EAST CAMBRIDGE SAVINGS BANK

53-7041/2113

**6440**

NUMBER

PAY: One Hundred Thousand and 0/100 Dollars

DATE  Dec 17, 2003    AMOUNT

****$100,000.00*

17

TO THE
ORDER
OF

Liberty Mutual Insurance Co.
75 REMITTANCE DR. SUITE 1837
CHICAGO, IL  60675-1837  354470763  6129188164... ...

THIS DOCUMENT CONTAINS HEAT SENSITIVE INK, TOUCH OR PRESS HERE - RED IMAGE DISAPPEARS WITH HEAT.

13209650    ⑈00100000000⑈

CR TO ACCT OF PAYEE ABSENCE OF ENDORSE GTD S8P37-4350-17

0802021929

NORTHERN TRST CHICAGO>071000152<
801 B. CANAL        >071000152<
            354470763  12-26-03

Seq# 13046750, Ck# 6440, Acct# 1808005740, Amt. $100,000.00, Date 0

Exhibit C-11

# EAST CAMBRIDGE
## SAVINGS BANK

**TREASURER CHECK**

9

107389

Date January 23, 2004

Pay to the
Order of    ****Liberty Mutual Insurance****

Amount  $ *****500,000.00*

Five Hundred Thousand and 00/100************************************************  DOLLARS

Memo  LAMCO SCAFFOLDING    350137475  89391........

Two signatures required over $50,000

⑈00 50000000⑈

CR TO ACCT OF PAYEE ABSENCE OF ENDORSE GTD 99837-4985-9

NORTHERN TRST  CHICAGO>071000152<
801 S. CANAL        >071000152<
                 350137475 02-18-04

Seq# 11734610, Ck# 107389, Acct# 3002367, Amt. $500,000.00, Date 0

Exhibit C-12

Item Viewer-Details

## 🐝 Web Client-NetImage East Cambridge Savings



| | | |
|---|---|---|
| **Account N**[redacted] | | **Tracer Number** R: B: S:13892870 |
| **Amount** | 106,515.00 | |
| **Posting Date** | 03/25/2004 | |
| **Check Number** | 6705 | |
| **TranCode** | 0 | |
| **Routing Number** | 211370419 | |

○ View Query Results  ○ View Front  ○ View Back  ◉ View Front AND Back

LANCO SCAFFOLDING INC.
33 EARLE STREET
SOMERVILLE, MA  02145

EAST CAMBRIDGE SAVINGS BANK

53-7041/2115

6705

NUMBER

PAY: One Hundred Six Thousand Five Hundred Fifteen and 00/100
Dollars

DATE    Mar 15, 2004

AMOUNT    *****$106,515.00

TO THE
ORDER
OF

Liberty Mutual Insurance Co.
75 REMITTANCE DR. SUITE 1037
CHICAGO, IL  60675-1037

333704142  5094186164100 5118-55

132006500

⑆006705⑆ ⑈211370419⑈ 018080057140⑈ ⑆0010651500⑆

FLEET

0802475943

NORTHERN TRST CHICAGO>071000152<
801 S. CANAL      >071000152<
333704142 03-23-04

Exhibit C-13

## Web Client-NetImage East Cambridge Savings



| | |
|---|---|
| **Account N** ▮▮▮▮▮ | **Tracer Number** R: B: S:14206015 |
| **Amount** | 44,364.00 |
| **Posting Date** | 05/17/2005 |
| **Check Number** | 7635 |
| **TranCode** | 0 |
| **Routing Number** | 211370419 |

○ View Query Results  ○ View Front  ○ View Back  ⦿ View Front AND Back

LANCO SCAFFOLDING INC.
33 EARLE STREET
SOMERVILLE, MA  02143

EAST CAMBRIDGE SAVINGS BANK

7635
NUMBER

53-7041/2113

PAY: Forty-Four Thousand Three Hundred Sixty-Four and 00/100
Dollars

DATE
May 2, 2005

AMOUNT
******$44,364.00

TO THE
ORDER
OF

Liberty Mutual Insurance Co.
75 REMITTANCE DR. SUITE 1837
CHICAGO, IL  60675-1837

337099641  417018861GA105 4176 26

1320965

⑈007635⑈ ⑆211370419⑈ 01808005740⑈       ⑈000044364000⑈

NORTHERN TRST CHICAGO 071000152
801 S. CANAL
337099641
BANK OF AMERICA NA NAT
01000138 E3273 1242-041-041 1320965

0170711608

Exhibit C-14

## LIBERTY MUTUAL INSURANCE ACCOUNT BALANCES

| Date | Policy | Amount Assessed | Payment | Balance |
|---|---|---|---|---|
| 6/25/03 | 102 | 110,900<br>5,213<br>116,113 | | 116,113 |
| 9/9/03 | | | 29,029 | 87,084 |
| 9/30/03 | | | 29,028 | 58,056 |
| 10/7/03 | 102 | 255,142<br>11,991<br>267,133 | | |
| 10/7/03 | 100 | 287,336<br>11,493<br>298,829 | | |
| 10/7/03 | 101 | 383,583<br>17,162<br>400,745<br><br>Total = 966,707 | | 1,024,763 |
| 10/28/03 | | | 29,028 | 995,735 |
| 12/15/03 | | | 29,028 | 966,707 |
| 12/29/03 | | | 100,000 | 866,707 |
| 2/19/04 | | | 500,000 | 366,707 |
| 3/24/04 | | | 106,515 | 260,192 |
| 4/22/05 | 100 | [52,351] credit | | 207,841 |
| 4/22/05 | 102 | [83,119] credit | | 124,722 |
| 4/22/05 | 101 | [46,150] credit | | 78,572 |
| 5/16/05 | | | 44,364 | 34,208 |
| | | | | |
| Totals | | $901,200 | $866,992 | |

## ASSESSMENTS

| Date | Policy | Amount | Government | Payments |
|---|---|---|---|---|
| 10/703 | 100 | 298,829 | | |
| 4/22/05 | 100 | [52,351] | | |
| Totals | | 246,478 | 222,558 | |
| | | | | |
| 10/7/03 | 101 | 400,745 | | |
| 4/22/05 | 101 | [46,150] | | |
| Totals | | 354,595 | 303,926 | |
| | | | | |
| 6/25/03 | 102 | 116,113 | | |
| 10/7/03 | 102 | 267,133 | | |
| 4/22/05 | 102 | [83,119] | | |
| Totals | | 300,127 | 274,575 | |
| Totals | | $901,200 | $801,059 | $866,992 |

Exhibit D

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) Criminal No. 05-10022 |
| CARLOS GOMEZ and | ) |
| MARY GILDEA, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## AFFIDAVIT OF CARLOS L. GOMEZ

I, Carlos L. Gomez, hereby depose and state as follows:

1.    I work at Lanco Scaffolding, Inc. ("Lanco"), which is located at 33 Earle Street,

Somerville, Massachusetts, 02143. I founded Lanco in 1984. I make this statement in support of

Defendants' Sentencing Memorandum, previously submitted to this Court on August 15, 2005.

### MR. GOMEZ'S GENERAL JOB DUTIES AT LANCO

2.    I maintain all client relations for Lanco, and I am always actively seeking new

clients and projects. I have working relationships with many of the general contractors,

subcontractors, and architects in the local construction industry. Those relationships are one

source for our scaffolding jobs, as Lanco has many "repeat customers," and our current clients

also refer new business to us. When I talk to a new client for the first time, we usually discover

that we know the same people, and this helps me develop a relationship quickly with the new

client. We also regularly receive phone calls from architects assembling budget prices for future

projects, and I will give them recommendations and a "ballpark" figure to use for the scaffolding

cost. The architects will then refer the general contractors on the projects to Lanco when the

time comes for them to "bid" the projects. In addition, when I am traveling between our job sites

during the day, I will stop by sites where I see a new building is going up to find out who the general contractor is, and if there will be any scaffolding needs.

3.     I also train all of the employees in scaffolding installation. I have worked in the scaffolding industry for over 30 years, since I came to the United States, so I have much more experience than anyone else at Lanco to be able to teach proper and safe scaffolding erection techniques. A new employee at Lanco is assigned to a scaffolding crew as a "ground man" when he first begins, under my supervision. He job is to pass equipment from the truck up to the crew members on the scaffolding using a rope and pulley. There are right and wrong (and even dangerous) ways to do this; I teach him how to tie the rope around the equipment so that the piece hangs properly when it is hoisted into the air, and so the crew member on the scaffolding can easily and safely receive it. This way, the new employee learns all the components that go into building a scaffolding, and that the scaffolding has to be installed in a specific sequence. A new employee will remain a ground man until he is familiar with the different scaffolding components. Sometimes the new employee never graduates beyond this point, because I am not secure with his abilities. He will then continue working on the ground.

4.     When a new employee has graduated to the scaffolding, I teach him the proper way to lift the scaffolding planks, which weigh 60 pounds each, and pass them while balancing on the scaffolding. Again, there is a correct way to lift a scaffolding plank, and there are many difficult and incorrect ways to do it. I also teach him how to set the bases, which are the foundation on which the scaffolding will be built. The bases must be as level as possible to ensure the safety of the workers and trades on the scaffolding, so a great deal of care goes into this process. Again, sometimes a new employee will never graduate to this point if I do not feel secure with his abilities.

2

5.      I am at the job site with a new employee at all times.  If I have to leave the job site for any reason, I take the new employee with me.  This continues until I am satisfied that he has mastered the necessary skills and has become comfortable working on the scaffolding.

6.      I also train all of the employees in safety issues, from wearing safety glasses and protective gloves to knowing how to use fall protection equipment (i.e., safety harnesses).  We hold regular safety meetings to discuss various issues on our projects.  The safety procedures differ from project to project, and I design special safety procedures where necessary.  For example, we recently completed a scaffolding job for a new building for Boston University along the Massachusetts Turnpike where the crew was erecting scaffolding high in the air while the building was being constructed.  Because the building did not yet exist, there was no place for the scaffolding crew to tie off their safety harnesses.  I created a system whereby they could tie off as they were erecting the scaffolding.  As another example, I designed a new scaffolding component called a "snowcap," which is attached to the highest frame on a project and slopes so that snow will slide off the scaffolding, so the crew members and the trades working on the project do not have to worry about slipping and falling on wet, icy planking.  Last winter we used the snowcaps everywhere, due to the heavy snowfall.  Recently Lanco received a phone call from an architect who wanted to get information about the snowcaps, which he had seen on a project Lanco did at Amherst College; he wanted to use them on an upcoming project that would be undertaken during the winter months.

7.      In addition, and as described in fuller detail below, I oversee all of the scaffolding projects on a daily basis, traveling between the different sites to monitor job progress and address any issues or concerns that may arise.  With Kendal Moran ("Moran"), I visit new and potential project sites and devise price estimates.  I am also the only individual at Lanco who does

3

scaffolding layout drawings for projects when they are required. In the evenings, I assist my wife, Mary Gildea ("Gildea") in determining the job schedule for the following day.

## MR. GOMEZ'S TYPICAL WORK DAY

8.      I typically wake up around 3:00 a.m., and leave my home in North Reading to travel to the Lanco warehouse/office in Somerville by 4:30. I arrive at the warehouse by 5:00 a.m.

9.      When I arrive at Lanco, I meet the warehouse crew, which is composed of three workers who work only in the Lanco warehouse (i.e., they do not do scaffolding). We open the warehouse gates and the garage doors, start up the trucks to warm the engines, and back the trucks out into the loading yard to be prepared for the day's jobs. Mr. Moran also arrives at Lanco at this time.

10.      The daily job schedule is completed the previous night by Ms. Gildea and myself. For each job site that day, scaffolding must either be installed or dismantled. Thus, the trucks either have to be loaded with scaffolding to accommodate a new installation, or the trucks have to be unloaded so that the scaffolding from a job can be dismantled and loaded onto an empty truck.

11.      I coordinate all of the activity at the warehouse beginning at 5:00. The crews usually go out to about 5 to 7 jobs a day, so at least that many vehicles need to be prepared (usually, one or two trucks go to each site, depending on the size of the job). The scaffolding has to be loaded efficiently so that the most equipment possible can be transported to the job site in one vehicle. In addition, the equipment has to be loaded in the opposite order of how it will be pulled out of the truck to erect the scaffolding (i.e., the first thing loaded into the truck must be the last thing that will be pulled out of the truck). I am able to orchestrate this entire effort

4

quickly, based upon my years of experience loading and unloading trucks when I worked in Chicago, so that the trucks can pull out of the yard in a convoy and arrive at their respective job sites on time.

12.     I ensure that all the right equipment is loaded into the trucks. If, when they arrive at a job site, the crew discovers that something was left behind, I am the one who returns to the warehouse to retrieve it. Alternatively, I am also the one who obtains replacement or substitute parts when the pieces we have brought to a site will not work. For example, at a recent job in Gloucester, MA, we discovered that the drill bits we had brought to anchor the scaffolding into a rock ledge were snapping. I went to procure the proper bits. I do these errands myself, instead of sending one of the workers, because I know exactly what to get, whereas one of the crew members might not get the right pieces resulting in valuable time lost on the project.

13.     The crews pull out of the warehouse and depart for their jobs around 6:30 a.m. For jobs that are a long distance away, the crew will usually leave even earlier, sometimes as early as 5:00 a.m. Of course, in those situations, I arrive at the warehouse much earlier to supervise the preparation of their trucks.

14.     I pull out with the convoy when the crews leave Lanco. I attend to the job site with the highest level of difficulty first to oversee the crew. Once we arrive at the site, I ensure that the trucks are positioned as close to the building as possible, so that the scaffolding can be "fed" from the trucks to the building most efficiently. I am usually assisted by a police detail, and I coordinate with the police on site to situate the vehicles. Next, I meet with the on-site supervisor to review the logistics and particulars for that specific project.

15.     When Lanco begins a new scaffolding erection project, I direct the workers in constructing an initial "mock-up" area on the building to determine the correct frame height for

the various trades that will be working off the scaffolding. For example, if the trades include roofing, I have to ensure that the scaffolding gets to the roof level and that a deck is installed at that level to accommodate the roofers, the new roof material, and the old roof debris. If the trades are masons, rather than roofers, the decking has to be installed in an entirely different layout to accommodate the various mason duties and materials. The "mock-up" area is done to determine the proper combination of scaffolding frames that will be needed to reach the top of the building. Scaffolding frames are six, five, four, and three feet high, so a different combination of frames is required for each job. Once a tower has been erected to the roof level, the crew leader can see the exact combination of frames that I have used, and can then use the "mock-up" area as a template for the rest of the job.

16.     I perform this task at most of the job sites. If I am especially busy, my brothers Roberto and Fernando can assist me. I will show them the site and explain how the scaffolding should be erected. Once I have explained it to them, my brothers can set the bases on which the scaffolding will be built.

17.     As an example, on September 23, 2005, I had to set up a crew on Newbury Street in Boston to erect a "canopy protection" (a type of scaffolding providing for a covered walkway on the sidewalk, so pedestrians can pass underneath and be shielded from falling debris) for the Brooks Brothers store. The outside of the building was being restored, but Brooks Brothers wanted to maintain retail traffic, so there had to be several openings along the canopy protection at the store entrances so that customers could easily access the store. The client also wanted the scaffolding to be as aesthetically presentable as possible. I had to deal with the store and the project managers on site myself to ensure that everyone was happy with what the crew was

doing. This was something the crew leader could not do, because most of the scaffolding workers do not speak English.

18.    I travel throughout most of the day between our various job sites. On this same day, September 23, after situating the crew at the Newbury Street site, I traveled to Dartmouth, MA, where Lanco is scheduled to work on the new Dartmouth Police Station. I met with the project manager on the site and reviewed the sequence of the work (i.e., which area we would work on first, and how we would accommodate the various needs of the contractor's work). The ground on the site had gaping holes around the perimeter of the structural steel, and I had to confirm that the project manager would fill them so my crew would have somewhere solid to set bases on which to erect the scaffolding. The project manager also gave me engineering drawings for this new building, which I took to review and confirm that the dimensions of the building were the same as what we agreed to when Lanco first bid the job several months earlier.

19.    From Dartmouth I traveled to Peabody, MA, where we are erecting scaffolding for installation of the new building systems in the ceiling of the City Hall, to meet with the city's architect. This project requires that the scaffolding be passed in through the roof of the building, and it is to be erected on top of the trusses that support the building's roof. Thus, the workers must first build a tower that will go as high as the building's roof level, through which they will pass the scaffolding. Then they will erect the scaffolding on the roof of the City Hall and build a "dance floor" for the tradesmen to work on while they install the new building systems. I had to ensure that the trusses of the building and the roof support system would support the scaffolding, the trades working on the scaffolding, and their equipment and materials.

20.    For this project, I had also designed a scaffolding layout for the client. After I manually drew the layout, I had my architect Miguel Linera, who worked at Lanco while

7

attending college and now runs his own architecture firm, copy my finished drawing on a computer so we could submit a computer printout to the engineer for certification. Mr. Linera does not alter my scaffolding drawings in any way when he inputs them into the computer; all he does is copy the hand-drawn layout I have created.

21.    I am the only person at Lanco who knows how to do these scaffolding layout drawings. Scaffolding jobs that are over one hundred lineal feet high require a scaffolding drawing that has been approved by an engineer. Approximately thirty percent of Lanco's projects require a scaffolding layout drawing. I also often do layouts for clients with complex projects so they can better visualize how the scaffolding will be erected on their building.

22.    From the Peabody City Hall, I went to South Boston, to the Gate of Heaven Church. This is one of the largest scaffolding projects currently being undertaken in Boston. The entire church is covered in scaffolding, and the pinnacles are extremely high. The building is extremely complicated: there are turrets, pinnacles, and myriad elevations, as well as stairways, nooks and crannies. In addition, the church's stained-glass windows need to be scaffolded from the inside. It is a very complex and intricate job.

23.    The Gate of Heaven Church is one of my "pet projects," and I have spent a great deal of time overseeing it. I talk with the architect for the church on a regular basis, and participate in weekly job site meetings where the architect, representatives from the Archdiocese of Boston, and the various contractors' project managers discuss the intricacies of the job and its progress.

24.    From South Boston, I returned to Newbury Street to check on the progress of the Brooks Brothers canopy and on the job at the Church of the Covenant across the street, which is also entirely covered in scaffolding.

8

25.    After checking in which the crews, I returned to the Lanco warehouse. I typically return to the warehouse around 4:00 p.m. each day. I am currently readying the yard for the coming winter and inclement weather, which involves coordinating open-top dumpsters to dispose of spent plywood and two-by-fours, and any other debris that could impede snowplows. I am also setting up a "painting corral," which I and the other workers will use in the winter months to sand and paint the equipment in preparation for spring.

26.    By this time, the scaffolding crews are also returning to the warehouse. I review the status of the projects with all of the crews, making sure that they have completed certain tasks and addressing any questions or issues that have arisen during the day. At this time, I also determine which of the project sites will require my attention the next day.

27.    I also review new projects and pricing estimates with Mr. Moran during this time. During the day, Mr. Moran and I will visit new job sites to take measurements and make notes of details necessary to estimate the price of the project. I will look at engineering drawings of the building if they are available at this stage, because I use the drawings to help estimate the job price. Drawings are particularly useful when the project involves construction of a new building which does not yet exist, so I can envision how the scaffolding will have to be set up. I will also discuss the specific needs of the project with the client or the site manager. When my schedule will not allow me to accompany Mr. Moran to visit a job site, Ms. Gildea will arrange for me to visit the site on my own separately. Similarly, when Mr. Moran cannot visit a job site, I will sometimes go see the project on my own and take my own notes and measurements. Based on our site visits, Mr. Moran does initial price estimates in the afternoon, which I review and correct based on my own expertise and my own knowledge of the projects. We usually work on this until around 5:00 to 5:30 p.m.

28.    My work day does not end when I leave the warehouse. In the evenings, I assist Ms. Gildea with preparing the job schedule for the next day. I tell her how many workers will be required for each job, based upon the difficulty of the job. I will also suggest specific workers for projects that might require their specialized skills.

29.    I also often talk on the phone with various employees in the evening, discussing both job-related and personal issues. Many of the workers' own fathers are not in the United States, so I am a father figure to them. I know when the workers' children are born and when they buy new cars; I know who is rooting for the Red Sox and who is rooting for the Yankees. In this respect, Lanco is like my extended family.

30.    Even in my free time, I am always thinking about Lanco and our scaffolding work. I usually spend the weekends checking on job sites to make sure that everything is all right, accompanied by Ms. Gildea and our family. In addition, I will visit new job sites that my schedule did not allow me to visit during the work week. These are things that I do not think anyone else would do if they were to take over the company.

31.    Lanco is a central part of my life, my family's life, and the lives of all of the employees, who depend upon the company for steady, well-paying jobs all year long. We strive to keep our workers employed fifty-two weeks a year, which is atypical in the construction industry. In the winter, when our scaffolding projects are fewer, I have the employees work around the warehouse, painting equipment and performing maintenance in preparation for the busy spring and summer seasons. We will also agree to do projects for less money in order to keep the crews working. With stable year-round employment, our workers are able to be

productive and responsible members of their communities, and that is a source of great pride for me.

SWORN UNDER THE PAINS AND PENALTIES OF PERJURY, THIS $\underline{13}$ th DAY OF OCTOBER, 2005.

Carlos L. Gomez

149196.1

Exhibit E

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) |
| CARLOS GOMEZ and | ) Criminal No. 05-10022 |
| MARY GILDEA, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## AFFIDAVIT OF MARY E. GILDEA

I, Mary E. Gildea, hereby depose and state as follows:

1.     I work at Lanco Scaffolding, Inc. ("Lanco"), which is located at 33 Earle Street, Somerville, Massachusetts, 02143. I have worked at Lanco since 1992 with my husband, Carlos Gomez ("Gomez"), who founded Lanco in 1984. I make this statement in support of Defendants' Sentencing Memorandum, previously submitted to this Court on August 15, 2005.

## MS. GILDEA'S GENERAL JOB DUTIES AT LANCO

2.     I perform all of Lanco's administrative and operational duties, with the exception of estimating pricing for new jobs, which is performed by Carlos Gomez ("Gomez") and Kendal Moran ("Moran"). As described in further detail below, I am responsible for all of the administration, accounting, billing, and management of the office. During the day I handle all of the phone calls that come into the Lanco office from prospective, new and current clients regarding requests for information, changes to project status, and details about new projects. In addition, I address employee issues, oversee the warehouse crew in their tasks, formalize and send out proposals for new jobs, and do the company's banking. In the evenings, I prepare the job schedule for the following day, determining which projects need to be done on that day and

assigning the crews that will handle them, with input from Mr. Gomez. I also schedule all of the appointments for Mr. Gomez and Mr. Moran to meet with clients every day.

3.      There are many other things that I do to ensure that Lanco operates efficiently and professionally that cannot be easily categorized. In addition to managing the office and scheduling and coordinating all of the scaffolding jobs, I watch over the workers and know all of their idiosyncrasies. I know which crew members prefer to work together, and which crew members cannot work together at all, and I take that into account when I am creating the daily job schedule. I know that Mr. Gomez's brother Roberto suffers from alcoholism, so I monitor him closely. One of the other employees was recently involved in a car accident, over which he is still very distressed, so I check on him to make sure he is recovering. I keep track of when the workers' union dues have to be paid and remind them to send the payments on time; I know who is preparing for their CDL (commercial driver's license) exams and remind them to study after work.

4.      I maintain a professional atmosphere among the workers, telling them to get a haircut or to replace their worn-out work boots. I believe this contributes to their performance when they are on a job site and allows them to take pride in their work. When I came to work at Lanco, I discovered that the workers' routine was to idle at the warehouse at the end of the day, chatting and drinking alcohol. I ended that practice immediately, on my very first day, and have forbidden it ever since.

5.      All of the workers know how invested I am in the company, and for that they respect and listen to me. I have known some of them since I first came to work at Lanco, around the time that Mr. Gomez was wrongfully incarcerated. At that time, all of the employees at Lanco were upset and uncertain about what was going to happen when Mr. Gomez was gone. I

had to take charge and tell everyone, from Mr. Gomez's brothers to Mr. Moran to the scaffolding workers, what to do and when to do it. For that period, until Mr. Gomez was finally vindicated and released, I took his place in running the operations of the company. To this day, I still make sure that Lanco operates smoothly and efficiently.

6.      The reason we were able to survive when Mr. Gomez was wrongfully incarcerated is that Lanco was a much smaller company then, with only approximately 8 employees, and we did smaller-scale projects, generating approximately $1 million in revenue. Now, the company has approximately 23 employees and works on some of the most complex projects in the area, and generates approximately $5 million in revenue every year. I believe it would be impossible for the company to replicate today what we did at that time.

## MS. GILDEA'S TYPICAL WORK DAY

7.      My work day begins every morning at 5:00 a.m. at my home in North Reading, when I go over the day's job schedule with Mr. Moran at the Lanco office by phone. As described in fuller detail below, I arrange the schedule the night before and maintain a spreadsheet of Lanco's job scheduling on my computer at home. I tell Mr. Moran the jobs and crew assignments over the phone, and he writes it manually into his planner, so we have both a handwritten and an electronic copy of the daily schedule.

8.      As Mr. Moran and I review the day's schedule, and he provides me with updates (e.g., one of the workers is not coming in that day due to illness), I make the necessary adjustments to the job list so that, by the time the scaffolding crews arrive at 6:15 to 6:30 a.m., all of the scheduling is complete and the workers can be told which trucks they are taking to which job sites.

3

9.    I then review with Mr. Moran his schedule for the morning. I send Mr. Moran to visit new job sites and take measurements in the mornings, so he can later create an equipment list and rudimentary price estimate for the job. Mr. Moran has been extensively trained to do these tasks by Mr. Gomez. I schedule all of Mr. Moran's appointments for him, and try to have him "on the streets" visiting job sites until around 12:00. I try to arrange for Mr. Gomez to accompany Mr. Moran to the site visits, especially for jobs that are further away, as well as for larger, more complex jobs and/or jobs for high-priority clients.

10.    After Mr. Moran has left the Lanco office around 6:30 or 7:00 a.m. to begin his appointments, I have the Lanco phone calls transferred to my home phone so any incoming calls to the office will be received by me. I am intimately familiar with all of the clients and their jobs, which contributes greatly to Lanco's efficiency. Clients will call and need to know information about when we will begin or finish their jobs, when they will receive pricing for their jobs, when someone can come look at a new job. I can immediately answer all of these questions.

11.    When I receive a phone call from a new client, I gather information about the job site, the location of the job, the trades that will be using the scaffolding, and the timing of the project. I can almost always arrange for either Mr. Gomez and/or Mr. Moran to meet with the new client at the job site that same day.

12.    I leave my home in North Reading around 8:30 a.m. At this time, I transfer the Lanco phones to my cell phone so I will continue to receive incoming calls. I travel to the Lanco warehouse/office in Somerville after dropping my children off at school.

4

13.    I arrive at the Lanco office by 9:30 a.m. I review and respond to all the faxes received overnight, which generally consist of details about jobs, requests for certificates of insurance, and occasionally a change of bid date on a project.

14.    I also draft all of the project proposals. Typically, Mr. Moran completes the boilerplate proposal form (which I designed many years ago), with the dimensions of the scaffolding project, the installation price, and the monthly rental price. I create the proposal for each client based upon this information from Mr. Gomez and Mr. Moran, and on my own understanding of the project, since I am always the one who takes the initial phone call from the client. After the proposals are completed and faxed and mailed to the clients, I file them in Lanco's proposal files for later reference.

15.    During the morning, workers from the various crews will call in with lists of lumber/equipment they will need for the following day. I pass the materials lists to the warehouse crew so they can load for the next morning. Workers also call in to ask me whether they should work late to finish a job that day, or whether they should return to finish the project the next day. Based on the schedule I have established for the next day, I will let them know what they should do.

16.    I supervise the warehouse crew during the day in their tasks. The warehouse crew is composed of 3 workers. They assist Mr. Gomez with preparing the trucks in the morning to go out to job sites. During the day, they unload equipment from trucks that have returned from worksites where scaffolding has been dismantled. They also oil, sand, paint, and perform maintenance on the equipment.

17.    I also receive periodic calls from Mr. Gomez with updates on the status of various projects. For example, he will call to report that one of the crews has finished its job early, and I

5

will determine which other crew needs help to complete their project so Mr. Gomez can send the first crew there to assist. All of the scheduling for the company is run through me.

18.     The office is busiest in the spring and summer, which are Lanco's busiest seasons, and the office will be inundated with calls during the day, all of which I handle.

19.     I also perform the administrative tasks for Lanco. Prior to the commencement of any project, we provide the client with certain paperwork (e.g., hold harmless agreements, rental agreements, certificates of insurance). I set up and maintain all of the client files. I handle all client invoicing, filing, faxing, office supply needs, and scaffolding equipment needs, and ensure that the trucks are on a regular schedule for servicing. I also keep track of the scaffolding equipment rentals on the computer.

20.     After Mr. Moran returns to the office around 12:00 p.m., we immediately review the morning phone calls from clients who will require a site visit the next day. Throughout the afternoon, I work with Mr. Moran on new project proposals, providing Mr. Moran with additional information about new jobs that he is pricing based on my initial phone call with the client, and gathering information from him about jobs for which I am drafting proposals based on his and/or Mr. Gomez's visit to the job site.

21.     I sort through the enormous amount of mail Lanco receives every day, separating the drawings for new projects, checks from clients, requests from clients for information, and junk mail.

22.     I handle all client invoicing and accounts receivable. Fortunately, Lanco has had very few problems collecting payments from our clients, largely due to the fact that most of our clients are "repeat customers" and use Lanco for all of their scaffolding needs. I record the checks Lanco has received into the computer. Either Mr. Gomez or Mr. Moran will physically

take the checks to the bank while they are performing their job duties outside of the office during the day.

23.    I also handle accounts payable (e.g., entering client payments, posting bills). I generally do this from home in the evenings, after my children are asleep.

24.    Lanco uses Paychex payroll services for its payroll processing. We have used Paychex since September 2003. I maintain the employee personnel folders. Every week, the workers fill out their timesheets and submit them to me on Monday. I keep track of their time separately in my computer, as I monitor the job schedule each day. On Wednesday night, I call the payroll into the Paychex office. The paychecks are delivered to the warehouse on Thursday and distributed. I also do the monthly reports for the Laborers and Carpenters Unions. I tabulate and submit the hours of the union members in order for Lanco to pay their union remittance.

25.    During the school year, I leave the office at 2:30 p.m. so I can pick my children up from school at 3:00. Outside of the school year, I usually stay at the office later than 2:30. I generally have my children with me at the office.

26.    I bring my laptop computer and all the mail and banking from the day with me when I leave the office. I maintain all the accounts payable, payroll, and accounts receivable data at my home office. I have a computer at my home and a fax and copy machine. Once Mr. Moran leaves the office around 5:30 p.m., the Lanco phones are transferred to my phone again, so I can receive evening calls at my home. Many of Lanco's contractor clients will call between 6:30 and 7:00 p.m. because they are driving home and it is the only time they can discuss the status of projects.

27.    In the evenings, I continue to do office work. I read through all of the mail, do client invoicing and accounts payable, and set up new jobs.

7

28.     In the evenings I also set the job schedule for the next day. There are many factors I have to consider. First, I determine which jobs must be done the next day (Lanco can do 5 to 7 jobs a day). I might combine some of the smaller jobs, so a crew will go from one small dismantling job to another in the same day. Once I have made a list of the jobs, I assign the scaffolding crews based upon the difficulty level of each job. For this part of the scheduling, I have to get input from Mr. Gomez. Generally, I will assign the less experienced workers to do the dismantling jobs, because dismantling scaffolding is less difficult than putting it up.

29.     The crews are each composed of four to seven men, and I list their names under the job they will be working on that day. The crew leader's name is listed first; he is also the driver of the truck. I also have to assign the trucks that will be used, based upon the workers assigned to the projects (the drivers of the larger trucks must have a commercial driver's license, which only some of the workers hold).

30.     Each crew consists of a crew leader, a "ground man," and a number of "sky men." The crew leader sets the bases for the scaffolding and ensures that they are level. This will always be the worker with the most scaffolding experience. The "ground man" stays below and feeds scaffolding components to the "sky men," who are up on the scaffolding pulling up the pieces and building the scaffolding higher. The sky men are very experienced; no one starts off as a sky man. Each crew leader has a standard crew of men that I keep together for most of his jobs. This consistency helps the crews to work most efficiently, because they are all used to each other and can anticipate what the crew leader will want them to do.

31.     I typically work until around 10:00 p.m. every night. I have never minded working such long hours, because I help to provide for our family. More to the point, I do this

8

work because I love my husband, Mr. Gomez, who created this company out of nothing; I love the workers; and I love Lanco.

32.    At night and on weekends, Mr. Gomez and I will often drive around with our family checking on job sites to make sure everything is all right. On Saturdays, we all go to the Lanco warehouse, usually just to review the mail and take care of small administrative tasks. We enjoy doing these things, and it reminds me of my own childhood, when I would accompany my father to his warehouse on the weekends. Even when Mr. Gomez and I are not actually at work, we are always thinking about the company and our work.

33.    Lanco is a central part of our lives, and the lives of all of the employees, who depend upon the company for steady, well-paying jobs all year long. We strive to keep our workers employed fifty-two weeks a year, which is atypical in the construction industry. In the winter, when our scaffolding projects are fewer, Mr. Gomez has the employees work around the warehouse, painting equipment and performing maintenance in preparation for the busy spring and summer seasons. We will also agree to do projects for less money in order to keep the crews working. With stable year-round employment, our workers are able to be productive and responsible members of their communities, and that is a source of great pride for me.

SWORN UNDER THE PAINS AND PENALTIES OF PERJURY, THIS _14_th DAY OF OCTOBER, 2005.

Mary E. Gildea

149202.1

9

Exhibit F

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) Criminal No. 05-10022 |
| CARLOS GOMEZ and | ) |
| MARY GILDEA, | ) |
| | ) |
| Defendants. | ) |

## AFFIDAVIT OF KENDAL I. MORAN

I, Kendal I. Moran, hereby depose and state as follows:

1.      I work at Lanco Scaffolding, Inc. ("Lanco"), which is located at 33 Earle Street, Somerville, Massachusetts, 02143. I make this statement in support of Defendants' Sentencing Memorandum, previously submitted to this Court on August 15, 2005.

2.      I have worked at Lanco since 1987. I worked on a scaffolding crew for approximately one year, at which time Carlos Gomez ("Gomez") asked me to accompany him when he went to visit new job sites and to meet with new and current clients. My job was to take detailed notes of those visits and meetings that could be referenced later, after the projects were commenced. I stopped doing scaffolding work immediately, and I have not done any scaffolding work since that time.

3.      I now work in the Lanco office with Mary Gildea ("Gildea"). I assist Mr. Gomez and Ms. Gildea in preparing proposals for new projects. As described in fuller detail below, my job duties include visiting new job sites to take physical measurements and make notes of any special requirements for the job; preparing proposed equipment lists (usually with Mr. Gomez,

especially for large, complex jobs and jobs for high-priority clients); and calculating an initial estimated price for the project. Mr. Gomez trained me to perform all of these tasks.

4.    I arrive at the Lanco warehouse at 5:00 a.m., and call Ms. Gildea at her home to review the daily schedule, which she has prepared the previous evening. Ms. Gildea keeps the schedule on her computer, and I write it manually into my planner so we have both an electronic and handwritten copy. Ms. Gildea reviews the crew assignments with me, and I update her on the status of the workers (for example, if one of the workers is out due to illness). Ms. Gildea makes adjustments to the schedule and we finalize it for Mr. Gomez. Ms. Gildea will also tell me about upcoming jobs that she has scheduled for the next few days and the crews she has assigned to them, in order for me to coordinate with the workers so they will know when their jobs will begin.

5.    After the schedule has been finalized, Ms. Gildea gives me my schedule of appointments to visit new job sites, where I take measurements of the site and make notes of special requirements for the project. Ms. Gildea arranges for Mr. Gomez to accompany me to the site visits so he can talk to the client or site manager, and review engineering drawings of the project if they are available at this stage. Mr. Gomez can use the drawings to assist in creating a price estimate, and they are particularly useful when the project involves construction of a new building which does not yet exist. I can use the drawings to determine the approximate height of the project, but am not trained to read the drawings for additional details as Mr. Gomez can to determine how the scaffolding will have to be erected. Sometimes, when Mr. Gomez's schedule is too busy for him to accompany me to site visits, Mr. Gomez will go see the site on his own, at a separate time.

2

6.      I generally visit about five to seven job sites every day.  Sometimes, Ms. Gildea will receive a phone call from a client during the morning regarding a new job and determine that I should go visit the site that day; in these situations she will contact me on my cell phone to tell me where to go.  If it is a large project or if the client is a high-priority client, Ms. Gildea will usually arrange for Mr. Gomez to meet me at the site.

7.      While I am out in the mornings, Ms. Gildea will also have me run errands, such as picking up checks from clients, or picking up plans or engineering drawings of buildings.

8.      I generally return to the office around 12:00 p.m.  Ms. Gildea immediately reviews with me the phone calls she has received that morning from clients who will require a site visit the next day.  We also discuss coordinating and scheduling the various projects.

9.      I create a file folder for each of the job sites I visited that day, as I was taught to do by Mr. Gomez.  Based on the information I gathered, I determine an equipment list and calculate the manpower that will be required.  Once I have calculated a rudimentary estimated price for a project, Mr. Gomez reviews my initial price and revises it based upon his own knowledge of the project and his many years of experience working in scaffolding.  Based upon Mr. Gomez's comments and changes, I complete the boilerplate proposal form that Ms. Gildea designed, and submit it to her so she can prepare the formal project proposal.  Mr. Gomez and I generally work on the price estimates until about 5:30 to 6:00 p.m., when I leave the office and go home.

10.     This is what I do every day.  I believe that I am very good at my job, due to the training I have received from Mr. Gomez.  However, my skills and experience are limited to what I do on a daily basis, and it would be impossible for me to assume all of Mr. Gomez's duties at Lanco.

3

11.    Unlike Mr. Gomez, who has worked in scaffolding for over 30 years, I have practically no experience with erecting scaffolding, aside from the limited time I worked on a scaffolding crew when I first came to Lanco. As a result, I could never figure out how to design a scaffolding installation to properly take into account the idiosyncrasies of each particular project. For example, Lanco did a scaffolding job at Pforzheimer Hall at Harvard University in June 2005, where the scaffolding had to be raised to the top of the building without the use of a crane. I would never have been able to figure out how to accomplish that task, but Mr. Gomez did. Also, Lanco recently erected scaffolding for a mill on the Merrimack River. The mill was situated so that there was only a vertical drop to the river along one side. When I saw the site, I could not imagine how the scaffolding would be supported on that side of the mill. However, Mr. Gomez got it done.

12.    Similarly, Mr. Gomez does all of the scaffolding layout drawings to be presented to the clients and/or their architects. Every scaffolding project over one hundred lineal feet high requires a scaffolding layout drawing that has been approved and stamped by an engineer. Approximately thirty percent of Lanco's projects require such a drawing. In addition, Mr. Gomez often does layouts for clients with complex projects so they can better visualize how the scaffolding will be erected on their buildings. Mr. Gomez manually draws every scaffolding layout, and his architect Miguel Linera inputs it into the computer so it can be printed. Mr. Linera does not alter Mr. Gomez's scaffolding drawings in any way when he inputs them into the computer; all he does is copy the hand-drawn layout Mr. Gomez created. I have never drawn a scaffolding project, and do not know how to perform this duty.

13.    I also do not have the kind of working relationship with Lanco's customers that is required to maintain the business. Mr. Gomez is the "face" of Lanco. My contact with clients,

on the other hand, is very limited; in fact, Mr. Gomez usually accompanies me to job sites when the project is large, and/or the client is a high-priority client.

14.    Lanco has many "repeat customers," clients who use Lanco for all of their scaffolding needs. In addition, our current clients will often refer new business to Lanco. However, I do not believe our clients would continue to do business with Lanco if Mr. Gomez were not here, especially clients who work on large-scale or intricate projects. Our clients use Lanco to erect scaffolding on their job sites because our men are efficient and professional, and because of our attention to safety. Those qualities are due to the efforts and training of Mr. Gomez, and I believe that many of our clients recognize this. Each scaffolding job is different and has its own special requirements. All of these things are due to Mr. Gomez's knowledge, experience, and leadership, which I could never duplicate. I believe that the clients depend on Mr. Gomez's expertise and his unique approach to each project.

15.    In addition, the company also acquires a lot of business through Mr. Gomez's networking skills. The construction industry is close-knit, and Mr. Gomez is well-known by the general contractors and other subcontractors, who keep him informed about new building projects that might have scaffolding needs. Also, because Mr. Gomez spends the vast majority of each day "on the street" going between Lanco's various job sites, he sees new building sites and will often stop to inquire if there will be any scaffolding needs on the project. I do not have the same relationships with people in the construction industry that Mr. Gomez does, and would not have the same ability to get information about new projects so that Lanco could bid on them. I also do not have the personality or diligence to proactively acquire new work in this manner.

16.    I also do not have the same relationship with Lanco's employees that Mr. Gomez does. The men look up to Mr. Gomez as a surrogate father figure and respect him as a leader.

5

They trust his years of scaffolding experience, and know that when he tells them a procedure for installing scaffolding it will have been calculated correctly so that they will not be injured. The men would never trust me in the same way, because I do not possess the same knowledge about scaffolding erection as Mr. Gomez. Furthermore, I could never shoulder that level of responsibility for the workers' safety.

17.     The men listen to Mr. Gomez and immediately do as he says. I do not think they would respond in the same way to me, partly because I do not have the same experience as Mr. Gomez, as I described above, and also partly because I do not have the same leadership skills as Mr. Gomez and I have a different relationship with the men. I work primarily in the office; I never "earned my stripes" in the field. I am not out at the job sites every day with the men as Mr. Gomez is, checking on their progress and monitoring safety issues. To put it simply, the workers would have a hard time trusting that I knew what I was talking about, and that they would be safe.

18.     In 1993, Mr. Gomez was wrongfully jailed for more than one year. Lanco was able to pull through until he was vindicated and returned to work, largely due to the efforts of Ms. Gildea, who made sure that things continued to operate. However, we mostly just carried forward projects that had already been established before Mr. Gomez was incarcerated. The only new work we took on was due to repeat customers and referrals from current clients; we were missing Mr. Gomez's networking skills and ability to generate business from new clients. Ms. Gildea came in to the warehouse in the mornings and organized the crews and trucks to go out to the job sites. Nobody was doing the scaffolding layout drawings because no one except Mr. Gomez knows how to do them. It took the scaffolding crews a very long time to work on each project, because they had to figure out how to best install the scaffolding, and often had to pull

their best workers onto the most difficult jobs in order to figure them out.  It was inefficient and slow, but it was also the only way we could continue doing scaffolding installation while Mr. Gomez was gone.

19.    Lanco did manage to endure for the 13-month period that Mr. Gomez was gone, though I do not know what would have happened to the company if he had remained in jail for an even longer period of time.  The reason we were able to survive is that Lanco was a much smaller company at that time, with only approximately 8 employees at that time, and we did smaller-scale projects, generating approximately $1 million in revenue.  Now, the company has approximately 23 employees and works on some of the most complex projects in the area, and generates approximately $5 million in revenue every year.  I believe it would be impossible for us to replicate what we did at that time if Mr. Gomez were to be sent away now.


SWORN UNDER THE PAINS AND PENALTIES OF PERJURY, THIS *13* th DAY OF OCTOBER, 2005.

Kendal I. Moran

148945.1

7

Exhibit G

**TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS
PARA EL DISTRITO DE MASSACHUSETTS**

| | |
|---|---|
| ESTADOS UNIDOS DE AMERICA )<br><br>v. )<br><br>CARLOS GOMEZ y )<br>MARY GILDEA, )<br><br>Acusados. ) | Núm. Criminal 05-10022 |

## AFFIDAVIT CONJUNTA DE ROBERTO GOMEZ Y FERNANDO GOMEZ

Roberto Gómez y Fernando Gómez por la presente deponemos y declaramos lo siguiente:

1.      Trabajamos en Lanco Scaffolding, Inc. ("Lanco"), localizada en el 33 Earle Street, Somerville, Massachusetts, 02143.  Hacemos esta declaración en apoyo del Memorándum de Sentencia de los acusados, presentado anteriormente a este Tribunal el 15 de agosto de 2005.

2.      Ambos hemos trabajado en Lanco desde que Carlos Gómez ("Gómez"), nuestro hermano mayor, fundó la compañía en 1984.

3.      Ambos nos reportamos al trabajo a las 6:30 a.m. todos los días.  Cuando llegamos, preparamos nuestras herramientas y el Sr. Gómez nos dice a cada uno en que emplazamiento estaremos trabajando ese día y con que equipo trabajaremos.  Los dos somos líderes de equipo y dirigimos nuestros propios equipos; no trabajamos juntos.  Mary Gildea ("Gildea"), la esposa del Sr. Gómez, prepara el horario de trabajo con el Sr. Gómez la noche anterior.  El equipo del almacén compuesto de tres hombres carga los camiones.  Llevamos a nuestros equipos a los emplazamientos respectivos.  Usualmente llegamos entre las 7:00 y las 7:30 a.m.

4.      Si uno de nosotros va a comenzar una nueva instalación de andamiaje ese día, el Sr. Gómez va a ese emplazamiento con el equipo.  Ya en el emplazamiento, el Sr. Gómez nos

explica el plan básico de la instalación del andamio, basándose en la información que ha adquirido en las conversaciones con el cliente y/o el gerente del proyecto. Muchas veces el Sr. Gómez tiene papeleo que necesita revisar con el cliente o el gerente del proyecto mientras está en el emplazamiento. Ninguno de nosotros se envuelve en las conversaciones con el cliente. Mientras el Sr. Gómez trata esos asuntos con el cliente, nosotros organizamos nuestros equipos para comenzar el trabajo, diciéndoles donde comenzará el levantamiento del andamio y dando otras instrucciones preliminares.

5.      Siempre comenzamos la instalación de un andamio poniendo la base en la cual se erigirá el andamio. El Sr. Gómez nos enseñó como hacerlo. Después que el Sr. Gómez tiene el equipo ubicado y ha determinado que entendemos como se debe instalar el andamio se va a su próxima visita de ese día; ambos estamos en constante contacto con él durante el día vía teléfono celular. A veces lo llamamos hasta tres veces al día si hay problemas con el trabajo. Si el trabajo es grande o particularmente difícil o complejo, el Sr. Gómez supervisará el levantamiento de un área de "prueba" en el edificio, lo cual se hace para determinar la combinación apropiada de los marcos de andamios que se necesitarán para alcanzar la parte superior del edificio. Después que se ha erigido una torre hasta el nivel del techo podemos ver la combinación exacta de marcos que el Sr. Gómez ha usado y podemos usar el área de "prueba" como una plantilla para el resto del trabajo. Luego el Sr. Gómez no tiene que quedarse en el trabajo con nosotros y puede atender los proyectos de otros emplazamientos.

6.      Ambos trabajamos hasta aproximadamente las 3:00 p.m. y para entonces regresamos al almacén de Lanco con nuestros equipos respectivos. Frecuentemente el Sr. Gómez también ha vuelto al almacén a esa hora y repasamos el trabajo del día respectivo con él y le hacemos cualquier pregunta que tengamos en cuanto a las instalaciones del andamio. Si el

2

Sr. Gómez todavía no ha vuelto al almacén, le damos un informe del estatus del trabajo a Kendal

Moran ("Moran"), quien toma notas para entregárselas al Sr. Gómez. Ninguno de nosotros se

queda con las notas sobre los trabajos.

       7.      Esta es nuestra rutina todos los días. Ambos creemos que hacemos bien nuestro

trabajo gracias al entrenamiento que recibimos del Sr. Gómez. Sin embargo, nuestras destrezas y

experiencia están limitadas a lo que hacemos diariamente y sería imposible para cualquiera de

los dos, o ambos juntos, asumir la gran variedad de responsabilidades del Sr. Gómez en Lanco.

       8.      Ninguno de los dos tiene el conocimiento y la experiencia necesarios para leer y

entender dibujos y planos de ingeniería. El Sr. Gómez es la única persona en Lanco que puede

hacerlo. Todos los que trabajamos en los equipos de andamios dependemos de él para que nos

diga come se debe erigir un andamio. Él va al emplazamiento y hablamos sobre lo que tenemos

que hacer y seguimos los diseños. Ambos estamos físicamente capacitados para instalar el

andamio pero sin el diseño del Sr. Gómez no sabríamos dónde empezar. Cuando el Sr. Gómez

fue encarcelado injustamente en el 1993 por mas de un año, mayormente hicimos trabajos que ya

habían sido establecidos antes de que lo mandaran a la cárcel. En ese tiempo Lanco era más

pequeña y trabajaba en proyectos más pequeños, lo cual nos permitió concentrarnos en cada

levantamiento de andamio individual y poner los mejores trabajadores en las instalaciones más

difíciles para que se hicieran apropiadamente. Fue muy ineficiente y tomo mucho tiempo pero

esta fue la única manera en que pudimos continuar instalando andamios mientras el Sr. Gómez

no estaba. Hoy, sin embargo, el volumen de trabajo que Lanco hace lo imposibilitaría y la

calidad de nuestro trabajo disminuiría dramáticamente.

       9.      Adicionalmente, ninguno de nosotros tiene relación alguna con los clientes de

Lanco. La mayoría ni sabría quien somos. Puede que los supervisores de los emplazamientos

nos reconozcan solo porque estamos en sus emplazamientos todos los días. Además, nuestras habilidades en el inglés no son tan buenas como las del Sr. Gómez ni mucho menos y tendríamos dificultades para comunicarnos con los clientes diariamente como él lo hace.

10.    El Sr. Gómez es nuestro hermano mayor y ambos hemos seguido su dirección toda nuestra vida. Ninguno de los dos podría ocupar su lugar y asumir la posición de liderazgo. No tenemos las destrezas de gerencia y organización necesarias para ir a los diferentes trabajos todos los días, llevar cuenta de los clientes, los gerentes de proyectos, los supervisores que están en los emplazamientos y agentes de seguridad. Nos concentramos solamente en nuestros trabajos específicos y guiamos a nuestros equipos para hacer nuestro trabajo de manera segura. Después que nos vamos del almacén al final del día, ninguno de los dos piensa en el trabajo hasta la mañana próxima. El Sr. Gómez, al contrario, siempre está trabajando, aun por la noche y durante los fines de semana. Su dedicación a Lanco y a nuestro trabajo es extraordinaria y está a un nivel que ambos admiramos pero nunca podríamos duplicar.

JURADO SO PENA Y SANCCIONES DE PERJURIO, ESTE _13_ DÍA DE OCTUBRE DE 2005.

_____        _____
Roberto Gómez                            Fernando Gómez

149638.1

4

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|                              |   |                           |
|------------------------------|---|---------------------------|
| UNITED STATES OF AMERICA     | ) |                           |
|                              | ) |                           |
| v.                           | ) |                           |
|                              | ) | Criminal No. 05-10022     |
| CARLOS GOMEZ and             | ) |                           |
| MARY GILDEA,                 | ) |                           |
|                              | ) |                           |
| Defendants.                  | ) |                           |
|                              | ) |                           |

## JOINT AFFIDAVIT OF ROBERTO GOMEZ AND FERNANDO GOMEZ

Roberto Gomez and Fernando Gomez hereby depose and state as follows:

1.    We work at Lanco Scaffolding, Inc. ("Lanco"), which is located at 33 Earle Street, Somerville, Massachusetts, 02143. We make this statement in support of Defendants' Sentencing Memorandum, previously submitted to this Court on August 15, 2005.

2.    Both of us have worked at Lanco since Carlos Gomez ("Gomez"), who is our older brother, founded the company in 1984.

3.    We both report to work by 6:30 a.m. every day. When we arrive, we prepare our tools and Mr. Gomez tells each of us which job sites we will be working at that day and which crews we will be working with. We are both crew leaders and lead our own crews; the two of us do not work together. The job schedule is arranged by Mary Gildea ("Gildea"), Mr. Gomez's wife, with Mr. Gomez the previous night. The trucks are loaded by the three-man warehouse crew. We drive our crews to our respective job sites, usually arriving by 7:00 or 7:30 a.m.

4.    If one of us is beginning a new scaffolding installation that day, Mr. Gomez goes to that job site with the crew. At the job site, Mr. Gomez explains the basic plan for the scaffolding installation to us, based on the information he has from discussions with the client

and/or project manager. Oftentimes, Mr. Gomez has paperwork he needs to review with the client or project manager while he is on-site. Neither of us is ever involved in any discussions with the client. While Mr. Gomez is handling those issues with the client, we are organizing our crews to start the job, telling them where the scaffolding erection will begin and giving other preliminary instructions.

5.    We always begin a scaffolding installation by setting the bases on which the scaffolding will be erected. Mr. Gomez taught us how to do this. Once Mr. Gomez has the crew situated, and has determined that we understand how the scaffolding is to be installed, he departs for his next site visit of the day; both of us are in constant contact with him during the day via cell phone, sometimes calling him up to three times a day if the job is not running smoothly. If the project is large, or particularly difficult or complex, Mr. Gomez will supervise the erection of a "mock-up" area on the building, which is done to determine the proper combination of scaffolding frames that will be needed to reach the top of the building. Once a tower has been erected to the roof level, we can see the exact combination of frames Mr. Gomez has used, and we can then use the "mock-up" area as a template for the rest of the job. Then Mr. Gomez does not need to remain on the job with us, and can attend to the other project sites.

6.    The two of us both work until approximately 3:00 p.m., at which time we return to the Lanco warehouse with our respective crews. Mr. Gomez has often returned to the warehouse by this time also, and we will review our respective day's work with him and ask him any questions that we have about the scaffolding installations. If Mr. Gomez has not yet returned to the warehouse, we give a job status report to Kendal Moran ("Moran"), who takes notes to forward to Mr. Gomez. Neither of us keeps any notes about the jobs.

2

7.    This is our routine every day. We both believe that we are good at our jobs, due to the training we have received from Mr. Gomez. However, our skills and experience are limited to what we do on a daily basis, and it would be impossible for either of us, or both of us together, to assume all of Mr. Gomez's wide range of duties at Lanco.

8.    Neither of us has the knowledge and experience to read and understand engineering drawings and plans. Mr. Gomez is the only person at Lanco who can do this. All of us who work on the scaffolding crews rely on him to tell us how the scaffolding should be erected. He comes to the job site and we discuss what to do, and we follow his designs. The two of us are physically capable of installing the scaffolding, but without Mr. Gomez's design we would not know where to begin. When Mr. Gomez was wrongfully incarcerated in 1993 for more than one year, we mostly carried forward jobs that had been established before he was sent away. Lanco was smaller at that time, and worked on smaller projects, which enabled us to concentrate on every individual scaffolding erection and put the best workers on the most difficult installations to get them all done properly. It was very inefficient, and took a very long time, but this was the only way we were able to continue doing scaffolding installation while Mr. Gomez was gone. Today, though, the volume of work that Lanco does would make this impossible, and the quality of our work would diminish dramatically.

9.    In addition, neither of us has any relationship with any of Lanco's clients. Most of them would not even know who we are. The site supervisors might recognize us, only because we are on their job sites every day. Furthermore, our English skills are nowhere near as good as Mr. Gomez's, so we would have great difficulty communicating with clients on a daily basis the way he does.

3

10.     Mr. Gomez is our older brother, and we have both been following his directions our entire lives. Neither of us could ever step into his shoes and assume a leadership position. We do not have the management and organizational skills to run around to all the different jobs every day, keeping track of the clients, project managers, on-site supervisors, and safety officers. We just concentrate on our own specific jobs and guide our crews to do our work safely. Once we leave the warehouse at the end of the day, neither of us thinks about work again until the next morning. Mr. Gomez, on the other hand, is always working, even at night and on weekends. His dedication to Lanco and our work is extraordinary, and at a level that we both admire but could never duplicate.

149515.1

4

# Exhibit H

**SUFFOLK**

10/07/05

To Whom It May Concern:

I have had the pleasure of working with Carlos Gomez on numerous projects as the on site construction superintendent. I have personally worked with him for well over 12 years. Because of his extraordinary years of experience he and his firm are my "go to " subcontractor. In a construction project there is a need to get the job done right and at the time it is scheduled. Carlos's years of experience and can do approach has aided in the successful completion of numerous construction projects. Carlos has done some very difficult jobs with me. His attention to safety and training of his work force surpasses any other scaffolding company that I have ever worked with.

Over the years I have developed a personal relationship with Carlos. His strong beliefs in family and work are values that I wish all people could have. Carlos treats his workers as family. I am happy to say that Carlos has been a subcontractor working on my projects; but more important he is a friend. I trust his judgment. I know that what he tells me is the truth.

Please call me for any more information you may need.

Very truly yours,

Stephen McGovern

65 Allerton Street • Boston, Massachusetts • 02119 • 617-445-3500

IRVINE, CALIFORNIA • BOSTON, MASSACHUSETTS • WEST PALM BEACH, FLORIDA



# ANICETO

P.O. BOX 317                    MILFORD, MA 01757                    (508) 529-9035        FAX (508) 529-9034

October 7, 2005

To Whom It May Concern:

    I have been asked to comment on my impression of Carlos Gomez, President of Lanco Scaffolding, Inc. It is my pleasure to do so.

    I call on Lanco to do my scaffolding projects for many reasons including their response time, their reliability, their decorum on the job sites and their skills. I must say though, my primary reason for using Lanco over and over again is the knowledge and experience of Carlos their visible leader.

    I will refer to my most recent project on Beacon Hill next to the State House. The scaffolding project is extensive and it could only be erected on nights and weekends. Carlos was there directing his men, dealing with Police Details, National Park Service Rangers, pedestrian and vehicular traffic, and any number of details that must be coordinated in order to execute a project of this size and the tight quarters of this area of the city. It's very impressive to watch a crew of this caliber perform their work under these conditions. Every motion is directed by Carlos with the delicacy of a surgeon. These men must work safe, they must erect the staging so that my men will be safe and they must do this under unique conditions to say the least. Carlos, I know, relished these kinds of projects because of his years of experience. The more challenging a job the more interesting it is to Carlos.

    I walk way from these projects without giving them another thought because I know Carlos is there. If gates have to be locked up after hours, if traffic barrels have to be replaced or relocated, whatever conditions have to be met I know they will be met. I know Carlos will be there, late at night, trying pink ribbons to the scaffolding frames to further alert the pedestrian traffic to the job site to make sure no one gets hurt by walking into the frames.

    I have witnessed many, many times the relationship dynamic that Carlos has with hi men. I've seen him on every job lugging boxes of coffee and food for them and sitting among them, as one of them. This is truly a family. These men have the utmost respect for Carlos and they obviously rely and depend on his knowledge and expertise in order to guide them in their various assignments. They have learned a unique trade that will provide their families for a long, long

 # ANICETO

P.O. BOX 317          MILFORD, MA 01757          (508) 529-9035    FAX (508) 529-9034

time.  Carlos has taught them by doing.  This is probably the main reason that their respect and trust in him is so great.

Carlos and his men are a credit to this country, not to mention a benefit. Please do not hesitate to call on me if you should require more information or details.

Very truly yours,

Alex Aniceto

 **CONSTRUCTIONS COLLABORATIVE, INC.**
CONTRACTORS & WEATHERPROOFERS

P.O. BOX 541015 (99 HAMMOND STREET)
WALTHAM, MASSACHUSETTS 02454-1015
(781) 891-6757   FAX (781) 891-4527
www.constructionscollab.com

10-04-05

To Whom It May Concern:

I am pleased to comment on our relationship with Carlos Gomez, President of Lanco Scaffolding, Inc.

This past winter we had a very sensitive project on Nantucket Island. This project required scaffolding of the entire home and out buildings. This project required coordination of barges to transport scaffolding to the island and obviously the erection of the entire scaffolding project at the home. These homes on Nantucket are valued in the millions of dollars and Carlos had to stay with his men at the client's home during the installation of the scaffolding.

In order for us to permit a subcontractor to occupy the home of such a valued client we would have to have the utmost faith and trust in the character and dependability of that subcontractor. I never hesitated for one moment to trust Carlos with the responsibility of first the scaffolding project and secondly the owners residence. Carlos has proven himself time and again as a highly skilled and experienced scaffolding man and we have depended upon his knowledge and recommendations whenever possible.

It is this knowledge and years of experience that enable us to trust Carlos on each scaffolding project knowing the job will be done right for the benefit of the project schedule and for the safety of all concerned.

Feel free to call for any additional information.

Yours truly,

Clark Chase IV
President/Treasurer
**CONSTRUCTIONS COLLABORATIVE, INC.**



**Habitat for Humanity**
GREATER BOSTON

October 7, 2005

Re: Carlos Gomez
Lanco Scaffolding
33 Earle Street
Somerville, MA 02143

To Whom It May Concern:

It is with great pleasure that I write to you regarding our ongoing relationship with Carlos
Gomez of Lanco Scaffolding, Inc.

We are underway with our Blue Hill Avenue Development project in Roxbury,
Massachusetts. Carlos has been on the site many times to assist us with our scaffolding
needs and to advise us on the best means of pedestrian protection during the construction
of this five building, 22 home project. His hands-on involvement has been an enormous
help to us.

Recently we were able to donate to the Guatemalan division of Habitat on Carlo's behalf
because of the work Carlos has done for us in Boston. Carlos's skill and experience is
invaluable for this kind of work and we are very pleased to have this dependable
relationship.

We look forward to completing this project with Carlos performing all of our scaffolding
work. We will continue to call on him for his skill and guidance as the project moves
forward.

Please don't hesitate to contact me if you would like any further information or details
about this project or Carlos's generosity to us.

Yours truly,

Dave Coolidge

Dave Coolidge
Director of Construction

# Phoenix Bay State
# Construction Company, Inc.

SPECIALIZING IN MASONRY CONSTRUCTION, RESTORATION & RENOVATIONS

October 4, 2005

To Whom It May Concern:

My name is William Whall; I am the Treasurer of Phoenix Bay State Construction Company, Inc. I would like to take the time to share with you my confidence and reliance upon Lanco Scaffolding, Inc. and specifically in the owner of Lanco, Carlos Gomez.

We have contracted with Carlos to do a numerous projects for us over the past 16 years if not more. These projects have ranged in size and in difficulty from a simple canopy protection at a retail storefront to scaffolding projects that are 200 feet high involving many safety hazards and considerations for my tradesmen. I have the utmost confidence in Carlos's designs and judgments regarding all of our projects. My project managers simply have to indicate to Carlos what areas of the building they need to access and we all know that Carlos will get us there efficiently and most importantly, safety. His personal attention to each of the projects is of paramount importance to our safety satisfaction and comfort level.

Needless to say, the success of a project relies heavily on the scaffolding erection and design. The scaffolding needs to be installed within a certain time frame and my men need to be on that scaffolding performing their work in the most efficient way possible. After the projects completion the scaffolding needs to be dismantled in just as timely a manner as the installation.

Recently we contracted Carlos to erect the scaffolding downtown at 10 Post Office Square. This particular project could only be conducted at night and the scaffolding was to be erected on the edge of the roof of the building. From the roof top the scaffolding is erected another 130 lineal feet, which translates to 22 scaffold frames higher than the roof of the building. Needless to say this application required the highest level of skill and expertise. Carlos was on-site the entire time his crew was performing the erection. He directs them at every move and sees the project through from start to 100% completion. His men follow his instruction with absolute trust and confidence. His years of skill erecting scaffolding in almost every conceivable application has provided us with that same level of confidence in his scaffolding designs. It is this personal attention that is so vital to the safe execution of these highly sensitive projects. We have completed easily over 50 projects with Carlos over the years.

Please do not hesitate to contact me if you should require any further information or details of my working relationship with Carlos.

Sincerely,

William F. Whall
Treasurer

---

79 Shirley Street • Boston, MA 02119 • Tel: 617-442-4408 • Fax: 617-442-9094
Email: pbs@pbsboston.com • www.pbsboston.com

**McGinley Kalsow & Associates LLP**

Architects and Planners                                                                    617-625-8901
324 Broadway    •    PO Box 45248    •    Somerville, MA  02145    •    FAX 617-625-8902

October 6, 2005

Re:    Mr. Carlos Gomez
        Lanco Scaffolding, Inc.

To Whom It May Concern:

My name is Wendall Kalsow and I am the architectural principal of McGinley, Kalsow and Associates LLP. This year we have four major projects in the Boston area which have scaffolding supplied and erected by Lanco Scaffolding. These projects are: The Gate of Heaven Church in South Boston, West Hall at Tufts University in Medford, The Unitarian Universalist Church in Medford and Bigelow Chapel at Mt. Auburn Cemetery in Watertown. Mr. Gomez personally oversaw the design and erection of scaffolding at these four projects.

All four projects are of unusual complexity. In each case the scaffolding was erected and used without any accidents or injuries. The scaffolding at West Hall had to cantilever in many areas to provide access to large pinnacles to allow for installation of copper and slate and span to the building ridge to permit the chimney to be dismantled. At the Unitarian Universalist Church the tower scaffolding needed to be constructed to support the entire weight of the granite veneer which was then dismantled and stored on the scaffolding until it could be reconstructed. At Bigelow Chapel the scaffolding was erected on the 1848 roof structure as well as the ground and needed to support one-ton pinnacle stones. The scaffolding at the Gate of Heaven Church is 100 feet high and may be the most complex scaffolding job erected in the Boston area this year.

Although the project of The Gate of Heaven Church is very large and complex the church's budget is quite limited. Mr. Gomez has been extremely understanding of this situation and has adjusted his price for additional work accordingly. The church and this office are very appreciative of Mr. Gomez's willingness to put the needs of the project ahead of his own financial interests.

If Mr. Gomez was not personally involved in the design and erection of the scaffolding: I am sure that we and many of the contractors we work with will reconsider our reliance on Lanco Scaffolding. I believe that his presence at each project is vital to the safe design and erection of the scaffolding.

Please do not hesitate to contact me if you have any questions or if you need any further information regarding Mr. Gomez or Lanco Scaffolding, Inc.

Sincerely,

Wendall C. Kalsow, AIA
Principal
McGinley, Kalsow & Associates LLP

Architecture, Planning, Historic Preservation, Interior Design

Builders and
Construction Managers

Shawmut Design and Construction
560 Harrison Avenue
Boston, Massachusetts 02118
Telephone 617.622.7000
Facsimile 617.622.7001

Scott Harrington
Shawmut Design & Construction
560 Harrison Avenue
Boston, MA 02118

Date: 10-05-05

Subject: Lanco Scaffolding Inc.

To Whom It May Concern:



**SHAWMUT**
Design and Construction

I recently completed the Harvard University Sever Hall project with Lanco Scaffolding Inc. Sever Hall was an exterior restoration project which involved scaffolding around all four side of the building. The project was an extremely fast track summer project which involved a tight schedule and a lot of coordination.

Lanco not only maintained and beat the project schedule, but started and completed this project in a safe, clean, and professional manner. Their attention and commitment to the project was certainly noticed. Carlos Gomez who supervised this project for Lanco Scaffolding Inc. displayed the utmost professionalism to the project and fulfilled Shawmut's needs.

Sever Hall has significant historical value to Harvard and the Community. Extreme caution was required when anchoring to the building and also protecting the perimeter landscaping both under and around the scaffolding. Carlos supervised this and made sure no damage to the building or landscaping occurred.

I would like to thank Lanco Scaffolding Inc. for their recent completed work at Sever Hall and would recommend them for any large, small, or complex project.

Sincerely,

Scott Harrington
Shawmut Design & Construction

EVAN L. HANKIN, P.E.
Consulting Engineer
202 Nehoiden Road
Newton, MA 02468
617-965-1557

October 14, 2005

RE:  CARLOS GOMEZ
     LANCO SCAFFOLDING, INC.
     Somerville, MA
     FILE: CORR-GOMEZ

To Whom It May Concern:

    I have known Carlos Gomez and LANCO SCAFFOLDING, INC for over 20 years both as a structural engineering consultant to him and his company and as a construction contractor who uses his services as a pipe scaffolding erector. During this long period of time I have been very favorably impressed with Carlos and his company. The personnel who worked at the jobsites were professional, courteous, well-trained and knowledgeable in their craft and cognizant of the OSHA and current safety regulations. When professional consulting services were requested of me the office personnel also exhibited the same courteous and knowledgeable demeanor as the tradesmen. I can only conclude that the consistency was directed from the top and covered all aspects of his company.

    In regard to his position at LANCO SCAFFOLDING, INC it is quite obvious that Carlos is the key employee and all operations center around his personal involvement, experience and technical knowledge. Working with his staff his personal involvement is necessary to obtain the contracts and maintain the personal contacts with their clientele. At the various job sites his keen eye and leadership insures that the scaffolding system is erected efficiently, properly and safely for both his personnel and the end user. And lastly, his technical knowledge of the component parts and their load carrying capacities is extraordinary.

    In summary, Carlos Gomez is the epitome of the "key employee"--without him the company would not exist at its current successful level.

Very truly yours,

Evan L. Hankin, P.E.

# Exhibit I

Carpenters Benefit Funds

350 Fordham Road
Wilmington, MA 01887
www.carpentersfund.org
Phone 978-694-1000
Fax 978-657-9973

Mark Erlich
*Chairman*

Harry R. Dow
*Executive Director*

October 14, 2005

The Honorable George A. O'Toole, Jr.
United States District Court for the District of Massachusetts
John Joseph Moakley U.S. Courthouse
One Courthouse Way
Boston, MA 02210

SUBJECT:  Lanco Scaffolding

Dear Judge O' Toole:

This letter is written on behalf of Carlos Gomez and Mary Gildea of Lanco Scaffolding in the hope of leniency for these individuals.

The relationship of the Massachusetts Carpenters Central Collection Agency (MCCCA) with Carlos and Mary goes back approximately twenty years, during which time Lanco Scaffolding has acquired an excellent reputation in the field. Lanco signed with the Carpenters Union on July 19, 1985; however, the company actually started working under its signed agreement two years later on July 20, 1987.

Lanco Scaffolding is an employer in good standing with the MCCCA.  Following is the status of benefits payments owed to the Agency:

- The audit period covering 2004-2005 is absolutely clean.
- Mary and Carlos voluntarily attempted to clear up the period from 2002-2003 on their own.
- The audit period covering 1998-2003 will go under settlement, which is a common practice for employers who are behind with benefits payments.

From the above facts, it is obvious that Carlos Gomez and Mary Gildea, regardless of their past offenses, have made and will continue to make restitution to their employees and to the MCCCA.  Although the Agency and I certainly do not condone what Carlos and Mary have done, all too often in cases of this nature, the offenders are unable to indemnify the Agency and those benefits funds are lost to Union employees.

Lanco Scaffolding
Page 2
October 14, 2005


In addition, from 2003 through 2005, Lanco Scaffolding has provided steady employment for five individuals. If Carlos and Mary are unable to operate their company, it seems likely that Lanco Scaffolding will close and result in the loss of employment for these five individuals.

I am asking for leniency in this case because it seems to me that the good that Carlos and Mary can accomplish far outweighs any value that would be accomplished by severe punishment including incarceration. Carlos and Mary have acknowledged their errors and are sincerely working to make amends. Separating them from their family, their community, and their company would seem to be counterproductive.

In summary, I believe that justice can best be served by permitting Carlos Gomez and Mary Gildea to continue to operate Lance Scaffolding in order to pay their fringe benefit liability and to provide a much-needed service to the community and productive, well-compensated work for their employees.

If I can answer any further questions for you, please call me at 978-752-1132.

Sincerely,

Harry R. Dow
Executive Director

HD:MD

Exhibit J

COOLEY MANION JONES LLP

JON S. BAROOSHIAN
RICHARD M. BURKE
KATHRYN R. COLBURN
EARLE C. COOLEY
DONNA R. CORCORAN
CHRISTOPHER J. CUNIO
ROBERT A. DELELLO
JENNIFER B. FUREY
MAITE GARCIA
MARTIN F. GAYNOR III
BRIAN D. GROSS*
JOHN T. HUGO
TRACY A. R. JOLLY
PATRICK T. JONES**
TIMOTHY C. KELLEHER III
HARRY L. MANION III
JOHN B. MANNING*
KENNETH J. MARTIN
KERRI L. MCCOMISKEY
JAIMIE A. MCKEAN
KEITH M. MCLEAN
LISA M. SNYDER
JESSICA A. STACY~
NICHOLAS D. STELLAKIS
JONATHAN F. TABASKY*†

COUNSELLORS AT LAW

21 CUSTOM HOUSE STREET

BOSTON, MASSACHUSETTS 02110-3536

(617) 737-3100

FACSIMILE (617) 737-3113

www.cooleymanionjones.com

PAUL F. BECKWITH
LEONARD T. EVERS
KEVIN M. GLYNN
ARTHUR GRIMALDO II~
FRANK A. MARINELLI*
PETER J. SCHNEIDER*
MELODY M. WILKINSON~
OF COUNSEL

RHODE ISLAND OFFICE
ONE CENTER PLACE
PROVIDENCE, RHODE ISLAND 0290:
(401) 273-0800

TEXAS OFFICE
100 EAST FIFTEENTH STREET, SUITE 3:
FORT WORTH, TEXAS 76102
(817) 870-1996

~ADMITTED IN TEXAS ONL
*ALSO ADMITTED IN RHODE ISLANI
†ALSO ADMITTED IN CONNECTICU
*ALSO ADMITTED IN NEW HAMPSHIR

October 13, 2005

**VIA FACSIMILE (781)238-0717**
**AND FIRST CLASS MAIL**

Thomas Masiello
Administrator
Massachusetts Laborers' Benefit Funds
14 New England Executive Park, Suite 200
Post Office Box 4000
Burlington, MA 01803-0900

     RE:  Lanco Scaffolding, Inc.

Dear Mr. Masiello:

     It was a pleasure meeting you and Mr. Tracia Tuesday morning.  As Carlos Gomez mentioned, and consistent with conversations that he has been having with Mr. Paul McNally over the past year, the Gomezes and Lanco are committed to repaying the Laborers Union for unpaid Union benefits.  The Gomezes propose paying $10,000.00 a month subject to approval by the US Attorney to the Fund, which will be held on account pending an audit by the Laborers as to the extent of the liability.  These payments will be credited toward the outstanding debt.  The Gomezes' intent is to work out a payment plan after the audit, which would include lump sum payment(s) and a different term and/or amount of installment payments, once their situation improves.

     In connection with the audit, attached is the analysis of loss prepared by the Government (32 pages dated 7/8/04) and an excerpt of an analysis done for Lanco in connection with

COOLEY MANION JONES LLP

Thomas Masiello
October 13, 2005
Page 2

Sentencing, which is included solely to assist you in
identifying the non-Union employees.  Also attached are letters
from Mr. McNally dated June 9, 2005 and July 7, 2005 submitted
by the Gomezes in connection with the sentencing.  Lanco will
make available for your auditors all other relevant documents in
their possession.

By accepting the $10,000.00 per month, the Laborers are not
prejudicing themselves in any way, including their right to
perform an audit, modify the monthly payment amount and/or
require lump sum payments.

After you have had a chance to consider this, please let me
know if you have any questions, comments or concerns.  If this
offer is amendable to the Laborers Union, we will seek the
approval of the US Attorney's Office to begin the payments.

Sincerely,

Christopher J. Cunio

CJC/ecn
Enclosures
149544v1

LANCO PAYROLL 1998

| Name | Hours Worked | Hours Reported | Difference | Rate | Total |
|------|--------------|----------------|------------|------|-------|
| | | | | | |
| **LABORERS** | | | | | |
| Jose Aristides Romero | 1748.5 | 865.5 | 883 | $8.70 | $7,682.10 |
| Pedro Romero | 2150.5 | 1040 | 1110.5 | $8.70 | $9,661.35 |
| Nery Ortiz | 2255 | 1040 | 1215 | $8.70 | $10,570.50 |
| Marcos Lima | 1097 | | 1097 | $8.70 | $9,543.90 |
| Mario Perlera | 2545.5 | | 2545.5 | $8.70 | $22,145.85 |
| Hector Castaneda | 2749 | | 2749 | $8.70 | $23,916.30 |
| Wilfredo Romero | 2249.5 | | 2249.5 | $8.70 | $19,570.65 |
| Roberto Castaneda | 947.5 | | 947.5 | $8.70 | $8,243.25 |
| Francisci Pleitez | 2946 | | 2946 | $8.70 | $25,630.20 |
| Jose Aguilar (Guevara) | 283 | | 283 | $8.70 | $2,462.10 |
| Amilcar Rivera | 611 | | 611 | $8.70 | $5,315.70 |
| Hector Palma | 556 | | 556 | $8.70 | $4,837.20 |
| Andres Zepeda | 855.5 | | 855.5 | $8.70 | $7,442.85 |
| | **20,994.00** | **2,945.50** | **18,048.50** | | **$157,021.95** |
| | | | | | |
| **CARPENTERS** | | | | | |
| Eleazar Ortiz | 2304.5 | | 2304.5 | $11.86 | $27,331.37 |
| Luis Umanzor | 640 | 720 | -80 | $11.86 | ($948.80) |
| Candido Castaneda | 247.5 | | 247.5 | $11.86 | $2,935.35 |
| | **3,192.00** | **720.00** | **2,472.00** | | **$29,317.92** |
| | | | | | |
| **TOTAL** | **24,186.00** | | | | **$186,339.87** |

**LANCO PAYROLL 1999**

| Name | Hours Worked | Hours Reported | Difference | Rate | Total |
|------|-------------|----------------|------------|------|-------|
| **LABORERS** | | | | | |
| Jose Aristides Romero | 2108.5 | 1036.5 | 1072 | $8.70 | $9,326.40 |
| Pedro Romero | 2139.5 | 1020 | 1119.5 | $8.70 | $9,739.65 |
| Nery Ortiz | 2151.5 | 1020 | 1131.5 | $8.70 | $9,844.05 |
| Marcos Lima | 1835 | 680 | 1155 | $8.70 | $10,048.50 |
| Mario Perlera | 2153.5 | | 2153.5 | $8.70 | $18,735.45 |
| Hector Castaneda | 2389 | | 2389 | $8.70 | $20,784.30 |
| Wilfredo Romero | 1902.5 | | 1902.5 | $8.70 | $16,551.75 |
| Roberto Castaneda | 2456 | | 2456 | $8.70 | $21,367.20 |
| Francisci Pleitez | 1868.5 | | 1868.5 | $8.70 | $16,255.95 |
| Amando Ortiz | 2001.5 | | 2001.5 | $8.70 | $17,413.05 |
| Oscar Ortiz | 1839 | | 1839 | $8.70 | $15,999.30 |
| Mario II Gutierrez | 939.5 | | 939.5 | $8.70 | $8,173.65 |
| Jose Nunez | 300.5 | | 300.5 | $8.70 | $2,614.35 |
| Manuel Perlera | 211 | | 211 | $8.70 | $1,835.70 |
| Nery Ortiz Jr. | 283 | | 283 | $8.70 | $2,462.10 |
| Ismael Ortiz | 351.5 | | 351.5 | $8.70 | $3,058.05 |
| Manuel Martinez | 265 | | 265 | $8.70 | $2,305.50 |
| Samuel Umanzo | 45 | | 45 | $8.70 | $391.50 |
| Jose Monterosso | 321 | | 321 | $8.70 | $2,792.70 |
| | **25,561.00** | **3,756.50** | **21,804.50** | | **$189,699.15** |
| | | | | | |
| **CARPENTERS** | | | | | |
| Eleazar Ortiz | 2106 | | 2106 | $12.80 | $26,956.80 |
| Luis Umanzor | 960 | 1040 | -80 | $12.80 | -$1,024.00 |
| Candido Castaneda | 2482 | | 2482 | $12.80 | $31,769.60 |
| | **5,548.00** | **1,040.00** | **4,508.00** | | **$57,702.40** |
| | | | | | |
| **TOTAL** | **31,109.00** | | | | **$247,401.55** |

LANCO PAYROLL 2000

| Name | Hours Worked | Hours Reported | Difference | Rate | Total |
|------|-------------|----------------|------------|------|-------|
| **LABORERS** | | | | | |
| Jose Aristides Romero | 2074 | 1020 | 1054 | $9.45 | $9,960.30 |
| Pedro Romero | 2160.5 | 1040 | 1120.5 | $9.45 | $10,588.73 |
| Nery Ortiz | 2228.5 | 1040 | 1188.5 | $9.45 | $11,231.33 |
| Marcos Lima | 2716.5 | 1080 | 1636.5 | $9.45 | $15,464.93 |
| Mario Perlera | 2222 | | 2222 | $9.45 | $20,997.90 |
| Hector Castaneda | 2261 | 520 | 1741 | $9.45 | $16,452.45 |
| Wilfredo Romero | 1994.5 | 520 | 1474.5 | $9.45 | $13,934.03 |
| Roberto Castaneda | 832.5 | | 832.5 | $9.45 | $7,867.13 |
| C. Armando Ortiz | 501 | | 501 | $9.45 | $4,734.45 |
| Oscar Ortiz | 508.5 | | 508.5 | $9.45 | $4,805.33 |
| Mario II Gutierrez | 573.5 | | 573.5 | $9.45 | $5,419.58 |
| Manuel Perlera | 569.5 | | 569.5 | $9.45 | $5,381.78 |
| Oscar Armando Nunez | 291.5 | | 291.5 | $9.45 | $2,754.68 |
| Karol Monsalve | 520 | | 520 | $9.45 | $4,914.00 |
| Antonio Tejada | 137 | | 137 | $9.45 | $1,294.65 |
| Jose Nunez | 267.5 | | 267.5 | $9.45 | $2,527.88 |
| | 19,858.00 | 5,220.00 | 14,638.00 | | $138,329.10 |
| | | | | | |
| **CARPENTERS** | | | | | |
| Eleazar Ortiz | 2197.5 | | 2197.5 | $13.69 | $30,083.78 |
| Luis Umanzor | 920 | 960 | -40 | $13.69 | ($547.60) |
| Candido Castaneda | 1334 | | 1334 | $13.69 | $18,262.46 |
| | 4,451.50 | 960.00 | 3,491.50 | | $47,798.64 |
| | | | | | |
| Total | 24,309.50 | | | | $186,127.74 |

7/8/2004  5:15 PM

LANCO SCAFFOLDING 2001

| NAME | HOURS WORKED | HOURS REPORTED | Difference | Rate | TOTAL |
|------|-------------|----------------|------------|------|-------|
| **LABORERS** | | | | | |
| | | | | | |
| Jose Aristides Romero | 2138.75 | 1580 | 558.75 | $10.50 | $5,866.88 |
| Pedro Romero | 2234 | 1040 | 1194 | $10.50 | $12,537.00 |
| Nery Ortiz | 2226.5 | 1040 | 1186.5 | $10.50 | $12,458.25 |
| Marcos Lima | 2961.5 | 1040 | 1921.5 | $10.50 | $20,175.75 |
| Mario Perlera | 2277.5 | 1040 | 1237.5 | $10.50 | $12,993.75 |
| Hector Castaneda | 1811.5 | 80 | 1731.5 | $10.50 | $18,180.75 |
| Wilfredo Romero | 2118.5 | 1040 | 1078.5 | $10.50 | $11,324.25 |
| C. Armando Ortiz | 667.5 | | 667.5 | $10.50 | $7,008.75 |
| Oscar Ortiz | 681 | | 681 | $10.50 | $7,150.50 |
| Mario Gutierrez | 841 | | 841 | $10.50 | $8,830.50 |
| Manuel Perlera | 843.5 | | 843.5 | $10.50 | $8,856.75 |
| Francisco Plietez | 739 | | 739 | $10.50 | $7,759.50 |
| Jose Perlera | 812 | | 812 | $10.50 | $8,526.00 |
| Ubesindo Perlera | 826.5 | | 826.5 | $10.50 | $8,678.25 |
| Jose Monterrosu | 739 | | 739 | $10.50 | $7,759.50 |
| Jose Leonel Aguilar(Guevara) | 868.5 | | 868.5 | $10.50 | $9,119.25 |
| Carlos Manuel Perlera | 630.5 | | 630.5 | $10.50 | $6,620.25 |
| Moiswe Parees | 367 | | 367 | $10.50 | $3,853.50 |
| William Saldana | 195 | | 195 | $10.50 | $2,047.50 |
| Jose Pleitez | 549 | | 549 | $10.50 | $5,764.50 |
| Gustavo Orellana | 545.5 | | 545.5 | $10.50 | $5,727.75 |
| Miguel Rodriguez | 194.5 | | 194.5 | $10.50 | $2,042.25 |
| Weneeslao Ramirez | 140 | | 140 | $10.50 | $1,470.00 |
| Tulio Reyes | 118 | | 118 | $10.50 | $1,239.00 |
| | 25,525.75 | 6860 | 18665.75 | | $195,990.38 |
| | | | | | |
| **CARPENTERS** | | | | | |
| Luis Umanzor | 900 | 1000 | -100 | $14.75 | ($1,475.00) |
| Candido Castaneda | 1361.5 | | 1361.5 | $14.75 | $20,082.13 |
| Eleazor Ortiz | 2158.5 | | 2158.5 | $14.75 | $31,837.88 |
| | 4,420.00 | 1000 | 3420 | | $50,445.00 |
| | | | | | |
| **TOTAL** | 29,945.75 | | | | $246,435.38 |

7/8/2004  3:48 PM

LANCO PAYROLL 2002

| Name | Hours Worked | Hours Reported | Difference | Rate | Total |
|------|------|------|------|------|------|
|  |  |  |  |  |  |
| **LABORERS** |  |  |  |  |  |
| Jose Aristides Romero | 2321.5 | 2168 | 153.50 | $10.80 | $1,657.80 |
| Pedro Romero | 2348.5 | 1576 | 772.50 | $10.80 | $8,343.00 |
| Nery Ortiz | 2485.0 | 1600 | 885.00 | $10.80 | $9,558.00 |
| Marcos Lima | 3292.0 | 1576 | 1716.00 | $10.80 | $18,532.80 |
| Mario Perlera | 2268.0 | 1576 | 692.00 | $10.80 | $7,473.60 |
| Hector Castaneda | 2585.5 | 1576 | 1009.50 | $10.80 | $10,902.60 |
| Wilfredo Romero | 2238.5 | 1600 | 638.50 | $10.80 | $6,895.80 |
| C. Armando Ortiz | 2287.0 |  | 2287.00 | $10.80 | $24,699.60 |
| Oscar Ortiz | 2328.5 |  | 2328.50 | $10.80 | $25,147.80 |
| Mario Gutierrez | 2704.5 |  | 2704.50 | $10.80 | $29,208.60 |
| Francisco Plietez | 2292.5 |  | 2292.50 | $10.80 | $24,759.00 |
| Jose Perlera | 2717.0 |  | 2717.00 | $10.80 | $29,343.60 |
| Ubesindo Perlera | 2653.5 |  | 2653.50 | $10.80 | $28,657.80 |
| Jose Monterrosu | 271.0 |  | 271.00 | $10.80 | $2,926.80 |
| Jose Leonel Aguilar (Guevara) | 2731.5 |  | 2731.50 | $10.80 | $29,500.20 |
| Carlos Manuel Perlera | 2546.5 |  | 2546.50 | $10.80 | $27,502.20 |
| Gustavo Orellana | 700.0 |  | 700.00 | $10.80 | $7,560.00 |
| Jose Plietez | 2782.0 |  | 2782.00 | $10.80 | $30,045.60 |
| Miguel Rodriguez | 2459.0 |  | 2459.00 | $10.80 | $26,557.20 |
| Weneslao Ramirez | 810.5 |  | 810.50 | $10.80 | $8,753.40 |
| Tulio Reyes | 2776.0 |  | 2776.00 | $10.80 | $29,980.80 |
| Bryon De Leon | 2414.0 |  | 2414.00 | $10.80 | $26,071.20 |
| Oscar Martinez | 2389.5 |  | 2389.50 | $10.80 | $25,806.60 |
| Manuel Perlera | 2285.0 |  | 2285.00 | $10.80 | $24,678.00 |
| Regino Perlera | 154.0 |  | 154.00 | $10.80 | $1,663.20 |
| Milton Granados | 1798.5 |  | 1798.50 | $10.80 | $19,423.80 |
| Jose Amilear Yones | 41.0 |  | 41.00 | $10.80 | $442.80 |
| Crus Loras Guillen | 45.5 |  | 45.50 | $10.80 | $491.40 |
| Osmin Guillen | 1791.5 |  | 1791.50 | $10.80 | $19,348.20 |
| Daniel Pleitez | 1380.5 |  | 1380.50 | $10.80 | $14,909.40 |
| Patrocinio Ortiz | 1347.5 |  | 1347.50 | $10.80 | $14,553.00 |
| Jose Santos | 1123.0 |  | 1123.00 | $10.80 | $12,128.40 |
| Fernando Brenes | 38.5 |  | 38.50 | $10.80 | $415.80 |
| Johnny Ortiz | 619.0 |  | 619.00 | $10.80 | $6,685.20 |
| Jose Lemus | 1768.0 |  | 1768.00 | $10.80 | $19,094.40 |
| Antonio Rodriguez | 178.0 |  | 178.00 | $10.80 | $1,922.40 |
| Carlos Arturo Gutierrez | 105.0 |  | 105.00 | $10.80 | $1,134.00 |
|  | 65,077.00 | 11,672.00 | 53,405.00 |  | $576,774.00 |
|  |  |  |  |  |  |
|  |  |  |  |  |  |

7/8/2004  5:18 PM

LANCO PAYROLL 2002

| Name | Hours Worked | Hours Reported | Difference | Rate | Total |
|------|------|------|------|------|------|
| | | | | | |
| | | | | | |
| CARPENTERS | | | | | |
| Eleazar Ortiz | 2,365.00 | | 2365.00 | $15.54 | $36,752.10 |
| Luis Omanzor | 960.00 | 1,480.00 | -520.00 | $15.54 | -$8,080.80 |
| Candido Castaneda | 2,246.00 | | 2246.00 | $15.54 | $34,902.84 |
| | 5,571.00 | 1,480.00 | 4,091.00 | | $63,574.14 |
| | | | | | |
| TOTAL | 70,648.00 | | | | $640,348.14 |

7/8/2004  5:18 PM

LANCO PAYROLL 2003

| Name | Hours Worked | Hours Reported | Difference | Rate | Total |
|------|-------------|----------------|-----------|------|-------|
| **LABORERS** | | | | | |
| Jose Aristides Romero | 1701.0 | 1760 | -59.0 | $11.85 | ($699.15) |
| Pedro Romero | 1597.5 | 1760 | -162.5 | $11.85 | ($1,925.63) |
| Nery Ortiz | 1842.5 | 1760 | 82.5 | $11.85 | $977.63 |
| Marcos Lima | 3126.5 | 1760 | 1366.5 | $11.85 | $16,193.03 |
| Mario Perlera | 1746.5 | 1760 | -13.5 | $11.85 | ($159.98) |
| Hector Castaneda | 1829.5 | 1760 | 69.5 | $11.85 | $823.58 |
| Wilfredo Romero | 1689.5 | 1760 | -70.5 | $11.85 | ($835.43) |
| C. Armando Ortiz | 1601.0 | | 1601.0 | $11.85 | $18,971.85 |
| Oscar Ortiz | 1625.5 | | 1625.5 | $11.85 | $19,262.18 |
| Mario Gutierrez | 1860.5 | | 1860.5 | $11.85 | $22,046.93 |
| Francisco Plietez | 1310.5 | | 1310.5 | $11.85 | $15,529.43 |
| Jose Perlera | 1442.0 | | 1442.0 | $11.85 | $17,087.70 |
| Ubesindo Perlera | 1602.5 | | 1602.5 | $11.85 | $18,989.63 |
| Jose Monterrosu | 318.5 | | 318.5 | $11.85 | $3,774.23 |
| Jose Leonel Aguilar (Guevara) | 1649.5 | | 1649.5 | $11.85 | $19,546.58 |
| Carlos Manuel Perlera | 1786.0 | | 1786.0 | $11.85 | $21,164.10 |
| Jose Piletez | 1909.0 | | 1909.0 | $11.85 | $22,621.65 |
| Miguel Rodriguez | 307.0 | | 307.0 | $11.85 | $3,637.95 |
| Tulio Reyes | 954.0 | | 954.0 | $11.85 | $11,304.90 |
| Bryon De Leon | 1625.0 | | 1625.0 | $11.85 | $19,256.25 |
| Oscar Martinez | 1734.0 | | 1734.0 | $11.85 | $20,547.90 |
| Manuel Perlera | 1725.0 | | 1725.0 | $11.85 | $20,441.25 |
| Milton Granado | 2054.5 | | 2054.5 | $11.85 | $24,345.83 |
| Daniel Pleitez | 1805.0 | | 1805.0 | $11.85 | $21,389.25 |
| Patrocinio Ortiz | 1835.0 | | 1835.0 | $11.85 | $21,744.75 |
| Jose Santos | 1245.5 | | 1245.5 | $11.85 | $14,759.18 |
| Fernando Brenes | 1919.5 | | 1919.5 | $11.85 | $22,746.08 |
| Johnny Ortiz | 40.0 | | 40.0 | $11.85 | $474.00 |
| Carlos Arturo Gutierrez | 2132.5 | | 2132.5 | $11.85 | $25,270.13 |
| Alberto Monterruso | 266.5 | | 266.5 | $11.85 | $3,158.03 |
| | 46,281.50 | 12,320.00 | 33,961.50 | | $402,443.78 |
| | | | | | |
| **CARPENTERS** | | | | | |
| Eleazar Ortiz | 1741.5 | | 1741.5 | $17.12 | $29,814.48 |
| Luis Umanzor | 780 | 1480 | -700.0 | $17.12 | ($11,984.00) |
| Candido Castaneda | 1621 | | 1621.0 | $17.12 | $27,751.52 |
| | 4,142.50 | 1,480.00 | 1,480.00 | | $45,582.00 |
| | | | | | |
| **TOTAL** | 50,424.00 | | | | $448,025.78 |
| | | | | | |
| Note: Hours worked from January - October | | | | | |

7/8/2004  5:19 PM

|      | Lanco Scaffolding Inc. |              |                |
|------|------------------------|--------------|----------------|
|      | Laborers               | Carpenters   | Total          |
| 1998 | $157,021.95            | $29,317.92   | $186,339.87    |
| 1999 | $189,699.15            | $57,702.40   | $247,401.55    |
| 2000 | $138,329.10            | $47,798.64   | $186,127.74    |
| 2001 | $195,990.80            | $50,445.00   | $246,435.80    |
| 2002 | $576,774.00            | $63,574.14   | $640,348.14    |
| 2003 | $402,443.78            | $45,582.00   | $448,025.78    |
|      | $1,660,258.78          | $294,420.10  | $1,954,678.88  |

LANCO SCAFFOLDING 1998

| | Arístides Romero | Pedro Romero | Nery Ortiz | Eleazar Ortiz | Luis Umanzor | Marcos Lima | Mario Perfera | Hector Castaneda | Francisco Pieltez | Wifredo Romero | Jose Aguilar (Guevara) | Roberto Castaneda | Amilcar Rivera | Hector Palma | Candido Castaneda | Andres Zepeda |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **January** | | | | | | | | | | | | | | | | |
| 9 | 36 | 40 | 40 | 43.5 | $1,000.00 | 44.5 | 42 | 46 | 46.5 | 42 | | | | | | 47 |
| 16 | 29 | 35 | 35 | 44 | $1,000.00 | 55 | 37.5 | 56 | 54 | 41 | | | | | | 49.5 |
| 23 | 27.5 | 34 | 34 | 33 | $375.00 | 36.5 | 37.5 | 42 | 42 | 33 | | | | | | 41.5 |
| 30 | 48 | 39 | 39 | 48 | $375.00 | 57 | 51 | 65 | 37.5 | 47 | | | | | 55.5 | 51.5 |
| **February** | | | | | | | | | | | | | | | | |
| 6 | 32 | 40 | 40 | 41 | $625.00 | 53 | 38 | 49 | 55.5 | 47.5 | | | | | | 47.5 |
| 12 | 40.5 | 40.5 | 40.5 | 40 | $625.00 | 54.5 | 50.5 | 55.5 | 57 | 42 | | | | | 49 | 42.5 |
| 20 | 33.5 | 32.5 | 32 | 32 | $625.00 | 49 | 31 | 48 | 48.5 | 34 | | | | | 55 | 44 |
| 27 | 32 | 32 | 30.5 | 32.5 | $625.00 | 41 | 34.5 | 39.5 | 51 | 33.5 | | | | | | 40 |
| **March** | | | | | | | | | | | | | | | | |
| 6 | 34.5 | 34 | 20 | 34 | $625.00 | 48 | 46 | 52 | 48.5 | 35 | | | | | | 33 |
| 13 | 40 | 41 | 40.5 | 41 | $625.00 | 46.5 | 40 | 45 | 52 | 41.5 | | | | | | 48.5 |
| 20 | 28 | 36 | 39 | 36 | $625.00 | 45 | 40.5 | 44 | 44 | 37 | | | | | | 41.5 |
| 27 | 43 | 41 | 43 | 42 | $625.00 | 48 | 44.5 | 53.5 | 50.5 | 41 | | | | | | 40.5 |
| **April** | | | | | | | | | | | | | | | | |
| 3 | 44 | 44.5 | 46 | 43 | $1,515.00 | 47 | 45 | 47 | 51 | 44.5 | | | | | | 47.5 |
| 10 | 44.5 | 46.5 | 45.5 | 50 | $1,515.00 | 62 | 52.5 | 63.5 | 68 | 42.5 | | | | | | 55 |
| 17 | 32 | 35.5 | 42 | 42.5 | $515.00 | 44.5 | 44 | 48 | 52.5 | 45.5 | | | | | | 38 |
| 24 | 41.5 | 41.5 | 41.5 | 40.5 | $515.00 | 48 | 44.5 | 46 | 49.5 | 44.5 | | | | | | 47 |
| **May** | | | | | | | | | | | | | | | | |
| 1 | 43.5 | 45 | 71.5 | 65.5 | $515.00 | 79.5 | 68.5 | 7.5 | 77 | 59 | | | | | | 54 |
| 8 | 17.5 | 34 | 46.5 | 47 | $515.00 | 54 | 42 | 50 | 56 | 48.5 | | | | | | 42 |
| 15 | 0 | 41.5 | 58 | 53.5 | 20=$515 | 65 | 59 | 59 | 62.5 | 33.5 | | | | | | 45 |
| 22 | 0 | 41 | 50.5 | 53 | 20=$515 | 63 | 56 | 59 | 65 | 42 | | | | | | 0 |
| 29 | 0 | 52 | 55.5 | 56 | 20=$515 | 56 | 49.5 | 61 | 64 | 44 | | | 40 | | | 0 |
| **June** | | | | | | | | | | | | | | | | |
| 5 | 0 | 49 | 53 | 50.5 | 20=$515 | $305.25 | 49.5 | 43.5 | 58.5 | 41 | | | 48.5 | 36.5 | 0 | |
| 12 | 0 | 50 | 52 | 50 | 20=$515 | $305.25 | 60 | 50 | 65.5 | 50 | | | 60 | 64 | | |
| 19 | 0 | 33 | 46.5 | 45.5 | 20=$515 | $305.25 | 56.5 | 50.5 | 61 | 50.5 | | | 58.5 | 63 | | |
| 26 | 0 | 42.5 | 40 | 43 | 20=$515 | $305.25 | 47 | 51.5 | 62.5 | 42.5 | | | 54 | 48.5 | | |
| **July** | | | | | | | | | | | | | | | | |
| 3 | 27 | 36 | 41.5 | 41.5 | 20=$515 | $305.25 | 49 | 50.5 | 58 | 36 | | | | 50 | | |
| 10 | 37.5 | 34.5 | 35.5 | 35.5 | 20=$515 | $305.25 | 54 | 53.5 | 60 | 38 | | | | 55 | | |
| 17 | 27 | 35.5 | 29 | 36.5 | 20=$515 | $305.25 | 41.5 | 39 | 51.5 | 35.5 | | | | 47.5 | | |
| 24 | 40 | 40 | 40 | 39 | 20=$515 | $305.25 | 45 | 45.5 | 49.5 | 40 | | | | 43.5 | | |
| 31 | 36.5 | 39.5 | 34 | 40 | 20=$515 | $305.25 | 45 | 49 | 53 | 35 | | | | 50.5 | | |

LANCO SCAFFOLDING 1998

| Date | Aristides Romero | Pedro Romero | Nery Ortiz | Eleazar Ortiz | Luis Umanzor | Marcos Lima | Mario Perfera | Hector Castaneda | Francisco Pieltez | Wilfredo Romero | Jose Aguilar (Guevara) | Roberto Castaneda | Amilcar Rivera | Hector Palma | Candido Castaneda | Andres Zepeda |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **August** | | | | | | | | | | | | | | | | |
| 7 | 32 | 32 | 33.5 | 34 | 20+$515 | $305.25 | 50.5 | -53.5 | 55 | 33.5 | | | | | | |
| 14 | 40 | 41 | 44 | 46.5 | 20+$515 | $305.25 | 55.5 | 49 | 63.5 | 42 | | | 55.5 | | 56 | |
| 21 | 40 | 41 | 41 | 43 | 20+$515 | $305.25 | 36 | 56 | 60 | 40 | | | 57 | | 41.5 | |
| 28 | 44 | 40 | 40 | 40 | 20+$515 | $305.25 | 53.5 | 55 | 66 | 42 | | | | | | |
| **September** | | | | | | | | | | | | | | | | |
| 4 | 0 | 48 | 46 | 51 | 20+$515 | $305.25 | 61.5 | 62.5 | 57.5 | 59 | 28.5 | 0 | | | | |
| 11 | 50 | 47 | 44.5 | 48 | 20+$515 | $305.25 | 53 | 58 | 71 | 52 | 51.5 | 58 | | | | |
| 18 | 51 | 43 | 43 | 49 | 20+$515 | $305.25 | 62.5 | 63.5 | 59 | 43.5 | 53 | 64 | | | | |
| 25 | 43 | 41.5 | 42.5 | 44.5 | 20+$515 | $305.25 | 51 | 54 | 57.5 | 42.5 | 46 | 54.5 | | | | |
| **October** | | | | | | | | | | | | | | | | |
| 2 | 46 | 46 | 45 | 47 | 20+$515 | $305.25 | 58 | 66 | 65 | 48.5 | 39.5 | 62.5 | | | | |
| 9 | 49 | 54.5 | 50 | 64 | 20+$515 | $305.25 | 56.5 | 59 | 57.5 | 65 | 64.5 | 58.5 | | | | |
| 16 | 44.5 | 41.5 | 49.5 | 45 | 20+$515 | $305.14 | 50 | 50 | 50 | 44.5 | 0 | 45 | | | | |
| 23 | 43 | 40 | 40 | 42 | 20+$515 | $305.25 | 47.5 | 50 | 52.5 | 43 | 0 | 49 | | | | |
| 30 | 41.5 | 42 | 40 | 40 | 20+$515 | $305.25 | 46 | 51.5 | 53.5 | 32.5 | 0 | 51 | | | | |
| **November** | | | | | | | | | | | | | | | | |
| 6 | 59.5 | 53.5 | 54 | 54 | 20+$515 | $305.25 | 62.5 | 65.5 | 69 | 56.5 | 0 | 66 | | | | |
| 13 | 63.5 | 63 | 44.5 | 57.5 | 20+$515 | $305.25 | 67.5 | 65 | 76 | 64.5 | 0 | 69 | | | | |
| 20 | 43 | 40.5 | 40 | 41 | 20+$515 | $305.25 | 49.5 | 50 | 57.5 | 36.5 | 0 | 53.5 | | | | |
| 27 | 42 | 48 | 49 | 48 | 20+$515 | $305.25 | 51 | 56 | 60 | 48.5 | 0 | 59 | | | | |
| **December** | | | | | | | | | | | | | | | | |
| 4 | 43 | 43 | 40 | 40 | 20+$515 | $305.25 | 43 | 46 | 51 | 45 | 0 | 49 | | | | |
| 11 | 41 | 41 | 42 | 43 | 20+$515 | $305.25 | 49 | 51 | 54 | 45.5 | 0 | 55 | | | | |
| 18 | 44 | 43 | 47.5 | 43.5 | 20+$515 | $305.25 | 49.5 | 43.5 | 55 | 49.5 | 0 | 52 | | | | |
| 24 | 37.5 | 30.5 | 41 | 40 | 20+$515 | $305.25 | 48.5 | 48.5 | 52 | 40 | 0 | 51 | | | 38 | |
| 31 | 36 | 44 | 46.5 | 43.5 | 20+$515 | $305.25 | 47 | 50.5 | 51.5 | 44.5 | 0 | 50.5 | | | 50 | |
| | 1748.5 | 2150.5 | 2255 | 2304.5 | 640 | 1097 | 2545.5 | 2749 | 2946 | 2249.5 | 283 | 947.5 | 611 | 556 | 247.5 | 855.5 |

1998 Total Hours Worked*    24,186.00

*Additional $30,350 paid to Luis Umanzor    $19,570.00
*Additional $9,462.64 paid to Marcos Lima    $10,780.00

$9,462.64

LANCO SCAFFOLDING 1999

| | Aristides Romero | Pedro Romero | Nery Ortiz | Eleazar Ortiz | Luis Umanzor | Marcos Lima | Mario Perera | Hector Castaneda | Wilfredo Romero | Roberto Castaneda | Candido Castaneda | Armando Ortiz | Oscar Ortiz | Mario Gutierrez 11 | Jose Nunez | Manuel Perera | Nery Ortiz Jr. | Ismael Ortiz | Manuel Martinez | Samuel Umanzor | Francisco Paelaz | Jose A. Montenosso |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **January** | | | | | | | | | | | | | | | | | | | | | | |
| 8 | 40 | 23 | 40 | 41 | 38.5 | $305.25 | 35.5 | 46.5 | 37 | 44 | 47.5 | | | | | | | | | | 49 | |
| 15 | 20 | 23 | 35 | 32 | 24.5 | $305.25 | 28 | 32 | 21 | 32.5 | 30.5 | | | | | | | | | 45 | 32.5 | |
| 22 | 38.5 | 36 | 33 | 32.5 | 32.5 | $305.25 | 41.5 | 46.5 | 33.5 | 38.5 | 37 | | | | | | | | | 0 | 48 | |
| 29 | 43 | 41.5 | 40 | 39.5 | 39.5 | $305.25 | 42.5 | 49.5 | 40 | 47.5 | 48 | | | | | | | | | | 46.5 | |
| **February** | | | | | | | | | | | | | | | | | | | | | | |
| 5 | 40 | 38 | 41 | 42.5 | 42.5 | $305.25 | 43 | 52 | 41 | 48.5 | 48.5 | | | | | | | | | | 43 | |
| 12 | 24 | 20 | 20 | 19 | 19 | $305.25 | 40 | 45.5 | 23 | 40.5 | 43.5 | | | | | | | | | | 38 | |
| 19 | 43.5 | 41 | 41 | 40 | 40 | $305.00 | 40 | 45.5 | 41 | 50.5 | 49 | | | | | | | | | | 56.5 | |
| 26 | 44.5 | 30 | 43 | 43 | 40 | $305.25 | 49.5 | 58 | 33 | 49 | 61.5 | | | | | | | | | | 62.5 | |
| **March** | | | | | | | | | | | | | | | | | | | | | | |
| 5 | 37.5 | 42.5 | 46.5 | 48 | 48 | $305.00 | 49 | 56 | 41.5 | 49 | 49.5 | | | | | | | | | | 57.5 | |
| 12 | 42 | 41 | 41 | 38.5 | 38.5 | $305.00 | 41.5 | 51.5 | 46 | 46 | 51 | 24.5 | | | | | | | | | 52 | |
| 19 | 39.5 | 42 | 40 | 39 | 39 | $305.00 | 42 | 42 | 0 | 27.5 | 50.5 | 40 | | | | | | | | | 49.5 | |
| 26 | 37 | 40.5 | 39 | 37 | 37 | $305.25 | 35 | 48.5 | 40.5 | 46.5 | 51.5 | 40.5 | | | | | | | | | 54 | |
| **April** | | | | | | | | | | | | | | | | | | | | | | |
| 2 | 39 | 37.5 | 35.5 | 35.5 | 35.5 | $305.25 | 36.5 | 37 | 38.5 | 42 | 44 | | | | | | | | | | | |
| 9 | 41 | 39 | 49 | 49 | 49.5 | $305.25 | 56 | 59 | 38.5 | 50 | 62.5 | | 45 | | | | | | | | 43 | |
| 16 | 41 | 41.5 | 44.5 | 42 | 42 | $305.25 | 42 | 47.5 | 41.5 | 45 | 47.5 | | 44 | | | | | | | | 50 | |
| 23 | 29 | 33.5 | 40.5 | 40.5 | 28 | $305.25 | 34 | 45.5 | 38.5 | 45.5 | 59.5 | | 38.5 | | | | | | | | 48.5 | |
| 30 | 47 | 48 | 48 | 49 | 46 | $305.25 | 50.5 | 49.5 | 45 | 58 | 20 | | 48.5 | 48 | | | | | | | 64 | |
| **May** | | | | | | | | | | | | | | | | | | | | | | |
| 7 | 54 | 51 | 39.5 | 49 | 49 | 62.5 | 52 | 55.5 | 46 | 57.5 | 0 | | 51 | 51.5 | | | | | | | 40 | |
| 14 | 48 | 52 | 44 | 48.5 | 48.5 | 53.5 | 46 | 53.5 | 43.5 | 52 | 40 | | 52.5 | 52 | | | | | | | 40 | |
| 21 | 57.5 | 56 | 52 | 50 | 50 | 71 | 67 | 47.5 | 54 | 57 | 76 | | 51 | 60.5 | | | | | | | 75 | |
| 28 | 49 | 46 | 46.5 | 44.5 | 44.5 | 41.5 | 44.5 | 45 | 42 | 40 | 39.5 | | 64 | 70 | | | | | | 66 | 50.5 | |
| **June** | | | | | | | | | | | | | | | | | | | | | | |
| 4 | 44.5 | 47.5 | 48 | 52 | 52 | 51 | 44 | 54 | 45 | 45 | 83 | | 55.5 | 58 | | | | | 32 | | 66.5 | |
| 11 | 42 | 48.5 | 50.5 | 51.5 | 43.5 | 56.5 | 48.5 | 44.5 | 51.5 | 53.5 | 54 | | 52.5 | 52.5 | | | | | 61 | | 53.5 | |
| 18 | 45.5 | 42.5 | 42.5 | 43 | 43 | 41.5 | 44.5 | 44.5 | 37.5 | 50.5 | 52 | | 47.5 | 49.5 | | | | | 54 | | 53 | |
| 25 | 43 | 45.5 | 41.5 | 41.5 | 42 | 57 | 48 | 50 | 41 | 53 | 56 | | 44 | 49.5 | | | | | 31.5 | | 51.5 | |

LANCO SCAFFOLDING 1999

| Date | Aristedes Romero | Pedro Romero | Nery Ortiz | Eleazar Ortiz | Luis Umanzor | Marcos Lima | Mario Perlera | Hector Castaneda | Wilfredo Romero | Roberto Castaneda | Candido Castaneda | Armando Ortiz | Oscar Ortiz | Mario Guiterrez 11 | Jose Nunez | Manuel Perlera | Nery Ortiz Jr. | Ismael Ortiz | Manuel Martinez | Samuel Umanzor | Francisco Pleitez | Jose A Monterosso |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **July** | | | | | | | | | | | | | | | | | | | | | | |
| 2 | 45 | 40.5 | 44 | 48 | 20+$515 | 52 | 47 | 50 | 37.5 | 52 | 52 | 51 | 45 | | | | | | | | 57 | |
| 9 | 46.5 | 41 | 49.5 | 46.5 | 20+$515 | 55 | 40 | 53 | 43.5 | 57.5 | 48 | 55 | 55 | | | | | | | | 60 | |
| 16 | 43.5 | 40 | 40.5 | 40.5 | 20+$515 | 45 | 41 | 42 | 39.5 | 48 | 47.5 | 48 | 44 | | | | | | | | 50.5 | |
| 23 | 38.5 | 40.5 | 46 | 40 | 20+$515 | 47 | 41.5 | 40 | 40.5 | 52 | 51.5 | 45 | 48 | | | | | 49.5 | | | 54 | |
| 30 | 43 | 38 | 39 | 41 | 20+$515 | 37.5 | 39.5 | 43 | 39.5 | 38.5 | 42.5 | 35.5 | 40 | | | | | 38 | | | 51 | 30 |
| **August** | | | | | | | | | | | | | | | | | | | | | | |
| 6 | 41.5 | 51 | 46.5 | 52.5 | 20+$515 | 59.5 | 48.5 | 49 | 43.5 | 54.5 | 55 | 52.5 | 53 | | | | 51.5 | 47.5 | | | 58 | 57 |
| 13 | 53 | 49 | 45 | 50 | 20+$515 | 53.5 | 50.5 | 49 | 50.5 | 59.5 | 59.5 | 58 | 58 | | | | 45 | 54.5 | | | 50 | 48 |
| 20 | 31.5 | 34.5 | 33.5 | 28.5 | 20+$515 | 46.5 | 39.5 | 38 | 34 | 42 | 40 | 63.5 | 63.5 | | | | 0 | 50 | | | 43 | 54.5 |
| 27 | 44 | 45 | 42 | 40 | 20+$515 | 50 | 40.5 | 41.5 | 34.5 | 52.5 | 51 | 45 | 45 | | | | 0 | 9.5 | | | 52 | 45.5 |
| **September** | | | | | | | | | | | | | | | | | | | | | | |
| 3 | 43.5 | 42 | 44 | 44 | 20+$515 | 56 | 42.5 | 45 | 42 | 54 | 54 | 44 | 51 | 57 | | | | | | | 45.5 | 50 |
| 10 | 43 | 43 | 43 | 43 | 20+$515 | 52 | 46.5 | 41 | 43.5 | 49 | 49 | 37.5 | 45 | 52 | | | | | | | 43.5 | 36 |
| 17 | 41 | 36 | 35 | 40 | 20+$515 | 45 | 38 | 39.5 | 34.5 | 46.5 | 47 | | 44.5 | | | | | | | | 16 | 0 |
| 24 | 29 | 28.5 | 30 | 28 | 20+$515 | 49 | 34.5 | 28 | 30 | 47 | 44 | 31 | 38 | 48.5 | | | | | | | 0 | 0 |
| **October** | | | | | | | | | | | | | | | | | | | | | | |
| 1 | 40.5 | 42 | 47 | 45 | 20+$515 | 52 | 47.5 | 48 | 41.5 | 43.5 | 45 | 43.5 | 43.5 | 47 | | | | | | | | |
| 8 | 25 | 43 | 33 | 47.5 | 20+$515 | 33 | 32 | 36.5 | 37 | 34.5 | 45.5 | 44.5 | 44.5 | 48 | | | | | | | | |
| 15 | 16.5 | 43 | 41.5 | 36 | 20+$515 | 49 | 40 | 43 | 38 | 50.5 | 47 | 45 | 45 | 47 | | | | | | | | |
| 22 | 42 | 39.5 | 39.5 | 40.5 | 20+$515 | 60 | 50 | 50.5 | 50.5 | 59.5 | 45 | 43.5 | 46.5 | | | | | | | | | |
| 29 | 37 | 36 | 32.5 | 0 | 20+$515 | 59.5 | 36 | 37 | 52.5 | 54 | 42 | 47.5 | 47.5 | 53.5 | | | | | | | | |
| **November** | | | | | | | | | | | | | | | | | | | | | | |
| 5 | 47 | 43.5 | 40 | | 20+$515 | 53 | 40.5 | 45.5 | 42 | 49 | 49 | 50 | 51 | | | | | | | | | |
| 12 | 21 | 21 | 22 | 24.5 | 20+$515 | 32 | 32 | 27 | 20.5 | 29 | 29.5 | 47.5 | 49 | 51 | | | | | | | | |
| 19 | 39.5 | 39.5 | 41 | 40 | 20+$515 | 50 | 0 | 42 | 39.5 | 50.5 | 50 | 48 | 45 | 50 | | | | | | | | |
| 24 | 45 | 40 | 49.5 | 47 | 20+$515 | 58.5 | 0 | 47 | 40 | 54.5 | 53 | 56.5 | | 58.5 | | 26 | | | | | | |
| **December** | | | | | | | | | | | | | | | | | | | | | | |
| 3 | 44.5 | 40 | 40 | 40 | 20+$515 | 48 | 41.5 | 39 | 40 | 16 | 47 | 43.5 | 42 | 45 | 44 | | | | | | | |
| 10 | 46 | 59.5 | 56.5 | 54.5 | 20+$515 | 78.5 | 57 | 64 | 40 | 60 | 74 | 58.5 | 63 | 75 | 69.5 | | | | | | | |
| 17 | 52 | 64 | 52.5 | 55.5 | 20+$515 | 63 | 58 | 49 | 0 | 56.5 | 54.5 | 55.5 | 61 | 64 | 59 | | | | | | | |
| 23 | 40.5 | 44.5 | 32 | 43 | 20+$515 | 47 | 41.5 | 41 | 0 | 47 | 50 | 48.5 | 45 | 48.5 | 48.5 | | | | | | | |
| 30 | 41 | 50.5 | 48 | 44 | 20+$515 | 49.5 | 42 | 48 | 0 | 44 | 49.5 | 46 | 46 | 52.5 | 53.5 | 59.5 | | | | | | |
| | | | | | | | | | | | | | | | | | | | | | | |
| **Totals** | 2108.5 | 2139.5 | 2151.5 | 2106 | 960 | 1635 | 2153.5 | 2389 | 1902.5 | 2456 | 2492 | 2001.5 | 1839 | 939.5 | 300.5 | 211 | 283 | 351.5 | 265 | 45 | 1868.5 | 321 |

1999 Total Hours Worked: 31,109.001

$26,760.00 (Luis Umanzor)    $5,189.25 (Marcos Lima)

*Additional $26,760 paid to Luis Umanzor
**Additional $5,189.25 paid to Marcos Lima

7/6/2004 5:55 PM

LANCO SCAFFOLDING 2000

| | Aristides Romero | Pedro Romero | Nery Ortiz | Eleazar Ortiz | Luis Umanzor | Marcos Lima | Mario Perfera | Hector Castaneda | Wilfredo Romero | Roberto Castaneda | Candido Castaneda | C. Armando Ortiz | Oscar Ortiz | Mario II Gutierrez | Manuel Perfera | Oscar Armando Nunez | Karol Monsalve | Antonio Tejada | Jose Nunez |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **January** 7 | 24 | 40 | 40 | 40 | 20+$1000 | 46.5 | 38.5 | 24 | 40 | 40 | 47 | 44 | 44 | 46 | 46 | | 40 | | 38.5 |
| 14 | 40 | 40 | 40 | 40 | 20+$1000 | 40 | 39 | 39 | 42 | 39 | 48 | 44.5 | 45.5 | 45.5 | 46.5 | | 28.5 | | 46.5 |
| 21 | 37 | 39.5 | 36.5 | 36.5 | 20+$1000 | 49.5 | 37.5 | 38.5 | 37 | 31.5 | 45.5 | 36 | 40 | 45 | 45.5 | 37 | | 41.5 | 41.5 |
| 28 | 0 | 42 | 41 | 40 | 20+$1000 | 48 | 38 | 38 | 39.5 | 40 | 47.5 | 41 | 40 | 47.5 | 47 | 38 | | 29.5 | 34.5 |
| **February** 4 | 52.5 | 28.5 | 31.5 | 27 | 20+$1000 | 47.5 | 33 | 33 | 33 | 28 | 33.5 | 31 | 33 | 42.5 | 38.5 | 0 | 40 | 37.5 | 35.5 |
| 11 | 32 | 32.5 | 30.5 | 30 | 20+$1000 | 48.5 | 37.5 | 37.5 | 31 | 30.5 | 40 | 31 | 30 | 35 | 35.5 | 29 | 40 | 0 | 33.5 |
| 18 | 44 | 44.5 | 41.5 | 40 | 20+$1000 | 49.5 | 40 | 43 | 32 | 31.5 | 49.5 | 41 | 44 | 49 | 46.5 | 45 | 40 | 0 | 33.5 |
| 25 | 32 | 36 | 34 | 33 | 20+$1000 | 45.5 | 32 | 31 | 32 | 31 | 45.5 | 32 | 32 | 38 | 43.5 | 31.5 | 40 | 0 | 1.5 |
| **March** 3 | 39 | 44 | 42.5 | 42.5 | 20+$1000 | 49 | 40.5 | 48 | 41.5 | 40 | 48 | 40.5 | 40.5 | 46.5 | 46.5 | 44.5 | 40 | | |
| 10 | 40 | 40 | 40 | 40 | 20+$1000 | 48 | 40 | 40 | 40 | 40 | 42.5 | 40 | 40 | 42.5 | 40 | 40 | 40 | | |
| 17 | 40 | 40 | 40 | 36.5 | $0 | 43 | 40 | 40 | 40 | 40 | 20 | 40 | 40 | 40 | 40 | 0 | 0 | | |
| 24 | 40 | 40 | 40 | 40 | $0 | 45 | 40 | 40 | 40 | 40 | 20 | 40 | 40 | 40 | 40 | 0 | 0 | | |
| 31 | 40 | 42.5 | 40.5 | 40 | $0 | 51.5 | 39 | 40 | 39 | 41 | 47 | 40 | 39.5 | 55 | 54 | 0 | | | |
| **April** 7 | 42 | 32.5 | 37 | 32 | $0 | 59 | 40 | 43.5 | 33.5 | 20 | 20 | | | | | | 40 | | |
| 14 | 43 | 41 | 41.5 | 40.5 | $0 | 50.5 | 40 | 45 | 45 | 20 | 20 | | | | | | 40 | | |
| 21 | 46.5 | 50.5 | 46.5 | 48 | $0 | 52.5 | 42 | 46 | 12 | 20 | 20 | | | | | | 40 | | |
| 27 | 5 | 6.5 | 6.5 | 41 | 20+$1000 | 46.5 | 32 | 40 | 1.5 | 0 | 0 | | | | | | 0 | | |
| **May** 5 | 34 | 30 | 42 | 41 | 20+$700 | 46.5 | 41 | 33.5 | 29 | 20 | 20 | | | | | | | | |
| 12 | 61 | 53.5 | 50.5 | 49.5 | 20+$1000 | 60 | 48.5 | 50 | 49.5 | 20 | 20 | | | | | | | | |
| 19 | 42.5 | 45 | 48 | 47 | 20+$1000 | 65.5 | 55 | 54.5 | 50 | 20 | 20 | | | | | | | | |
| 26 | 53.5 | 51 | 63 | 62 | 20+$1000 | 77 | 56.5 | 62 | 52.5 | 20 | 20 | | | | | | | | |
| **June** 2 | 42 | 25 | 40 | 47 | 20+$1000 | 66.5 | 45 | 50 | 42 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | | | |
| 9 | 57 | 48.5 | 59 | 58.5 | 20+$1000 | 62.5 | 58.5 | 61.5 | 53 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | | | |
| 16 | 37 | 57.5 | 57.5 | 53.5 | 20+$1000 | 78 | 61.5 | 55 | 47 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | | | |
| 23 | 43.5 | 45 | 50.5 | 49 | 20+$1000 | 52 | 42 | 45 | 46 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | | | |
| 30 | 42.5 | 43.5 | 40.5 | 40 | 20+$1000 | 50.5 | 40 | 41 | 39 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | | | |
| **July** 7 | 43.5 | 43 | 46 | 40.5 | 20+$1000 | 40.5 | 40 | 40 | 40 | 40 | 20 | 40 | 40 | 40 | 40 | 44.5 | | | |
| 14 | 42 | 39.5 | 40 | 40 | 20+$1000 | 46.5 | 39.5 | 42.5 | 40 | 40 | 20 | 40 | 40 | 40 | 40 | 40 | | | |
| 21 | 43.5 | 41.5 | 42.5 | 39.5 | 20+$1000 | 50.5 | 39 | 43.5 | 39.5 | 20 | 20 | 40 | 40 | 40 | 40 | 0 | | | |
| 28 | 37.5 | 41.5 | 39.5 | 34 | 20+$1000 | 51.5 | 40 | 40 | 40 | 20 | 20 | 40 | 38.5 | 40 | 40 | 0 | | | |

LANCO SCAFFOLDING 2000

| Date | Aristides Romero | Pedro Romero | Nery Ortiz | Eleazar Ortiz | Luis Umanzor | Marcos Lima | Mario Peñera | Hector Castaneda | Wilfredo Romero | Roberto Castaneda | Candido Castaneda | C. Armando Ortiz | Oscar Ortiz | Mario II Gutierrez | Manuel Peñera | Oscar Armando Nuñez | Karol Monsalve | Antonio Tejada | Jose Nuñez |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **August** | | | | | | | | | | | | | | | | | | | |
| 4 | 36 | | 32 | 32 | 20+$1000 | 48.5 | | 31 | 32 | | 20 | 20 | | | | | | | |
| 11 | 43.5 | 44.5 | 40 | 39.5 | 20+$1000 | 47.5 | | 39.5 | 40 | | 20 | 20 | | | | | | | |
| 18 | 44 | 44 | 44 | 44 | 20+$1000 | 53 | | 41 | 43.5 | | 0 | 20 | | | | | | | |
| 25 | 40 | | 52 | 49 | 20+$1000 | 30.5 | 58 | 20 | 20 | | 0 | 20 | | | | | | | |
| **September** | | | | | | | | | | | | | | | | | | | |
| 1 | 41 | 45 | 43.5 | 43.5 | 20+$1000 | 13.5 | 43 | 44.5 | 41 | 0 | 20 | 20 | | | | | | | |
| 8 | 42.5 | 40 | 44.5 | 44.5 | 20+$1000 | 53 | 40 | 45 | 42 | 0 | 20 | 20 | | | | | | | |
| 15 | 47.5 | 44 | 44 | 44 | 20+$1000 | 62 | 47.5 | 42 | 41.5 | 0 | 20 | 20 | | | | | | | |
| 22 | 31.5 | 34.5 | 39 | 38 | 20+$1000 | 68 | 36.5 | 24.5 | 32.5 | 0 | 20 | 20 | | | | | | | |
| 29 | 40.5 | 38 | 38.5 | 43.5 | 20+$1000 | 49 | 41 | 39 | 39 | 0 | 20 | 20 | | | | | | | |
| **October** | | | | | | | | | | | | | | | | | | | |
| 6 | 43.5 | 43.5 | 38 | 44 | 20+$1000 | 51 | 43.5 | 44.5 | 40.5 | 0 | 20 | 20 | | | | | | | |
| 13 | 40 | 42 | 41 | 37.5 | 20+$1000 | 26 | 40 | 40 | 40 | 0 | 20 | 20 | | | | | | | |
| 20 | 29.5 | 28.5 | 29.5 | 34.5 | 20+$1000 | 43 | 30 | 38.5 | 25 | 0 | 20 | 20 | | | | | | | |
| 27 | 36.5 | 40 | 40.5 | 40.5 | 20+$1000 | 52.5 | 46 | 46.5 | 38 | 0 | 20 | 20 | | | | | | | |
| **November** | | | | | | | | | | | | | | | | | | | |
| 3 | 40 | 41 | 41 | 39 | 20+$1000 | 60 | 44.5 | 53 | 39.5 | 0 | 20 | 20 | | | | | | | |
| 10 | 49 | 49.5 | 46 | 46 | 20+$1000 | 59.5 | 52 | 52 | 47.5 | 0 | 20 | 20 | | | | | | | |
| 17 | 33.5 | 54 | 33 | 35 | 20+$1000 | 55 | 43.5 | 43.5 | 37 | 0 | 20 | 20 | | | | | | | |
| 24 | 0 | 54 | 53 | 48 | 20+$1312 | 73 | 56.5 | 53 | 50 | 0 | 20 | 20 | | | | | | | |
| **December** | | | | | | | | | | | | | | | | | | | |
| 1 | 54.5 | 53 | 45 | 53 | 20+$1000 | 60 | 49.5 | 53 | 52 | 0 | 20 | 20 | | | | | | | |
| 8 | 46.5 | 54 | 55 | 55.5 | 20+$1000 | 60 | 20 | 57 | 54.5 | 0 | 20 | 20 | | | | | | | |
| 15 | 54 | 55.5 | 55 | 46.5 | 20+$1312 | 62 | 50.5 | 57 | 48.5 | 0 | 20 | 20 | | | | | | | |
| 22 | 53.5 | 52.5 | 48 | 49 | 20+$1312 | 61 | 56 | 57 | 49.5 | 0 | 20 | 20 | | | | | | | |
| 29 | 53 | 45 | 55.5 | 42 | 20+$1312 | 65 | 57 | 53 | 51 | 0 | 20 | 20 | | | | | | | |
| **Total** | 2074 | 2160.5 | 2228.5 | 2197.5 | 920 | 2716.5 | 2222 | 2261 | 1994.5 | 832.5 | 1334 | 501 | 508.5 | 573.5 | 569.5 | 291.5 | 520 | 137 | 267.5 |

2000 Total Hours Worked*  24,309.50

$46,948.00

*Additional $46,948 paid to Luis Umanzor

7/6/2004  11:47 AM

LANCO SCAFFOLDING 2001

| | Aristides Romero | Pedro Romero | Nery Ortiz | Eleazar Ortiz | Luis Umanzor | Marcos Lima | Mario Perfera | Hector Castaneda | Wilfredo Romero | Candido Castaneda | C. Armando Ortiz | Oscar Ortiz | Mario II Gutierez | Manuel Perera | Francisco Pleitez | Jose Perera | Ubensindo Perera | Jose A. Monterrosa | Jose Leonel Aguilar(Guevara) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **August** | | | | | | | | | | | | | | | | | | | |
| 3 | 51.5 | 49 | 50 | 42 | 20+$1000 | 63.5 | 54.5 | 50 | 44 | 20 | | | | | | | | | |
| 10 | 44.5 | 46 | 44 | 44 | 20+$1000 | 56 | 39 | 40.5 | 40 | 20 | | | | | | | | | |
| 17 | 41.5 | 41 | 47.5 | 41 | 20+$1000 | 59 | 47 | 43.5 | 45.5 | 20 | | | | | | | | | |
| 24 | 40 | 42.5 | 42 | 47.5 | 20+$1000 | 64.5 | 45 | 44.5 | 39 | 20 | | | | | | | | | |
| 31 | 45.5 | 24.5 | 48 | 41 | 20+$1000 | 56.5 | 46.5 | 46.5 | 43.5 | 20 | | | | | | | | | |
| **September** | | | | | | | | | | | | | | | | | | | |
| 7 | 40 | 38 | 35 | 34.5 | 20+$1000 | 35 | 32.5 | 37 | 27.5 | 20 | | | | | | | | | |
| 14 | 48 | 38.5 | 39 | 45.5 | 20+$1000 | 61 | 41.5 | 48 | 41.5 | 20 | | | | | | | | | |
| 21 | 44 | 38.5 | 37 | 34 | 20+$1000 | 53 | 34.5 | 45 | 32.5 | 33 | 33.5 | 34 | 48.5 | 48.5 | 35 | 44.5 | 46 | 39 | |
| 28 | 44 | 43 | 48.5 | 40 | 20+$1000 | 51.5 | 43 | 40.5 | 32.5 | 32.5 | 40 | 40 | 28 | 50 | 45 | 54 | 47.5 | 42 | |
| **October** | | | | | | | | | | | | | | | | | | | |
| 5 | 40 | 37 | 48.5 | 40 | 20+$1000 | 57 | 46.5 | 47 | 40.5 | 40.5 | 40.5 | 40.5 | 56 | 46 | 50 | 54.5 | 58 | 40 | |
| 11 | 46 | 45.5 | 20 | 43 | 20+$1000 | 57.5 | 41 | 43 | 38.5 | 43 | 41.5 | 43 | 56.5 | 56.5 | 52.5 | 37 | 56 | 41 | |
| 19 | 41.5 | 49 | 34 | 45.5 | 20+$1000 | 67.5 | 51 | 45.5 | 37 | 42.5 | 48.5 | 48.5 | 63 | 64.5 | 53 | 62.5 | 58 | 55.5 | |
| 26 | 42 | 44.5 | 42 | 40 | 20+$1000 | 60 | 44.5 | 43.5 | 42.5 | 41 | 39.5 | 43.5 | 51.5 | 55 | 43 | 55 | 52 | 40 | |
| **November** | | | | | | | | | | | | | | | | | | | |
| 2 | 50 | 38 | 53.5 | 42 | 20+$1000 | 96 | 43.5 | 55.5 | 44 | 45.5 | 48.5 | 48.5 | 59.5 | 63 | 48 | 58 | 59 | 50.5 | |
| 9 | 43 | 48.5 | 51 | 44.5 | 20+$1000 | 56 | 48.5 | 42 | 34.5 | 40.5 | 48 | 49.5 | 56 | 52.5 | 47 | 53.5 | 55.5 | 47 | |
| 16 | 58 | 49 | 43.5 | 47 | 20+$1000 | 61.5 | 41 | 41.5 | 43 | 41.5 | 41.5 | 42 | 59.5 | 56.5 | 49.5 | 57.5 | 58 | 49.5 | |
| 23 | 52 | 52 | 51 | 47.5 | 20+$1000 | 62.5 | 49 | 48 | 48 | 42.5 | 48 | 48 | 59 | 58 | 55 | 56.5 | 56.5 | 55.5 | |
| 30 | 13.5 | 31 | 33 | 40 | 20+$1000 | 55 | 32 | 25 | 30 | 30 | 46 | 46 | 59 | 61.5 | 55 | 51 | 48 | 58.5 | |
| **December** | | | | | | | | | | | | | | | | | | | |
| 7 | 40 | 56.5 | 54.5 | 49.5 | 20+$1000 | 71 | 49.5 | 47.5 | 46.5 | 47.5 | 52.5 | 55.5 | 61.5 | 59 | 57 | 57.5 | 62.5 | 54.5 | |
| 14 | 45 | 50 | 45 | 42 | 20+$1000 | 59.5 | 43.5 | 45 | 40.5 | 42 | 40.5 | 41.5 | 53.5 | 52.5 | 45 | 51.5 | 52.5 | 48 | |
| 21 | 42.5 | 40 | 43 | 41 | 20+$1000 | 72.5 | 46 | 46 | 40 | 40 | 40 | 40 | 60.5 | 59 | 42 | 59 | 60.5 | 51.5 | |
| 28 | 58 | 58 | 65 | 55 | 20+$1000 | 84 | 52.5 | 60.5 | 53.5 | 62 | 57.5 | 60.5 | 69 | 61 | 62 | 60 | 56.5 | 56.5 | |
| | 2138.75 | 2234 | 2326.5 | 2158.5 | 900 | 2961.5 | 2277.5 | 1811.5 | 2118.5 | 1361.5 | 667.5 | 681 | 841 | 843.5 | 739 | 812 | 826.5 | 739 | 865.5 |

2001 Total Hours Worked* 29,946.75

*Additional $45,000 paid to Luis Umanzor

7/8/2004 5:40 PM

LANCO SCAFFOLDING 2001

| | | Santos Flores | Carlos Manuel Periera | Moises Paredes | William Saldana | Jose Pleitez | Gustavo Orellana | Miguel Rodriguez | Wenceslao Ramirez | Tulio Reyes |
|---|---|---|---|---|---|---|---|---|---|---|
| January | 5 | | | | | | | | | |
| | 12 | | | | | | | | | |
| | 19 | | | | | | | | | |
| | 26 | | | | | | | | | |
| February | 2 | | | | | | | | | |
| | 9 | | | | | | | | | |
| | 16 | | | | | | | | | |
| | 23 | | | | | | | | | |
| March | 2 | | | | | | | | | |
| | 9 | | | | | | | | | |
| | 16 | | | | | | | | | |
| | 23 | | | | | | | | | |
| | 30 | | | | | | | | | |
| April | 6 | | | | | | | | | |
| | 13 | | | | | | | | | |
| | 20 | | | | | | | | | |
| | 27 | | | | | | | | | |
| May | 4 | | | | | | | | | |
| | 11 | | | | | | | | | |
| | 18 | | | | | | | | | |
| | 25 | | | | | | | | | |
| June | 1 | | | | | | | | | |
| | 8 | | | | | | | | | |
| | 15 | | | | | | | | | |
| | 22 | | | | | | | | | |
| | 29 | | | | | | | | | |
| July | 6 | | | | | | | | | |
| | 13 | | | | | | | | | |
| | 20 | | | | | | | | | |
| | 27 | | | | | | | | | |

# LANCO SCAFFOLDING 2002

| Date | Aristides Romero | Pedro Romero | Nery | Ortiz Eliezer Ortiz | Jeremias Lima | Mario Perlera | Hector Castaneda | Wilfredo Romero | Candido Castanedo | C. Armando Ortiz | Oscar Ortiz | Mario Gutierez | Francisco Pleitez | Jose Perlera | Ubaldido Perlera | Jose Monterroso | Jose Leonel Aguilar (Guevara) | Carlos Manual Perlera | Gustavo Orellana | Jose Pleitez | Miguel Rodriguez | Wenceslao Ramirez |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **January** | | | | | | | | | | | | | | | | | | | | | | |
| 4 | 48.5 | | 36 | 45.5 | 45.5 | 52.5 | 53 | 23.5 | 24 | 45.5 | | 60 | 34 | 59.5 | 58 | 52.5 | | 53 | 53 | 84 | 51.5 | 52.5 |
| 11 | 46 | | 50.5 | 52 | 52 | 49.5 | 42.5 | 51.5 | 51.5 | 44 | 50 | 54 | 43 | 52.5 | 67.5 | 51 | | 52 | 52 | 60 | 47 | 41.5 |
| 18 | 35.5 | | 35.5 | 45.5 | 55.5 | 42.5 | 44.5 | 41.5 | 40 | | 41 | 52.5 | 45.5 | 54.5 | 43.5 | 43 | | 41.5 | 40 | 50.5 | 52.5 | 46 |
| 25 | 45 | | 41.5 | 47.5 | 61 | 43.5 | 40.5 | 41 | 36.5 | 38 | 38 | 43.5 | 48 | 54.5 | 54.5 | 43.5 | | 54 | 37.5 | 41 | 59 | 44 |
| **February** | | | | | | | | | | | | | | | | | | | | | | |
| 1 | 52.5 | | 42.5 | 47.5 | 62 | 43 | 39 | 40 | 32 | 41 | 40 | 41.5 | 42.5 | 50 | 37.5 | | 41 | 51.5 | 43.5 | 50.5 | 55 | 45 |
| 8 | 48.5 | | 43.5 | 45 | 45 | 40 | 38 | 40 | 43.5 | 44.5 | 40 | 52 | 40 | 52 | 49.5 | | 40 | 50 | 40 | 50 | 52 | 40 |
| 15 | 48 | | 40 | 45 | 55.5 | 40 | 41 | 41 | 40 | 40 | 41 | 52.5 | 40 | 48.5 | 38.5 | | | 55 | 43.5 | 50.5 | 50.5 | 48.5 |
| 22 | 43.5 | | 44 | 46 | 46 | 40 | 40 | 41 | 40 | 41.5 | 43.5 | 49 | 42.5 | 49 | 48 | | | 55 | 43.5 | 53.5 | 42 | 42.5 |
| **March** | | | | | | | | | | | | | | | | | | | | | | |
| 1 | 40 | | 38.5 | 40 | 52 | 40 | 40 | 40 | 40 | 40 | 40 | 43 | 38.5 | 46 | 40.5 | | | 47 | 37.5 | 46 | 54 | 46 |
| 8 | 40 | | 44 | 43 | 49.5 | 40 | 43 | 43 | 40 | 40 | 40 | 47.5 | 50 | 48 | 50 | | | 48 | 40 | 53 | 53 | 47 |
| 15 | 44.5 | | 49 | 50 | 54 | 54 | 40.5 | 44.5 | 40.5 | 41.5 | 43.5 | 45.5 | 40 | 47.5 | 46 | | | 51.5 | 40 | 47 | 47 | 37 |
| 22 | 46 | | 46 | 43 | 63 | 52 | 45 | 42 | 50.5 | 42.5 | 46.5 | 52 | 46 | 62.5 | 47.5 | | | 55.5 | 48.5 | 52.5 | 56.5 | 50.5 |
| 29 | 40 | | 45 | 42.5 | 70 | 47 | 53 | 53 | 51 | 44 | 32.5 | 62 | 44 | 53 | 53 | | | 48.5 | 46.5 | 59 | 57 | 55.5 |
| **April** | | | | | | | | | | | | | | | | | | | | | | |
| 5 | 40 | | 40 | 57 | 71 | 59.5 | 51.5 | 32 | 46.5 | 51 | 50.5 | 54 | 44.5 | 62.5 | 46 | | | 60.5 | 45 | 52 | 64 | 58.5 |
| 12 | 65 | | 49 | 55.5 | 63.5 | 51 | 49.5 | 49 | 49 | 41 | 50.5 | 55 | 52 | 52 | 52 | | | 57 | 43 | 43 | 59.5 | 55.5 |
| 19 | 55.5 | | 42.5 | 46 | 55.5 | 52.5 | 59 | 44.5 | 42 | 42.5 | 46.5 | 58 | 48 | 48 | 54.5 | | | 58.5 | 54.5 | 43 | 53 | 46.5 |
| 26 | 37 | | 43 | 46 | 54.5 | 40.5 | 48 | 41 | 42 | 43.5 | 40 | 40 | 46 | 47 | 41 | | | 47 | 42 | 49.5 | 31 | 33 |
| **May** | | | | | | | | | | | | | | | | | | | | | | |
| 3 | 48 | | 55 | 56 | 75 | 49 | 58 | 48 | 42 | 42 | 50 | 64.5 | 49 | 60.5 | 58 | | | 64.5 | 46 | 66 | 67 | |
| 10 | 49 | | 44 | 49 | 60 | 42.5 | 49.5 | 32 | 37.5 | 48.5 | 44 | 51.5 | 45.5 | 50 | 53.5 | | | 60 | 48 | 55.5 | 43 | |
| 17 | 38 | | 46.5 | 45.5 | 67.5 | 46 | 46 | 38 | 44 | 40 | 41 | 57 | 42.5 | 59 | 47.5 | | | 49.5 | 38 | 44 | 49 | |
| 24 | 46 | | 45 | 42 | 48 | 42.5 | 43.5 | 41.5 | 40.5 | 40 | 34 | 51.5 | 42.5 | 50 | 49.5 | | | 40 | 43.5 | 43.5 | 39 | |
| 31 | | | | | 54.5 | | | | | | | | | | | | | | | | | |
| **June** | | | | | | | | | | | | | | | | | | | | | | |
| 7 | 43 | | 43 | 44.5 | 67.5 | 40 | 40 | 40 | 40 | 40 | 52.5 | 47 | 40 | 48 | 49 | | | 44 | 46 | 48 | 48 | |
| 14 | 49 | | 55.5 | 47.5 | 65.5 | 48.5 | 51.5 | 48.5 | 48.5 | 48.5 | 40 | 50 | 49 | 53 | 54.5 | | | 56.5 | 53 | 59 | 59 | |
| 21 | 44 | | 43.5 | 44.5 | 59.5 | 43 | 46.5 | 43 | 40 | 40 | 42 | 49 | 40 | 52 | 50.5 | | | 47 | 40.5 | 50.5 | 53 | |
| 28 | 29 | | 43.5 | 40 | 64.5 | 44.5 | 54 | 41 | 45 | 40 | 42.5 | 43.5 | 43.5 | 51 | 51 | | | 52.5 | 51.5 | 47.5 | 53 | |
| **July** | | | | | | | | | | | | | | | | | | | | | | |
| 5 | 36 | | 55.5 | 52 | 68.5 | 46.5 | 61 | 51.5 | 55 | 52.5 | 49 | 59.5 | 48.5 | 61 | 56.5 | | | 58 | 51 | 60.5 | 61 | |
| 12 | 51 | | 51.5 | 50.5 | 54.5 | 49.5 | 59.5 | 51 | 45.5 | 51 | 51.5 | 56 | 50.5 | 58 | 55.5 | | | 62 | 52 | 61 | 81 | |
| 19 | 41 | | 45 | 43 | 46 | 37 | 51 | 46.5 | 46.5 | 43 | 42 | 58 | 41 | 54 | 44 | | | 42.5 | 41 | 50 | 49.5 | |
| 26 | 50 | | 44 | 44.5 | 52 | 42.5 | 55.5 | 46.5 | 40 | 40 | 46.5 | 54 | 39 | 50 | 51 | | | 51.5 | 40 | 54 | 55 | |

LANCO SCAFFOLDING 2001

| | | Santos Flores | Carlos Manuel Perlera | Moises Paredes | William Saldana | Jose Pleitez | Gustavo Orellana | Miguel Rodriguez | Wenceslao Ramirez | Tulio Reyes |
|---|---|---|---|---|---|---|---|---|---|---|
| August | 3 | | | | | | | | | |
| | 10 | | | | | | | | | |
| | 17 | | | | | | | | | |
| | 24 | | | | | | | | | |
| | 31 | | | | | | | | | |
| September | 7 | | | | | | | | | |
| | 14 | | | | | | | | | |
| | 21 | 0 | 48.5 | 30 | 39.5 | | | | | |
| | 28 | 0 | 9.5 | 41 | 42 | | | | | |
| October | 5 | 0 | 50.5 | 37 | 37 | | | | | |
| | 11 | 0 | 56.5 | 34.5 | 35.5 | | | | | |
| | 19 | 0 | 65 | 50.5 | 41 | 42 | | | | |
| | 26 | 0 | 59 | 49 | | | | | | |
| November | 2 | 0 | 60 | 48 | | 52 | 64 | | | |
| | 9 | 0 | 52 | 38 | | 56.5 | 56 | | | |
| | 16 | 0 | 0 | 43 | | 50 | 61.5 | | | |
| | 23 | 0 | 0 | 0 | 0 | 58 | 58 | | | |
| | 30 | 0 | 0 | 0 | 0 | 55 | 55.5 | | | |
| December | 7 | 0 | 63.5 | | | 62.5 | 63 | 21.5 | | |
| | 14 | 0 | 51 | | 0 | 46.5 | 51.5 | 43 | 26 | |
| | 21 | 0 | 47 | | | 66 | 64.5 | 58.5 | 46.5 | 44.5 |
| | 28 | 0 | 58 | | | 60.5 | 69.5 | 71.5 | 67.5 | 73.5 |
| | | 0 | 630.5 | 367 | 195 | 549 | 545.5 | 194.5 | 140 | 118 |

LANCO SCAFFOLDING 2002

| | Tulio Reyes | Byron DeLeon | Cesar Martinez | Manuel Perera | Eugino Perera | Milton Granados | Jose Amilcar Torres | Luis Umanzor | Cruz Lucas Guillen | Onwin Guillen | Daniel Pelaez | Patrocinio Ortiz | Jose Santos Fernando Brenes | Johnny Ortiz | Jose Lemus | Antonio Rodriguez | Carlos Arturo Gutierrez |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **January** | | | | | | | | | | | | | | | | | |
| 4 | 51 | 43.5 | | | 56 | | | 20 hrs. / $430. | | | | | | | | | |
| 11 | 55.5 | 51 | | | 57 | | | 20 hrs. / $430. | | | | | | | | | |
| 18 | 53 | 46 | 11 | | 52.5 | | | 20 hrs. / $100. | | | | | | | | | |
| 25 | 52 | 42 | 53 | | 54 | | | 20 hrs. / $100. | | | | | | | | | |
| **February** | | | | | | | | | | | | | | | | | |
| 1 | 55 | 45 | 54.5 | 43 | | | | 20 hrs. / $100. | | | | | | | | | |
| 8 | 40 | 40 | 51.5 | 53 | | | | 20 hrs. / $100. | | | | | | | | | |
| 15 | 56.5 | 43 | 49.5 | 49 | | | | 20 hrs. / $100. | | | | | | | | | |
| 22 | 40 | 44 | 53 | 54.5 | | | | 20 hrs. / $100. | | | | | | | | | |
| **March** | | | | | | | | | | | | | | | | | |
| 1 | 54 | 48 | 54 | 42.5 | | | | 20 hrs. / $100. | | | | | | | | | |
| 8 | 53 | 47 | 53 | 50 | | | | 20 hrs. / $100. | | | | | | | | | |
| 15 | 54.5 | 50.5 | 53.5 | 53 | | | | 20 hrs. / $100. | | | | | | | | | |
| 22 | 48.5 | 57.5 | 48 | 53 | | | | 20 hrs. / $100. | | | | | | | | | |
| 29 | | | | | | | | | | | | | | | | | |
| **April** | | | | | | | | | | | | | | | | | |
| 5 | 66.5 | 58.5 | | | 55.5 | | | 20 hrs. / $100. | | | | | | | | | |
| 12 | 53 | 59 | | | 50.5 | | | 20 hrs. / $100. | | | | | | | | | |
| 19 | 58 | 48 | | | 48 | 10.5 | | 41 20 hrs. / $100. | | | | | | | | | |
| 26 | 49 | 33 | | | | 39.5 | | | | | | | | | | | |
| **May** | | | | | | | | | | | | | | | | | |
| 3 | 67.5 | 58.5 | 59 | 64.5 | | 63 | | 20 hrs. / $562. | 45.5 | | | | | | | | |
| 10 | 58 | 49.5 | 60.5 | 51.5 | | 59 | | | | | | | | | | | |
| 17 | 49 | 39 | 43 | 53 | | 48.5 / 43.5 | | | | 50 | | | | | | | |
| 24 | 46.5 | 40 | 50 | 50 | | | | | | 46.5 | | | | | | | |
| 31 | 48 | 41.5 | 52.5 | 42 | | 52 | | 20 hrs. / $100. | | 52 | | | | | | | |
| **June** | | | | | | | | | | | | | | | | | |
| 7 | 54 | 40 | 40 | 51 | | 53.5 | | 20 hrs. / $100. | | 54.5 | | | | | | | |
| 14 | 58.5 | 50 | 58.5 | 58.5 | | 58 | | 20 hrs. / $100. | | 58 | 16 | | | | | | |
| 21 | 50 | 41.5 | 54 | 53 | | 54 | | 20 hrs. / $100. | | 55 | 44 | 8 | | | | | |
| 28 | 52 | 52 | 59.5 | 53 | | 50 | | 20 hrs. / $100. | | 53 | 48 | 50 | | | | | |
| **July** | | | | | | | | | | | | | | | | | |
| 5 | 58 | 55.5 | 59 | 58.5 | | 58.5 | | 20 hrs. / $100. | | 63 | 56 | 54 | | | | | |
| 12 | 49.5 | 53 | 61.5 | 52 | | 62 | | 20 hrs. / $100. | | 63.5 | 56.5 | 47 | | | | | |
| 19 | 45 | 45 | 49 | 49.5 | | 49.5 | | 20 hrs. / $100. | | 55 | 45 | 44 | | | | | |
| 26 | 50 | 44 | 50 | 50 | | 58 | | 20 hrs. / $100. | | 56 | 38 | 48 | | | | | |

LANCO SCAFFOLDING 2002

| | Tulio Reyes | Byron DeLeon | Oscar Martinez | Manuel Peders | Regino Peders | Milton Granados | Jose Amilkar Yvieta | Luis Umanzar | Cruz Lorze Guillen | Osmin Guillen | Daniel Pleitez | Patrocine Ortiz | Jose Santos | Fernando Brenes | Johnny Ortiz | Jose Lemus | Antonio Rodriguez | Carlos Arturo Gutierrez |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **August** | | | | | | | | | | | | | | | | | | |
| 2 | 51.5 | 54 | 52.5 | 55 | 55 | 50.5 | | 20 hrs. / $1,100. | | 50.5 | 46 | 48 | | | | | | |
| 9 | 59.5 | 54.5 | 60 | 57 | 57 | 65 | | 20 hrs. / $1,100. | | 66 | 55 | 55 | 20 | | | | | |
| 16 | 63.5 | 54.5 | 58 | 65 | 65 | 70 | | 20 hrs. / $1,100. | | 70 | 57.5 | 59 | 68.5 | | | | | |
| 23 | 40 | 41 | 54.5 | 47 | | 54.5 | | 20 hrs. / $1,100. | | 54 | 43 | 44.5 | 53 | | | | | |
| 30 | 51.5 | 51.5 | 59 | 55 | | 54.5 | | 20 hrs. / $1,100. | | 63.5 | 44 | 53 | 60 | | | | | |
| **September** | | | | | | | | | | | | | | | | | | |
| 6 | 53 | 41 | 38.5 | 36.5 | | 55.5 | | 20 hrs. / $1,100. | | 52 | 43.5 | 46 | 54 | | | 165.5 | | |
| 13 | 41.5 | 33 | 41.5 | 38.5 | | 45 | | 20 hrs. / $1,100. | | 34 | 35 | 37 | 43 | | | 187.5 | | |
| 20 | 51.5 | 43 | 42 | 48 | | | | 20 hrs. / $1,100. | | 48.5 | 46 | 49.5 | 53.5 | 38.5 | | 197.5 | | |
| 27 | 53 | 40 | 54 | 43.5 | | 44.5 | | 20 hrs. / $1,100. | | 46.5 | 44 | 47 | 48.5 | | | 186 | | |
| **October** | | | | | | | | | | | | | | | | | | |
| 4 | 34 | 32.5 | 34 | 24 | | 36.5 | | | | 40 | 38 | 39.5 | 35.5 | | | 153 | | |
| 11 | 39 | 37 | 43.5 | 37 | | 47 | | | | 51 | 44 | 41.5 | 50 | | 44 | 240.5 | | |
| 18 | 54 | 54 | 43.5 | 44.5 | | 54.5 | | | | 58 | 48.5 | 53.5 | 52 | | 53 | 245 | | |
| 25 | 54 | 39 | 41 | 53 | | 55 | | | | 57.5 | 54 | 54.5 | 56.5 | | 53 | 277.5 | | |
| **November** | | | | | | | | | | | | | | | | | | |
| | 46.5 | 43 | 50.5 | 40 | | 50 | | 20 hrs. / $1,100. | | 52.5 | 42 | 46.5 | 49 | | 44 | | | |
| 8 | 40 | 40 | 51 | 40 | | 40 | | 20 hrs. / $1,100. | | 40 | 44 | 40 | 40 | | 40 | 40 | | |
| 15 | 44 | 44 | 44.5 | 40 | | 40 | | 20 hrs. / $1,100. | | 40 | 40 | 40 | 40 | | 41.5 | | | |
| 22 | 54.5 | 41.5 | 51.5 | 47 | | 47 | | 20 hrs. / $1,100. | | 52 | 52 | 47.5 | 57 | | 53.5 | 45.5 | 41.5 | |
| 29 | 55.5 | 32 | 55 | 57.5 | | 58 | | 20 hrs. / $1,100. | | 70 | 57.5 | 50 | 58 | | 57.5 | | | |
| **December** | | | | | | | | | | | | | | | | | | |
| 6 | 48 | 46.5 | 48 | 41 | | 48 | | 20 hrs. / $1,100. | | 48 | 44.5 | 43.5 | 52 | | 46.5 | | 45 | 65 |
| 13 | 59.5 | 50.5 | 47 | 54.5 | | 63.5 | | 20 hrs. / $1,100. | | 66 | 54 | 54.5 | 57 | | 56.5 | | 91.5 | 40 |
| 20 | 52 | 47.5 | 47.5 | 40 | | 50.5 | | 20 hrs. / $1,100. | | 52 | 45 | 43.5 | 53 | | 47 | | | |
| 27 | 60.5 | 49.5 | 61 | 44 | | 63.5 | | 20 hrs. / $1,100. | | 63 | 55.5 | 54 | 66 | | 42.5 | | | |
| 31 | 54 | 48 | 57.5 | 20 | | 40 | | 20 hrs. / $1,100. | | 48 | 49 | 49 | 54.5 | | 40 | | | |
| | 2,776 | 2414 | 2389.5 | 2285 | 154 | 1,798.5 | 41 | 990 | 45.5 | 1,791.5 | 1,380.5 | 1,347.5 | 1123 | 38.5 | 619 | 1768 | 178 | 105 |
| **2002 Total** | | | | | | | | $51,822.40 | | | | | | | | | | |

LANCO SCAFFOLDING 2001

| | Aristides Romero | Pedro Romero | Nery Ortiz | Eleazar Ortiz | Luis Umanzor | Marcos Lima | Mario Perlera | Hector Castaneda | Wilfredo Romero | Candido Castaneda | C. Armando Ortiz | Oscar Ortiz | Mario II Gutierrez | Manuel Perlera | Francisco Planez | Jose Perlera | Ubensindo Perlera | Jose A. Moterrosa | Jose Leonel Aguilar(Guevara) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **January** | | | | | | | | | | | | | | | | | | | |
| 5 | 47 | 51 | 58 | 58.5 | 20+$1000 | 66 | 59 | 58.5 | 50.5 | 20 | | | | | | | | | |
| 12 | 55.5 | 42.5 | 44.5 | 53.5 | 20+$1000 | 65.5 | 45.5 | 57 | 54 | 20 | | | | | | | | | |
| 19 | 42 | 54 | 52 | 47 | 20+$1000 | 55 | 48 | 48.5 | 53 | 20 | | | | | | | | | |
| 26 | 33 | 16 | 57.5 | 46.5 | 20+$1000 | 51 | 52.5 | 51 | 36 | 20 | | | | | | | | | |
| **February** | | | | | | | | | | | | | | | | | | | |
| 2 | 20 | 49 | 44 | 43 | 20+$1000 | 64 | 46.5 | 46.5 | 46.5 | 20 | | | | | | | | | |
| 9 | 40 | 43 | 34 | 42.5 | 20+$1000 | 54 | 40 | 42 | 40 | 20 | | | | | | | | | |
| 16 | 23 | 30.5 | 31.5 | 32 | 20+$1000 | 44 | 28.5 | 37.5 | 32 | 20 | | | | | | | | | |
| 23 | 41 | 45.5 | 45 | 48.5 | 20+$1000 | 62.5 | 50.5 | 50.5 | 42 | 20 | | | | | | | | | |
| **March** | | | | | | | | | | | | | | | | | | | |
| 2 | 39.5 | 37.5 | 40 | 41 | 20+$1000 | 48.5 | 48 | 47 | 38.5 | 20 | | | | | | | | | |
| 9 | 28.5 | 38 | 38.5 | 38.5 | $0 | 40 | 31.5 | 33 | 35 | 20 | | | | | | | | | |
| 16 | 24.5 | 24.5 | 24.5 | 24 | $0 | 33 | 23.5 | 23.5 | 24 | 20 | | | | | | | | | |
| 23 | 29.5 | 32.5 | 29 | 29.5 | $0 | 51.5 | 36.5 | 0 | 42.5 | 20 | | | | | | | | | |
| 30 | 28 | 35.5 | 32 | 33.5 | $0 | 50.5 | 30 | 0 | 24 | 20 | | | | | | | | | |
| **April** | | | | | | | | | | | | | | | | | | | |
| 6 | 44 | 44 | 43.5 | 42 | $0 | 52.5 | 43.5 | 0 | 35.5 | 20 | | | | | | | | | |
| 13 | 41 | 45.5 | 43 | 41 | $0 | 54 | 40 | 0 | 43 | 20 | | | | | | | | | |
| 20 | 28 | 38.5 | 46.5 | 45.5 | $0 | 60.5 | 45 | 0 | 35.5 | 20 | | | | | | | | | |
| 27 | 33 | 37.5 | 38 | 32.5 | 20+$1000 | 46.5 | 32.5 | 0 | 35 | 20 | | | | | | | | | |
| **May** | | | | | | | | | | | | | | | | | | | |
| 4 | 46 | 46 | 41 | 43 | 20+$1000 | 64 | 46 | 0 | 37.5 | 20 | | | | | | | | | |
| 11 | 54 | 57 | 48.5 | 40 | 20+$1000 | 41 | 51.5 | 0 | 51 | 20 | | | | | | | | | |
| 18 | 46.5 | 59.5 | 47 | 35 | 20+$1000 | 64 | 48.5 | 0 | 49.5 | 20 | | | | | | | | | |
| 25 | 46 | 44 | 48.5 | 40 | 20+$1000 | 58 | 41.5 | 0 | 42.5 | 20 | | | | | | | | | |
| **June** | | | | | | | | | | | | | | | | | | | |
| 1 | 41 | 43 | 44 | 42 | 20+$1000 | 63.5 | 49 | 0 | 41.5 | 20 | | | | | | | | | |
| 8 | 42 | 39.5 | 40 | 40 | 20+$1000 | 48.5 | 40 | 0 | 40 | 20 | | | | | | | | | |
| 15 | 33.5 | 41.5 | 41.5 | 41 | 20+$1000 | 56 | 53 | 42 | 49 | 20 | | | | | | | | | |
| 22 | 40.25 | 40 | 41.5 | 20 | 20+$1000 | 55.5 | 60 | 53 | 42 | 20 | | | | | | | | | |
| 29 | 43 | 48 | 41 | 43 | 20+$1000 | 60 | 41.5 | 54 | 31 | 20 | | | | | | | | | |
| **July** | | | | | | | | | | | | | | | | | | | |
| 6 | 51.5 | 51 | 45.5 | 46 | 20+$1000 | 42.5 | 51 | 41.5 | 49 | 20 | | | | | | | | | |
| 13 | 48 | 44.5 | 40 | 50 | 20+$1000 | 48.5 | 38.5 | 51 | 42 | 20 | | | | | | | | | |
| 20 | 49 | 43.5 | 44 | 42 | 20+$1000 | 61 | 41.5 | 46.5 | 45 | 20 | | | | | | | | | |
| 27 | 32 | 51.5 | 31.5 | 49 | 20+$1000 | 47.5 | 48.5 | 43 | 47 | 20 | | | | | | | | | |

7/8/2004 5:40 PM

Lanco Scaffolding 2003

| | | Aristides Romero | Pedro Romero | Nery | Ortiz Eleazar | Ortiz | Marcos | Lima | Mario Partera | Hector Castaneda | Wilfredo Romero | Candido Castaneda | C. Armando Ortiz | Oscar | Ortiz | Mario Gutierrez | Francisco Pleitez | Jose Partera | Ubaldino Partera | Jose Montserrou | Jose Leonel Aguilar(Guevara) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| January | 10 | 40 | 52.5 | | 60 | 52 | | 87 | 34.5 | 62 | 51.5 | 53 | 55 | 54 | 54 | 64 | 55 | 57.5 | | 54 | 51 |
| | 17 | 40 | 41.5 | | 44.5 | 41.5 | | 72.5 | 31.5 | 45.5 | 41 | 43 | 41 | 41 | 41.5 | 52 | 40 | 46 | | 40 | 51.5 |
| | 24 | 43 | 51.5 | | 52 | 46 | | 82.5 | 40 | 58.5 | 50 | 43 | 46 | 46 | 46 | 52 | 29.5 | 26 | | 40 | 53.5 |
| | 31 | 43 | 42 | | 44.5 | 40 | | 76.5 | 43 | 50.5 | 50.5 | 41.5 | 40 | 40 | 40 | 51.5 | 41 | 49.5 | | 49.5 | 53.5 |
| February | 7 | 40 | 36.5 | | 40 | 43.5 | | 76.5 | 33.5 | 45.5 | 30.5 | 36 | 38.5 | 40 | 40 | 46 | 40 | 41.5 | 33.5 | 33.5 | 32.5 |
| | 14 | 40 | 45.5 | | 43 | 44 | | 80 | 46.5 | 42 | 44.5 | 47 | 42 | 42 | 42 | 53 | 40 | 29.5 | 44.5 | 44.5 | 44 |
| | 21 | 46 | 36 | | 45 | 40 | | 75 | 40.5 | 43.5 | 43 | 35.5 | 40 | 40 | 40 | 48.5 | 41 | 42.5 | 40 | 40 | 48.5 |
| | 28 | 40 | 36.5 | | 38 | 39.5 | | 75 | 38.5 | 40 | 42 | 37 | 39.5 | 39.5 | 39.5 | 45 | 40 | 28.5 | 36 | 36 | 47.5 |
| March | 7 | 45 | 38 | | | 41 | | 74.5 | 37 | 44.5 | 34.5 | 40 | 39 | 40 | 40 | 42 | 43 | 36 | 40 | 40 | 54 |
| | 14 | 42 | 42.5 | | 43 | 40 | | 84 | 42 | 40.5 | 41 | 38 | 40 | 40 | 40 | 47.5 | 41 | 25.5 | 40.5 | 40.5 | 49.5 |
| | 21 | 47 | 43.5 | | 43.5 | 40 | | 73.5 | 40 | 43.5 | 40.5 | 29 | 40 | 41 | 40 | 50 | 41 | 46.5 | 40 | 40 | 51 |
| | 28 | 40 | 45.5 | | 49.5 | 41.5 | | 78 | 49.5 | 37 | 41 | 43.5 | 40 | 40.5 | 40.5 | 48.5 | 45.5 | 24 | 42.5 | 42.5 | 47 |
| April | 4 | 46 | 43.5 | | 49 | 43.5 | | 78 | 43 | 44 | 45.5 | 42.5 | 20 | 20 | 20 | 50.5 | 43 | | 41 | 41 | 40.5 |
| | 11 | 40 | 29 | | 41.5 | 37.5 | | 71.5 | 44 | 43 | 38.5 | 37 | 36 | 37.5 | 37.5 | 49 | 40 | 46 | 38.5 | 38.5 | 39.5 |
| | 18 | 37 | 40 | | 45 | 40 | | 67.5 | 42.5 | 40 | 20 | 30 | 32 | 32 | 32 | 36 | 40 | | 32 | 32 | 24 |
| | 25 | 35 | 31.5 | | 45.5 | 40.5 | | 71 | 38 | 41.5 | 40 | 39.5 | 40.5 | 40.5 | 40.5 | 43 | 39 | | 39.5 | 39.5 | 40 |
| May | 2 | 37 | 36 | | 38.5 | 33.5 | | 72 | 41 | 41 | 33.5 | 27 | 35 | 35.5 | 35.5 | 47.5 | | 0 | 38 | 38 | 39.5 |
| | 9 | 45 | 41.5 | | 45 | 44.5 | | 84 | 41 | 41 | 41 | 38 | 40 | 40 | 40 | 47.5 | | 39 | 41 | 41 | 40 |
| | 16 | 36 | 44 | | 44 | 44 | | 82 | 41 | 49 | 40 | 37 | 38 | 52 | 52 | 58 | | 36 | 38 | 38 | 43.5 |
| | 23 | 23 | 45 | | 47 | 44 | | 77 | 46 | 41 | 41 | 37 | 40.5 | 40.5 | 40.5 | 58 | | 36 | 45.5 | 45.5 | 47.5 |
| | 30 | 34 | 29 | | 41 | 34 | | 74 | 30 | 34 | 29 | 25 | 20 | 21.5 | 21.5 | 20 | | 11 | 13 | 13 | 10 |
| June | 6 | 40 | 37.5 | | 33.5 | 40 | | 67.5 | 36 | 40 | 35 | 32 | 26 | 32 | 32 | 32 | | 26 | 36 | 36 | 30 |
| | 13 | 36 | 40 | | 38.5 | 40 | | 60 | 34.5 | 34.5 | 34.5 | 34.5 | 40 | 37.5 | 37.5 | 40 | | 37 | 34.5 | 34.5 | 40 |
| | 20 | 50.5 | 45 | | 50 | 43 | | 79.5 | 45.5 | 50 | 40 | 42.5 | 50 | 46.5 | 46.5 | 30.5 | | 42 | 42.5 | 42.5 | 42.5 |
| | 27 | 54 | 48.5 | | 43 | 40 | | 80 | 50 | 50.5 | 40 | 48 | 50.5 | 50.5 | 50.5 | 51.5 | | 48.5 | 43 | 43 | 40.5 |

7/6/2004 5:50 PM

Lanco Scaffolding 2003

| | Carlos Manuel Perera | Jose Pholez | Miguel Rodriguez | Tulio Reyes | Byron DeLeon | Oscar Martinez | Manuel Perera | Milton Granados | Luis Umanzor | Daniel Pholez | Patrocino Ortiz | Jose Santos | Fernando Brenes | Johnny Ortiz | Carlos Arturo Gutierrez | Alberto Montemayo |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **July** | | | | | | | | | | | | | | | | |
| 3 | 50.5 | 62.5 | | | 45 | 50.5 | 38.5 | 54.5 | 20=$1,100 | 48.5 | 50.5 | 60.5 | 55.5 | | 54 | |
| 11 | 45 | 34 | | | 44 | 41 | 44 | 45.5 | 20=$1,100 | 37 | 37 | 44.5 | 41.5 | | 45.5 | |
| 18 | 40.5 | 51 | | | 42 | 48 | 44 | 56 | 20=$1,100 | 48 | 41.5 | 39 | 54.5 | | 55 | 9 |
| 25 | | 33 | | | 39.5 | 53 | 49 | 52 | 20=$1,100 | 43 | 42 | 32.5 | 48.5 | | 51 | 41 |
| **August** | | | | | | | | | | | | | | | | |
| 1 | 32.5 | 33.5 | | | 41 | 40.5 | 34.5 | 52 | 20=$1,100 | 40.5 | 44 | 51.5 | 48.5 | | 52 | 44 |
| 8 | 44 | 42.5 | | | 26.5 | 24 | 30 | 45.5 | 20=$1,100 | 42 | 41.5 | 9 | 42 | | 44 | 42 |
| 14 | 43.5 | 48 | | | 40 | 41.5 | 40 | 47 | 20=$1,100 | 47.5 | 49 | 43.5 | 52 | | 51 | 44 |
| 22 | 42 | 50 | | | 37 | 51 | 49 | 45.5 | 20=$1,100 | 45.5 | 48 | 55.5 | 53.5 | | 55.5 | 46.5 |
| 29 | 41 | 43.5 | | | 40 | 46 | 41 | 40 | 20=$1,450 | 40 | 40 | 40 | 41 | | 46 | 40 |
| **September** | | | | | | | | | | | | | | | | |
| 5 | 34 | 40 | | | 32 | 39 | 37 | 33 | 20=$1,100 | 38 | 37.5 | | 39 | | 40 | |
| 12 | 44 | 50 | | | 43.5 | 47 | 44 | 45.5 | 20=$1,100 | 52.5 | 49 | | 48 | | 51.5 | |
| 19 | 40 | 55.5 | | | 42 | 40 | 46 | 45.5 | 20=$1,100 | 54.5 | 55.5 | | 52 | | 53 | |
| 26 | 41 | 49 | | | 41 | 40 | 53 | 40 | 20=$1,100 | 50 | 43 | | 42 | | 48 | |
| **October** | | | | | | | | | | | | | | | | |
| 3 | 40.5 | 53 | | | 43.5 | 46.5 | 50 | 47 | 20=$1,100 | 49.5 | 45 | | 46.5 | 40 | 50 | |
| 10 | 40 | 52 | | | 47 | 44 | 54 | 54 | 40=$500 | 52 | 41.5 | | 46.5 | | 54 | |
| 17 | 33.5 | 44 | | | 35.5 | 26.5 | 38.5 | 47.5 | 40=$500 | 45 | 35 | | 42 | | 47.5 | |
| 24 | 31 | 37 | | | 32.5 | 28 | 45.5 | 34 | 40=$500 | 36 | | | 38 | | 37 | |
| | 1786 | 1909 | 307 | 954 | 1625 | 1734 | 1725 | 2054.5 | 780 | 1805 | 1635 | 1245.5 | 1919.5 | 40 | 2132.5 | 266.5 |

Lanco Scaffolding 2003

| | Carlos Manuel Pedera | Jose Pilatez | Miguel Rodriguez | Tulio Rojas | Byron DeLeon | Oscar Martinez | Manuel Peters | Milton Granados | Luis Umanzor | Daniel Pierrez | Patrocino Ortiz | Jose Santos | Fernando Brenes | Johnny Ortiz | Carlos Arturo Gutierrez | Alberto Montserrate |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **January** | | | | | | | | | | | | | | | | |
| 10 | 56 | | 64 | 62 | 54 | 62.5 | 40 | | 67  20=$1,450 | 58 | 56 | 64 | 20.5 | | 40 | 56.5 |
| 17 | 51.5 | | 48 | 50 | 38 | 29 | 33 | | 52.5  20=$1,100 | 42 | 41.5 | 39 | 40 | | | 50 |
| 24 | 58 | | 60 | 47 | 31 | 50 | 48 | | 65  20=$1,100 | 43.5 | 49 | 37.5 | 55 | | | 53 |
| 31 | 49.5 | | 60.5 | 51 | 42.5 | 44 | 48 | | 53.5  20=$1,450 | 44.5 | 44 | 47.5 | 48 | | | 62 |
| **February** | | | | | | | | | | | | | | | | |
| 7 | 39 | | 47.5 | 42.5 | 34 | 39 | 38.5 | | 46  20=$1,100 | 37.5 | 37.5 | 30 | 31.5 | | 44 | 44 |
| 14 | 46 | | 39 | 48 | 43.5 | 48 | 38.5 | | 45  20=$1,100 | 44 | 46 | 35 | 41.5 | | 48.5 | 48.5 |
| 21 | 48 | | 41 | 36.5 | 42 | 40 | 43 | | 50  20=$1,100 | 40 | 41 | 40.5 | 46.5 | | 51 | 51 |
| 28 | 39 | | 28.5 | 45 | 35 | 46 | 37.5 | | 45  20=$1,100 | 37 | 33 | 7.5 | 40 | | 47 | 47 |
| **March** | | | | | | | | | | | | | | | | |
| 7 | 35.5 | | 43.5 | 54 | 40.5 | 32 | 40 | | 54  20=$1,100 | 44.5 | 45.5 | 39 | 45.5 | | 56 | 56 |
| 14 | 29.5 | | 32 | 45 | 40.5 | 34 | 42 | | 50 | 38.5 | 42.5 | 38.5 | 41.5 | | 50 | 50 |
| 21 | 50 | | 32 | 50.5 | 40 | 51 | 42.5 | | 53.5 | 44 | 43.5 | 42 | 47 | | 53.5 | 53.5 |
| 28 | 48.5 | | 50 | 56 | 43 | 54.5 | 46 | | 51.5 | 44 | 43 | 42 | 47.5 | | 52 | 52 |
| **April** | | | | | | | | | | | | | | | | |
| 4 | 50.5 | | 52.5 | 53.5 | 42 | 51 | 42.5 | | 49.5 | 41 | 47.5 | 39.5 | 51 | | 55 | 55 |
| 11 | 38.5 | | 51 | 53.5 | 40 | 40.5 | 37 | | 46.5 | 32.5 | 39.5 | 31.5 | 40.5 | | 45.5 | 45.5 |
| 18 | 12 | | 16 | 8 | 12 | 12 | 30 | | 46 | 40 | 40 | 42 | 41 | | 46 | 46 |
| 25 | 42 | | 51 | 52 | 51 | 50 | 39.5 | | 51.5  20=$1,100 | 43.5 | 43.5 | 40 | 42 | | 52 | 52 |
| **May** | | | | | | | | | | | | | | | | |
| 2 | 57 | | 40 | 48.5 | 38.5 | 38 | 29 | | 48.5 | 43.5 | 39.5 | 40 | 54.5 | | 55 | 55 |
| 9 | 56 | | 48 | 50 | 43.5 | 40 | 42.5 | 20 | 45 | 43 | 45 | 10 | 54 | | 54 | 54 |
| 16 | 69 | | 54 | 50 | 43.5 | 44.5 | 52.5 | 20 | 57.5 | 43 | 49 | 10 | 51.5 | | 55 | 55 |
| 23 | 68.5 | | 50 | 51 | 42 | 42 | 48 | 20 | 60 | 33.5 | 54.5 | 12.5 | 55 | | 54.5 | 54.5 |
| 30 | 24.5 | | 49.5 | | 12 | 13.5 | 15 | 20 | 49.5 | 39.5 | 39.5 | 10 | 46.5 | | 46 | 46 |
| **June** | | | | | | | | | | | | | | | | |
| 6 | 38 | | 34.5 | | 27 | 32 | 30.5 | | 46.5  20=$1,100 | 32.5 | 33.5 | 30 | 40 | | 46.5 | 46.5 |
| 13 | 58.5 | | 40 | | 38.5 | 40 | 40 | | 50  20=$1,100 | 43 | 40 | 40 | 40 | | 40 | 40 |
| 20 | 41.5 | | 46.5 | | 43 | 45 | 45.5 | | 50  20=$1,100 | 43 | 46.5 | 31.5 | 48 | | 54.5 | 54.5 |
| 27 | 50.5 | | 38.5 | | 45 | 50 | 50.5 | | 48.5  20=$1,100 | 41 | 48 | 50 | 60 | | 60 | 60 |

Lanco Scaffolding 2003

| | Adrelee Romero | Pedro Romero | Nery Ortiz | Eleazar Ortiz | Marcos Lima | Mario Pellera | Hector Castanedo | Wilfredo Romero | Candido Castanedo | C. Armando Ortiz | Oscar Ortiz | Mario Gutierrez Ortiz | Francisco Pérez | Jose Pellera | Ubaldino Pellera | Jose Monterroso | Jose Leonel Aguilar (Guevara) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **July** | | | | | | | | | | | | | | | | | |
| 3 | 50 | 48 | 46.5 | 43 | 85.5 | 48 | 48 | 48.5 | 47.5 | 48 | 50.5 | 48.5 | 50 | 44.5 | | 27 | 40.5 |
| 11 | 48.5 | 49.5 | 48.5 | 63.5 | 78 | 45 | 45 | 47 | 40 | 47.5 | 45 | 45 | 44 | 43 | | | 43.5 |
| 18 | 46 | 41.5 | 51.5 | 44 | 70 | 40.5 | 42 | 48 | 31.5 | 42 | 42.5 | 51.5 | 42.5 | 43 | 40.5 | 41 | 43 |
| 25 | 45.5 | 45 | 47 | 39.5 | 65 | 34 | 44.5 | 41 | 40 | | | | 43 | | | 40.5 | 40.5 |
| **August** | | | | | | | | | | | | | | | | | |
| 1 | 27 | 32 | 36.5 | 41.5 | 76.5 | 37.5 | 47 | 30 | 36 | 33 | 40.5 | 52 | 33.5 | 32.5 | 37 | | 19 |
| 8 | 26.5 | 23.5 | 28 | 19.5 | 71.5 | 43 | 41.5 | 20 | 20 | 22 | 26 | 23 | 21.5 | 34.5 | 25.5 | 37 | 13.5 |
| 14 | 47 | 48 | 80 | 42.5 | 79 | 44 | 47.5 | 84.5 | 40 | 40 | 40 | 40 | 40 | 44.5 | 40 | 25.5 | 42 |
| 22 | 26.5 | 40 | 40.5 | 40 | 79 | 56.5 | 48 | 44.5 | 41.5 | 42.5 | 40 | 50 | 32 | 37 | 38.5 | 40 | 36 |
| 29 | 40 | 40 | 80 | 40 | 73.5 | 40 | 40 | 40 | 38 | 40 | 40 | 42 | 20 | 40 | 40 | 38.5 | 40 |
| **September** | | | | | | | | | | | | | | | | | |
| 5 | 38 | 33 | 35.5 | 33.5 | 75 | 38 | 35 | 39.5 | 33.5 | 35.5 | 35 | 40.5 | 33 | 37 | 34.5 | 34.5 | 33 |
| 12 | 40 | 44 | 48 | 41 | 79 | 40 | 48.5 | 51 | 40.5 | 42.5 | 42.5 | 48 | 48 | 48.5 | 44 | 44 | 43 |
| 19 | 41.5 | 43.5 | 44 | 44.5 | 81.5 | 46 | 46.5 | 51 | 45 | 45 | 45 | 50.5 | 41.5 | 46 | 42.5 | 42.5 | 47 |
| 26 | 34.5 | 43.5 | 41 | 44 | 72.5 | 45.5 | 40 | 40 | 41.5 | 41.5 | 40 | 52 | 44.5 | 45.5 | 41 | 41 | 40 |
| **October** | | | | | | | | | | | | | | | | | |
| 3 | 43 | 44 | 41.5 | 40 | 76 | 42 | 43.5 | 41.5 | 38 | 40 | 40 | 47 | 45.5 | 48.5 | 43 | 43 | 40 |
| 10 | 41 | | 47 | 44 | 56.5 | 41.5 | 44.5 | 44 | 47.5 | 41.5 | 41.5 | 47 | 40.5 | 43.5 | 47 | 47 | 42 |
| 17 | 37.5 | 38.5 | 38.5 | 41.5 | 75 | 43.5 | 31.5 | 41 | 41 | 41.5 | 34.5 | 34 | 34 | 36 | 36.5 | 36.5 | 37.5 |
| 24 | 34 | 34 | 35 | 53 | 74 | 46 | 36 | 31.5 | 45 | 45 | 33 | 45 | 32 | 45.5 | 32 | 32 | 33 |
| **Total** | **1701** | **1597.5** | **1842.5** | **1741.5** | **3126.5** | **1746.5** | **1829.5** | **1689.5** | **1621** | **1601** | **1625.5** | **1860.5** | **1310.5** | **1442** | **1602.5** | **318.5** | **1649.5** |

2003 Total Hours Worked     50,424

Additional $31,950 paid to Luis Umanzor

# Carpenters Remittance Hours

## 1998

| 1998 Total Hours | Fernando Gomez SSN 123-44-xxxx | Roberto Gomez SSN 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 | Luis Umanzor SSN 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 | Joseph Moraro SSN 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 | William Rienzi M. SSN 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 |
|---|---|---|---|---|---|
| Jan-98 | 240 | 120 | 120 | | 0 |
| Feb-98 | 240 | 120 | 120 | | 0 |
| Mar-98 | 240 | 120 | 120 | | 0 |
| Apr-98 | 248 | 120 | 120 | 8 | 0 |
| May-98 | 412 | 150 | 150 | 12 | |
| Jun-98 | 328 | 120 | 120 | 100 | 8 |
| Jul-98 | 400 | 150 | 150 | 80 | 8 |
| Aug-98 | 320 | 120 | 120 | 100 | 0 |
| Sep-98 | 332 | 120 | 120 | 80 | 0 |
| Oct-98 | 400 | 150 | 150 | 100 | 12 |
| Nov-98 | 320 | 120 | 120 | 90 | |
| Dec-98 | 400 | 150 | 150 | 100 | |
| TOTAL | 3880 | 1580 | 1580 | 720 | 40 |

## 1999

| 1999 Total Hours | Fernando Gomez SSN 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 | Roberto Gomez SSN 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 | Luis Umanzor SSN 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 | Luis Umanzor SSN 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 |
|---|---|---|---|---|
| Jan-99 | 320 | 120 | 120 | 80 |
| Feb-99 | 320 | 120 | 120 | 80 |
| Mar-99 | 320 | 120 | 120 | 80 |
| Apr-99 | 400 | 150 | 150 | 100 |
| May-99 | 320 | 120 | 120 | 80 |
| Jun-99 | 320 | 120 | 120 | 80 |
| Jul-99 | 400 | 150 | 150 | 100 |
| Aug-99 | 320 | 120 | 120 | 80 |
| Sep-99 | 320 | 120 | 150 | 80 |
| Oct-99 | 400 | 150 | 150 | 100 |
| Nov-99 | 320 | 120 | 120 | 80 |
| Dec-99 | 320 | 120 | 120 | 100 |
| TOTAL | 4080 | 1530 | 1530 | 1040 |

## 2000

| 2000 Total Hours | Fernando Gomez SSN 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 | Roberto Gomez SSN 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 | Roberto Gomez SSN 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 | Luis Umanzor SSN 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 |
|---|---|---|---|---|
| Jan-00 | 320 | 120 | 120 | 80 |
| Feb-00 | 320 | 120 | 120 | 80 |
| Mar-00 | 300 | 150 | 150 | 0 |
| Apr-00 | 320 | 120 | 120 | 80 |
| May-00 | 320 | 120 | 150 | 80 |
| Jun-00 | 400 | 150 | 150 | 100 |
| Jul-00 | 420 | 160 | 160 | 100 |
| Aug-00 | 420 | 160 | 160 | 100 |
| Sep-00 | 400 | 160 | 160 | 80 |
| Oct-00 | 400 | 160 | 160 | 80 |
| Nov-00 | 400 | 160 | 180 | 80 |
| Dec-00 | 500 | 200 | 200 | 100 |
| TOTAL | 4220 | 1780 | 1790 | 960 |

7/8/2004 2:59 PM

# Carpenters Remittance Hours

### 2001

| 2001 Total Hours | Fernando Gomez SS# 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 | Roberto Gomez SS# 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 | Lula Umanzor SS# 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 | Nancy Pacheco SS# 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 |
|---|---|---|---|---|
| Jan-01 | 400 | 160 | 160 | 80 |
| Feb-01 | 400 | 160 | 160 | 80 |
| Mar-01 | | 200 | | 100 |
| Apr-01 | 360 | 160 | 200 | 40 |
| May-01 | 400 | 160 | 160 | 80 |
| Jun-01 | 500 | 200 | 200 | 100 |
| Jul-01 | 400 | 160 | 160 | 80 |
| Aug-01 | 500 | 200 | 200 | 100 |
| Sep-01 | 400 | 160 | 160 | 80 |
| Oct-01 | 400 | 160 | 160 | 80 |
| Nov-01 | 500 | 200 | 200 | 100 |
| Dec-01 | 400 | 160 | 160 | 80 |
| TOTAL | 4660 | 2080 | 1920 | 1000 |

### 2002

| 2002 Total Hours | Fernando Gomez SS# 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 | Roberto Gomez SS# 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 | Lula Umanzor SS# 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 | Candido Castaneda SS# 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 | Nancy Pacheco SS# 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 |
|---|---|---|---|---|---|
| Jan-02 | 400 | 160 | 160 | | 80 |
| Feb-02 | 400 | 160 | 160 | | 80 |
| Mar-02 | 440 | 200 | 200 | | 100 |
| Apr-02 | 440 | 200 | 200 | | 100 |
| May-02 | 400 | 160 | 160 | | 80 |
| Jun-02 | 400 | 160 | 160 | | 80 |
| Jul-02 | 432 | 160 | 160 | 32 | 80 |
| Aug-02 | 600 | 200 | 200 | 0 | 200 |
| Sep-02 | 480 | 160 | 160 | 0 | 160 |
| Oct-02 | 480 | 160 | 160 | | 160 |
| Nov-02 | 600 | 200 | 200 | | 200 |
| Dec-02 | 480 | 160 | 160 | | 160 |
| TOTAL | 5552 | 2080 | 2080 | 32 | 1480 |

### 2003

| 2003 Total Hours | Fernando Gomez SS# 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 | Roberto Gomez SS# 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 | Lula Umanzor SS# 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 | Eleazar Ortiz SS# 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 | Candido Castaneda SS# 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 |
|---|---|---|---|---|---|
| Jan-03 | 460 | 200 | 200 | 200 | |
| Feb-03 | 460 | 160 | 160 | 160 | |
| Mar-03 | 480 | 160 | 160 | 160 | |
| Apr-03 | 320 | 160 | 160 | 0 | |
| May-03 | 480 | 200 | 200 | 80 | |
| Jun-03 | 480 | 160 | 160 | 160 | |
| Jul-03 | 408 | 160 | 160 | 160 | |
| Aug-03 | 512 | 200 | 200 | 200 | |
| Sep-03 | 240 | 160 | 160 | 160 | |
| Oct-03 | 800 | 200 | 200 | 200 | |
| Subtotal | 4640 | 1760 | 1760 | 1480 | |
| Nov-03 | 600 | 160 | 160 | 160 | 160 |
| Dec-03 | 800 | 160 | 160 | 160 | 160 |
| TOTAL | 6040 | 2080 | 2080 | 1800 | 320 |

### 2004

| 2004 Total Hours | Fernando Gomez SS# 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 | Roberto Gomez SS# 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 | Lula Umanzor SS# 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 | Nancy Pacheco SS# 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 | Eleazar Ortiz SS# 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 | Candido Castaneda SS# 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 |
|---|---|---|---|---|---|---|
| Jan-04 | 776 | 160 | 160 | 160 | 151 | 144 |
| Feb-04 | 800 | 160 | 160 | 160 | 160 | 160 |
| TOTAL | 1576 | 320 | 320 | 320 | 311 | 304 |

7/9/2004  2:59 PM

# Laborers Remittance Hours

| 1998 | Mary Ortiz SSF 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 | Jose Romero SSF 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 | Pedro Romero SSF 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 | Marcos Lima SSF 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 Subtotal | Kendal Ivan Maran SSF 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 |
|---|---|---|---|---|---|
| Jan-98 | 80 | 68 | 80 | 228 | 80 |
| Feb-98 | 80 | 80 | 80 | 240 | 80 |
| Mar-98 | 80 | 80 | 80 | 240 | 80 |
| Apr-98 | 80 | 80 | 80 | 240 | 80 |
| May-98 | 100 | 37.5 | 100 | 237.5 | 100 |
| Jun-98 | 80 | 0 | 80 | 160 | 80 |
| Jul-98 | 100 | 100 | 100 | 300 | 100 |
| Aug-98 | 80 | 80 | 80 | 240 | 80 |
| Sep-98 | 80 | 60 | 80 | 220 | 80 |
| Oct-98 | 100 | 100 | 100 | 300 | 100 |
| Nov-98 | 80 | 80 | 80 | 240 | 80 |
| Dec-98 | 100 | 100 | 100 | 300 | 100 |
| TOTAL | 1040 | 855.5 | 1040 | 2945.5 | 1040 |

| 1999 | Mary Ortiz SSF 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 | Jose Romero SSF 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 | Pedro Romero SSF 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 | Marcos Lima SSF 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 | Subtotal | Kendal Ivan Maran SSF 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 |
|---|---|---|---|---|---|---|
| Jan-99 | 80 | 80 | 80 | 80 | 240 | 80 |
| Feb-99 | 80 | 80 | 80 |  | 240 | 80 |
| Mar-99 | 80 | 80 | 80 |  | 240 | 80 |
| Apr-99 | 100 | 100 | 100 | 80 | 300 | 100 |
| May-99 | 80 | 80 | 80 | 80 | 320 | 80 |
| Jun-99 | 80 | 80 | 80 | 80 | 320 | 80 |
| Jul-99 | 100 | 100 | 100 | 100 | 400 | 100 |
| Aug-99 | 80 | 80 | 80 | 60 | 320 | 50 |
| Sep-99 | 80 | 80 | 80 | 80 | 320 | 80 |
| Oct-99 | 100 | 96.5 | 100 | 100 | 396.5 | 100 |
| Nov-99 | 80 | 80 | 80 | 80 | 320 | 80 |
| Dec-99 | 80 | 100 | 80 | 80 | 340 | 100 |
| TOTAL | 1020 | 1036.5 | 1020 | 680 | 3766.5 | 1040 |

| 2000 | Mary Ortiz SSF 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 | Jose Romero SSF 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 | Pedro Romero SSF 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 | Hector Castaneda SSF 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 | Wilfredo Romero SSF 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 | Subtotal | Kendal Ivan Maran SSF 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 |
|---|---|---|---|---|---|---|---|
| Jan-00 | 80 | 80 | 80 | 80 |  | 300 | 80 |
| Feb-00 | 100 | 80 | 80 | 80 |  | 320 | 80 |
| Mar-00 | 100 | 100 | 100 | 100 |  | 400 | 100 |
| Apr-00 | 80 | 80 | 80 | 80 |  | 320 | 80 |
| May-00 | 80 | 80 | 80 | 80 |  | 320 | 80 |
| Jun-00 | 100 | 100 | 100 | 100 |  | 400 | 110 |
| Jul-00 | 80 | 80 | 80 | 80 |  | 400 | 150 |
| Aug-00 | 80 | 80 | 80 | 80 |  | 480 | 120 |
| Sep-00 | 100 | 100 | 100 | 120 |  | 520 | 120 |
| Oct-00 | 80 | 80 | 80 | 100 |  | 500 | 200 |
| Nov-00 | 80 | 80 | 80 | 80 |  | 480 | 160 |
| Dec-00 | 100 | 100 | 100 | 100 |  | 600 | 200 |
| TOTAL | 1040 | 1020 | 1020 | 1080 |  | 5220 | 1660 |

# Laborers Remittance Hours

## 2001

| | Ivory Ortiz | Jose Romero | Pedro Romero | Marcos Lima | Mario Parlera | Wilfredo Romero | Hector Castaneda | Subtotal | Kendal Ivan Moran |
|---|---|---|---|---|---|---|---|---|---|
| **2001** | SS# 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 | SS# 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 | SS# 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 | SS# 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 | SS# 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 | SS# 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 | SS# 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 | | SS# 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 |
| Jan-01 | 80 | 80 | 80 | 80 | 80 | 80 | 80 | 560 | 160 |
| Feb-01 | 80 | 80 | 80 | 80 | 80 | 80 | | 480 | 180 |
| Mar-01 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 600 | 200 |
| Apr-01 | 80 | 80 | 80 | 80 | 80 | 80 | 80 | 480 | 160 |
| May-01 | 80 | 80 | 80 | 80 | 80 | 80 | 80 | 480 | 160 |
| Jun-01 | 100 | 120 | 100 | 100 | 100 | 100 | 100 | 620 | 200 |
| Jul-01 | 80 | 160 | 80 | 80 | 80 | 80 | 80 | 560 | 160 |
| Aug-01 | 100 | 200 | 100 | 100 | 100 | 100 | 100 | 700 | 200 |
| Sep-01 | 80 | 160 | 80 | 80 | 80 | 80 | 80 | 560 | 160 |
| Oct-01 | 80 | 160 | 80 | 80 | 80 | 80 | 80 | 560 | 160 |
| Nov-01 | 100 | 200 | 100 | 100 | 100 | 100 | 100 | 700 | 200 |
| Dec-01 | 80 | 160 | 80 | 80 | 80 | 80 | 80 | 560 | 160 |
| **TOTAL** | 1040 | 1580 | 1040 | 1040 | 1040 | 1040 | 1040 | 6860 | 1920 |

## 2002

| | Ivory Ortiz | Jose Romero | Pedro Romero | Marcos Lima | Mario Parlera | Wilfredo Romero | Hector Castaneda | Subtotal | Kendal Ivan Moran |
|---|---|---|---|---|---|---|---|---|---|
| **2002** | SS# 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 | SS# 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 | SS# 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 | SS# 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 | SS# 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 | SS# 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 | SS# 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 | | SS# 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 |
| Jan-02 | 80 | 152 | 80 | 80 | 80 | 80 | 80 | 632 | 160 |
| Feb-02 | 80 | 160 | 80 | 80 | 80 | 80 | 80 | 640 | 160 |
| Mar-02 | 100 | 200 | 100 | 100 | 100 | 100 | 100 | 800 | 200 |
| Apr-02 | 80 | 152 | 80 | 80 | 80 | 80 | 80 | 632 | 160 |
| May-02 | 100 | 200 | 100 | 100 | 100 | 100 | 100 | 800 | 200 |
| Jun-02 | 80 | 144 | 80 | 80 | 80 | 80 | 80 | 624 | 160 |
| Jul-02 | 176 | 160 | 176 | 176 | 176 | 200 | 176 | 1384 | 160 |
| Aug-02 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 1400 | 160 |
| Sep-02 | 160 | 160 | 160 | 160 | 160 | 160 | 160 | 1120 | 160 |
| Oct-02 | 160 | 160 | 160 | 160 | 160 | 160 | 160 | 1120 | 160 |
| Nov-02 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 1400 | 200 |
| Dec-02 | 160 | 160 | 160 | 160 | 160 | 160 | 160 | 1120 | 160 |
| **TOTAL** | 1600 | 2168 | 1576 | 1576 | 1576 | 1600 | 1576 | 11072 | 2040 |

## 2003

| | Ivory Ortiz | Jose Romero | Pedro Romero | Marcos Lima | Mario Parlera | Wilfredo Romero | Hector Castaneda | Carlos Parlera | Jose Parlera | Manuel Parlera | Ubestrino Parlera | Francisco Parlera | Mario Gutierrez | Cesar Ortiz |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **2003** | SS# 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 | SS# 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 | SS# 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 | SS# 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 | SS# 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 | SS# 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 | SS# 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 | SS# 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 | SS# 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 | SS# 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 | SS# 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 | SS# 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 | SS# 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 | SS# 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 |
| Jan-03 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | | | | | | |
| Feb-03 | 160 | 160 | 160 | 160 | 160 | 160 | 160 | 160 | | | | | | |
| Mar-03 | 160 | 160 | 160 | 160 | 160 | 160 | 160 | 160 | | | | | | |
| Apr-03 | 160 | 160 | 160 | 160 | 160 | 160 | 160 | 160 | | | | | | |
| May-03 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | | | | | | |
| Jun-03 | 160 | 160 | 160 | 160 | 160 | 160 | 160 | 160 | | | | | | |
| Jul-03 | 160 | 160 | 160 | 160 | 160 | 160 | 160 | 160 | | | | | | |
| Aug-03 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | | | | | | |
| Sep-03 | 160 | 160 | 160 | 160 | 160 | 160 | 160 | 160 | | | | | | |
| Oct-03 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | | | | | | |
| **Subtotal** | 1760 | 1760 | 1760 | 1760 | 1760 | 1760 | 1760 | 1750 | 0 | | | | | |
| Nov-03 | 160 | 160 | 160 | 160 | 160 | 160 | 160 | 160 | 160 | 160 | 153 | 153 | 155.5 | 160 |
| Dec-03 | 160 | 156.5 | 157 | 160 | 157.5 | 151 | 151 | 157 | 154.5 | 154.5 | | | | |
| **TOTAL** | 2080 | 2076.5 | 2067.5 | 2080 | 2077.5 | 2071 | 2071 | 2077 | 154.5 | 154.5 | 160 | 153 | 155.5 | 160 |

7/8/2004 5:11 PM

# Laborers Remittance Hours

| | A | B | C | D | E | F | G | H | I | J | K | L | M | N | O |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 99 | 2004 | Nury Ortiz | Kendal Ivan Moran | Jose Romero | Pedro Romero | Marcos Lima | Mario Perlera | Wilfredo Romero | Hector Castaneda | Carlos Perlera | Jose Perlera | Manuel Perlera | Ubaldo Perlera | Francisco Perlera | Mario Gutierrez |
| 100 | | SS# 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 | SS# 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 | SS# 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 | SS# 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 | SS# 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 | SS# 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 | SS# 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 | SS# 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 | SS# 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 | SS# 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 | SS# 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 | SS# 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 | SS# 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 | SS# 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 |
| 101 | Jan-04 | 150 | 160 | 160 | 139.5 | 160 | 160 | 150.5 | 149 | 157.5 | 138 | 152 | 160 | 149.5 | 160 |
| 102 | Feb-04 | 160 | 160 | 160 | 144 | 160 | 160 | 159.5 | 159 | 159 | 159 | 160 | 160 | 159.5 | 160 |
| 103 | TOTAL | 310 | 320 | 320 | 283.5 | 320 | 320 | 318.5 | 308.5 | 316.5 | 297 | 312 | 320 | 309.5 | 308 |
| 104 | | | | | | | | | | | | | | | |

7/8/2004  5:11 PM

**Laborers Remittance Hours**



| | P | Q | R | S | T | U |
|---|---|---|---|---|---|---|
| 1 | **1998** | | | | | |
| 2 | Jan-98 | | | | | |
| 3 | Feb-98 | | | | | |
| 4 | Mar-98 | | | | | |
| 5 | Apr-98 | | | | | |
| 6 | May-98 | | | | | |
| 7 | Jun-98 | | | | | |
| 8 | Jul-98 | | | | | |
| 9 | Aug-98 | | | | | |
| 10 | Sep-98 | | | | | |
| 11 | Oct-98 | | | | | |
| 12 | Nov-98 | | | | | |
| 13 | Dec-98 | | | | | |
| 14 | TOTAL | | | | | |
| 15 | | | | | | |
| 16 | **1999** | | | | | |
| 17 | Jan-99 | | | | | |
| 18 | Feb-99 | | | | | |
| 19 | Mar-99 | | | | | |
| 20 | Apr-99 | | | | | |
| 21 | May-99 | | | | | |
| 22 | Jun-99 | | | | | |
| 23 | Jul-99 | | | | | |
| 24 | Aug-99 | | | | | |
| 25 | Sep-99 | | | | | |
| 26 | Oct-99 | | | | | |
| 27 | Nov-99 | | | | | |
| 28 | Dec-99 | | | | | |
| 29 | TOTAL | | | | | |
| 30 | | | | | | |
| 31 | **2000** | | | | | |
| 32 | Jan-00 | | | | | |
| 33 | Feb-00 | | | | | |
| 34 | Mar-00 | | | | | |
| 35 | Apr-00 | | | | | |
| 36 | May-00 | | | | | |
| 37 | Jun-00 | | | | | |
| 38 | Jul-00 | | | | | |
| 39 | Aug-00 | | | | | |
| 40 | Sep-00 | | | | | |
| 41 | Oct-00 | | | | | |
| 42 | Nov-00 | | | | | |
| 43 | Dec-00 | | | | | |
| 44 | TOTAL | | | | | |

7/8/2004 5:11 PM

**Laborers Remittance Hours**



| | P | Q | R | S | T | U |
|---|---|---|---|---|---|---|
| 49 | 2001 | | | | | |
| 50 | Jan-01 | | | | | |
| 51 | Feb-01 | | | | | |
| 52 | Mar-01 | | | | | |
| 53 | Apr-01 | | | | | |
| 54 | May-01 | | | | | |
| 55 | Jun-01 | | | | | |
| 56 | Jul-01 | | | | | |
| 57 | Aug-01 | | | | | |
| 58 | Sep-01 | | | | | |
| 59 | Oct-01 | | | | | |
| 60 | Nov-01 | | | | | |
| 61 | Dec-01 | | | | | |
| 62 | TOTAL | | | | | |
| 63 | | | | | | |
| 64 | 2002 | | | | | |
| 65 | Jan-02 | | | | | |
| 66 | Feb-02 | | | | | |
| 67 | Mar-02 | | | | | |
| 68 | Apr-02 | | | | | |
| 69 | May-02 | | | | | |
| 70 | Jun-02 | | | | | |
| 71 | Jul-02 | | | | | |
| 72 | Aug-02 | | | | | |
| 73 | Sep-02 | | | | | |
| 74 | Oct-02 | | | | | |
| 75 | Nov-02 | | | | | |
| 76 | Dec-02 | | | | | |
| 77 | TOTAL | | | | | |
| 78 | | | | | | |
| 79 | 2003 | Oscar Ortiz SS# 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 | Patrocinio Ortiz SS# 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 | Byron DeLeon SS# 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 | Subtotal | Randal Ivan Moran SS# 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 |
| 80 | Jan-03 | | | | 39022 | 200 |
| 81 | Feb-03 | | | | 38773 | 160 |
| 82 | Mar-03 | | | | 38601 | 160 |
| 83 | Apr-03 | | | | 38832 | 160 |
| 84 | May-03 | | | | 39142 | 200 |
| 85 | Jun-03 | | | | 38883 | 160 |
| 86 | Jul-03 | | | | 39021 | 160 |
| 87 | Aug-03 | | | | 39234 | 200 |
| 88 | Sep-03 | | | | 38665 | 160 |
| 89 | Oct-03 | | | | 39295 | 200 |
| 90 | Subtotal | | | | 12320 | 1760 |
| 91 | Nov-03 | 156 | 155.5 | 402.5 | 33448.5 | 160 |
| 92 | Dec-03 | 156 | 155.5 | 402.5 | 40436 | 160 |
| 93 | TOTAL | 156 | 155.5 | 402.5 | 92208.5 | 2080 |

| LANCO LABORERS PAYROLL 1998 (FBI) | | | | | | EXHIBIT 2 | |
| Name | Hours Worked | Hours Reported | Difference | Rate | Total | | Total* |
|---|---|---|---|---|---|---|---|
| Jose Aristedes Romero | 1748.5 | 865.5 | 883 | $ 8.70 | $ 7,682.10 | $ | 7,682.10 |
| Pedro Romero | 2150.5 | 1040 | 1110.5 | $ 8.70 | $ 9,661.35 | $ | 9,661.35 |
| Nery Ortiz | 2255 | 1040 | 1215 | $ 8.70 | $ 10,570.50 | $ | 10,570.50 |
| Marcos Lima | 1097 | | 1097 | $ 8.70 | $ 9,543.90 | $ | 9,543.90 |
| Mario Perlera | 2545.5 | | 2545.5 | $ 8.70 | $ 22,145.85 | $ | 22,145.85 |
| Hector Castaneda | 2749 | | 2749 | $ 8.70 | $ 23,916.30 | $ | 23,916.30 |
| Total Union Hours | 12545.5 | | | | | | |
| Wilfredo Romero | 2249.5 | | 2249.5 | $ 8.70 | $ 19,570.65 | Not in Union at this time* | |
| Roberto Castaneda | 947.5 | | 947.5 | $ 8.70 | $ 8,243.25 | Not in Union at this time | |
| Francisco Plietez | 2946 | | 2946 | $ 8.70 | $ 25,630.20 | Not in Union at this time | |
| Jose Aguilar (Guevara) | 283 | | 283 | $ 8.70 | $ 2,462.10 | Not in Union at this time | |
| Amilcar Rivera | 611 | | 611 | $ 8.70 | $ 5,315.70 | Not in Union at this time | |
| Hector Palma | 556 | | 556 | $ 8.70 | $ 4,837.20 | Not in Union at this time | |
| Andres Zepeda | 855.5 | | 855.5 | $ 8.70 | $ 7,442.85 | Not in Union at this time | |
| Total Non Union Hours | 8448.5 | | | | | | |
| TOTAL | 20,994.00 | 2,945.50 | 18,048.50 | | $ 157,021.95 | $ | 83,520.00 |

*According to Lanco

| LANCO LABORERS PAYROLL 1999 (FBI) | | | | | | EXHIBIT 3 | |
|---|---|---|---|---|---|---|---|
| Name | Hours Worked | Hours Reported | Difference | Rate | Total | Total* | |
| Jose Aristides Romero | 2108.5 | 1036.5 | 1072 | $ 8.70 | $ 9,326.40 | $ 9,326.40 | |
| Pedro Romero | 2139.5 | 1020 | 1119.5 | $ 8.70 | $ 9,739.65 | $ 9,739.65 | |
| Nery Ortiz | 2151.5 | 1020 | 1131.5 | $ 8.70 | $ 9,844.05 | $ 9,844.05 | |
| Marcos Lima | 1835 | 680 | 1155 | $ 8.70 | $ 10,048.50 | $ 10,048.50 | |
| Mario Perlera | 2153.5 | | 2153.5 | $ 8.70 | $ 18,735.45 | $ 18,735.45 | |
| Hector Castaneda | 2389 | | 2389 | $ 8.70 | $ 20,784.30 | $ 20,784.30 | |
| Wilfredo Romero | 1902.5 | | 1902.5 | $ 8.70 | $ 16,551.75 | $ 16,551.75 | |
| Total Union Hours | 14679.5 | | | | | | |
| | | | | | | | |
| Roberto Castaneda | 2456 | | 2456 | $ 8.70 | $ 21,367.20 | Not in Union at this time* | |
| Francisco Pliel62 | 1868.5 | | 1868.5 | $ 8.70 | $ 16,255.95 | Not in Union at this time | |
| Armando Ortiz | 2001.5 | | 2001.5 | $ 8.70 | $ 17,413.05 | Not in Union at this time | |
| Oscar Ortiz | 1839 | | 1839 | $ 8.70 | $ 15,999.30 | Not in Union at this time | |
| Mario II Gutierrez | 939.5 | | 939.5 | $ 8.70 | $ 8,173.65 | Not in Union at this time | |
| Jose Nunez | 300.5 | | 300.5 | $ 8.70 | $ 2,614.35 | Not in Union at this time | |
| Manuel Perlera | 211 | | 211 | $ 8.70 | $ 1,835.70 | Not in Union at this time | |
| Nery Ortiz Jr. | 283 | | 283 | $ 8.70 | $ 2,462.10 | Not in Union at this time | |
| Ismael Ortiz | 351.5 | | 351.5 | $ 8.70 | $ 3,058.05 | Not in Union at this time | |
| Manuel Martinez | 265 | | 265 | $ 8.70 | $ 2,305.50 | Not in Union at this time | |
| Samuel Umanzo | 45 | | 45 | $ 8.70 | $ 391.50 | Not in Union at this time | |
| Jose Monterosso | 321 | | 321 | $ 8.70 | $ 2,792.70 | Not in Union at this time | |
| Total Non Union Hours | 10881.5 | | | | | | |
| TOTAL | 25,561.99 ** | 3,756.50 | 21,804.50 | | $ 189,699.15 | $ 95,030.10 | |

*According to Lanco

** Should be 25,561.00

| LANCO LABORERS PAYROLL 2000 (FBI) | | | | | | EXHIBIT 4 |
|---|---|---|---|---|---|---|
| Name | Hours Worked | Hours Reported | Difference | Rate | Total | Total* |
| Jose Aristides Romero | 2074 | 1020 | 1054 | $ 9.45 | $ 9,960.30 | $ 9,960.30 |
| Pedro Romero | 2160.5 | 1040 | 1120.5 | $ 9.45 | $ 10,588.73 | $ 10,588.73 |
| Nery Ortiz | 2228.5 | 1040 | 1188.5 | $ 9.45 | $ 11,231.33 | $ 11,231.33 |
| Marcos Lima | 2716.5 | 1080 | 1636.5 | $ 9.45 | $ 15,464.93 | $ 15,464.93 |
| Mario Perlera | 2222 | | 2222 | $ 9.45 | $ 20,997.90 | $ 20,997.90 |
| Hector Castaneda | 2261 | 520 | 1741 | $ 9.45 | $ 16,452.45 | $ 16,452.45 |
| Wilfredo Romero | 1994.5 | 520 | 1474.5 | $ 9.45 | $ 13,934.03 | $ 13,934.03 |
| Total Union Hours | 15657 | | | | | |
| Roberto Castaneda | 832.5 | | 832.5 | $ 9.45 | $ 7,867.13 | Not in Union at this time* |
| C. Armando Ortiz | 501 | | 501 | $ 9.45 | $ 4,734.45 | Not in Union at this time |
| Oscar Ortiz | 508.5 | | 508.5 | $ 9.45 | $ 4,805.33 | Not in Union at this time |
| Mario II Gutierrez | 573.5 | | 573.5 | $ 9.45 | $ 5,419.58 | Not in Union at this time |
| Manuel Perlera | 569.5 | | 569.5 | $ 9.45 | $ 5,381.78 | Not in Union at this time |
| Oscar Armando Nunez | 291.5 | | 291.5 | $ 9.45 | $ 2,754.68 | Not in Union at this time |
| Karol Monsalve | 520 | | 520 | $ 9.45 | $ 4,914.00 | Not in Union at this time |
| Antonio Tejada | 137 | | 137 | $ 9.45 | $ 1,294.65 | Not in Union at this time |
| Jose Nunez | 267.5 | | 267.5 | $ 9.45 | $ 2,527.88 | Not in Union at this time |
| Total Non Union Hours | 4201 | | | | | |
| TOTAL | 19,858.00 | 5,220.00 | 14,638.00 | | $ 138,329.10 | $ 98,629.67 |

*According to Lanco

| LANCO LABORERS PAYROLL 2001 (FBI) | | | | | | EXHIBIT 5 |
| Name | Hours Worked | Hours Reported | Difference | Rate | Total | Total* |
|---|---|---|---|---|---|---|
| Jose Aristides Romero | 2138.75 | 1580 | 558.75 | $ 10.50 | $ 5,866.88 | $ 5,866.88 |
| Pedro Romero | 2234 | 1040 | 1194 | $ 10.50 | $ 12,537.00 | $ 12,537.00 |
| Nery Ortiz | 2226.5 | 1040 | 1186.5 | $ 10.50 | $ 12,458.25 | $ 12,458.25 |
| Marcos Lima | 2961.5 | 1040 | 1921.5 | $ 10.50 | $ 20,175.75 | $ 20,175.75 |
| Mario Perlera | 2277.5 | 1040 | 1237.5 | $ 10.50 | $ 12,993.75 | $ 12,993.75 |
| Hector Castaneda | 1811.5 | 80 | 1731.5 | $ 10.50 | $ 18,180.75 | $ 18,180.75 |
| Wilfredo Romero | 2118.5 | 1040 | 1078.5 | $ 10.50 | $ 11,324.25 | $ 11,324.25 |
| C. Armando Ortiz | 667.5 | | 667.5 | $ 10.50 | $ 7,008.75 | $ 7,008.75 |
| Oscar Ortiz | 681 | | 681 | $ 10.50 | $ 7,150.50 | $ 7,150.50 |
| Mario Gutierrez | 841 | | 841 | $ 10.50 | $ 8,830.50 | $ 8,830.50 |
| Manuel Perlera | 843.5 | | 843.5 | $ 10.59 | $ 8,856.75 | $ 8,856.75 |
| Jose Perlera | 812 | | 812 | $ 10.50 | $ 8,526.00 | $ 8,526.00 |
| Ubesindo Perlera | 826.5 | | 826.5 | $ 10.50 | $ 8,678.25 | $ 8,678.25 |
| Carlos Manuel Perlera | 630.5 | | 630.5 | $ 10.50 | $ 6,620.25 | $ 6,620.25 |
| Total Union Hours | 21070.25 | | | | | |
| | | | | | | |
| Francisco Plietez | 739 | | 739 | $ 10.50 | $ 7,759.50 | Not in Union at this time* |
| Jose Monterrosu | 739 | | 739 | $ 10.50 | $ 7,759.50 | Not in Union at this time |
| Jose Leonel Aguilar (Guevara) | 868.5 | | 868.5 | $ 10.50 | $ 9,119.25 | Not in Union at this time |
| Moises Parees | 367 | | 367 | $ 10.50 | $ 3,853.50 | Not in Union at this time |
| William Saldana | 195 | | 195 | $ 10.50 | $ 2,047.50 | Not in Union at this time |
| Jose Plietez | 549 | | 549 | $ 10.50 | $ 5,764.50 | Not in Union at this time |
| Gustavo Orellana | 545.5 | | 545.5 | $ 10.50 | $ 5,727.75 | Not in Union at this time |
| Miguel Rodriguez | 194.5 | | 194.5 | $ 10.50 | $ 2,042.25 | Not in Union at this time |
| Weneslao Ramirez | 140 | | 140 | $ 10.50 | $ 1,470.00 | Not in Union at this time |
| Tulio Reyes | 118 | | 118 | $ 10.50 | $ 1,239.00 | Not in Union at this time |
| Total Non Union Hours | 4455.5 | | | | | |
| TOTAL | 25,525.75 | 6,860 | 18,665.75 | | $ 195,990.38 | $ 149,207.63 |

*According to Lanco

| LANCO LABOERS PAYROLL 2002 (FBI) | | | | | | EXHIBIT 6 | |
|---|---|---|---|---|---|---|---|
| Name | Hours Worked | Hours Reported | Difference | Rate | Total | Total* | |
| Jose Aristides Romero | 2321.5 | 2168 | 153.5 | $ 10.80 | $ 1,657.80 | $ 1,657.80 | |
| Pedro Romero | 2348.5 | 1576 | 772.5 | $ 10.80 | $ 8,343.00 | $ 8,343.00 | |
| Nery Ortiz | 2485 | 1600 | 885 | $ 10.80 | $ 9,558.00 | $ 9,558.00 | |
| Marcos Lima | 3292 | 1576 | 1716 | $ 10.80 | $ 18,532.80 | $ 18,532.80 | |
| Mario Perlera | 2268 | 1576 | 692 | $ 10.80 | $ 7,473.60 | $ 7,473.60 | |
| Hector Castaneda | 2585.5 | 1576 | 1009.5 | $ 10.80 | $ 10,902.60 | $ 10,902.60 | |
| Wilfredo Romero | 2238.5 | 1600 | 638.5 | $ 10.80 | $ 6,895.80 | $ 6,895.80 | |
| C. Armando Ortiz | 2287 | | 2287 | $ 10.80 | $ 24,699.60 | $ 24,699.60 | |
| Oscar Ortiz | 2328.5 | | 2328.5 | $ 10.80 | $ 25,147.80 | $ 25,147.80 | |
| Mario Gutierrez | 2704.5 | | 2704.5 | $ 10.80 | $ 29,208.60 | $ 29,208.60 | |
| Jose Perlera | 2717 | | 2717 | $ 10.80 | $ 29,343.60 | $ 29,343.60 | |
| Ubesindo Perlera | 2653.5 | | 2653.5 | $ 10.80 | $ 28,657.80 | $ 28,657.80 | |
| Carlos Manuel Perlera | 2546.5 | | 2546.5 | $ 10.80 | $ 27,502.20 | $ 27,502.20 | |
| Manuel Perlera | 2285 | | 2285 | $ 10.80 | $ 24,678.00 | $ 24,678.00 | |
| Total Union Hours | 35061 | | | | | | |
| Francisco Plietez | 2292.5 | | 2292.5 | $ 10.80 | $ 24,759.00 | Not in Union at this time* | |
| Jose Monterrosu | 271 | | 271 | $ 10.80 | $ 2,926.80 | Not in Union at this time | |
| Jose Leonel Aguilar (Guevara) | 2731.5 | | 2731.5 | $ 10.80 | $ 29,500.20 | Not in Union at this time | |
| Gustavo Orellana | 700 | | 700 | $ 10.80 | $ 7,560.00 | Not in Union at this time | |
| Jose Plietez | 2782 | | 2782 | $ 10.80 | $ 30,045.60 | Not in Union at this time | |
| Miguel Rodriguez | 2459 | | 2459 | $ 10.80 | $ 26,557.20 | Not in Union at this time | |
| Weneslao Ramirez | 810.5 | | 810.5 | $ 10.80 | $ 8,753.40 | Not in Union at this time | |
| Tulio Reyes | 2776 | | 2776 | $ 10.80 | $ 29,980.80 | Not in Union at this time | |
| Bryon De Leon | 2414 | | 2414 | $ 10.80 | $ 26,071.20 | Not in Union at this time | |
| Oscar Martinez | 2389.5 | | 2389.5 | $ 10.80 | $ 25,806.60 | Not in Union at this time | |
| Regino Perlera | 154 | | 154 | $ 10.80 | $ 1,663.20 | Not in Union at this time | |
| Milton Granados | 1798.5 | | 1798.5 | $ 10.80 | $ 19,423.80 | Not in Union at this time | |
| Jose Amilcar Yones | 41 | | 41 | $ 10.80 | $ 442.80 | Not in Union at this time | |
| Crus Loras Guillen | 45.5 | | 45.5 | $ 10.80 | $ 491.40 | Not in Union at this time | |
| Osmin Guillen | 1791.5 | | 1791.5 | $ 10.80 | $ 19,348.20 | Not in Union at this time | |
| Daniel Pieltez | 1380.5 | | 1380.5 | $ 10.80 | $ 14,909.40 | Not in Union at this time | |
| Patrocinio Ortiz | 1347.5 | | 1347.5 | $ 10.80 | $ 14,553.00 | Not in Union at this time | |
| Jose Santos | 1123 | | 1123 | $ 10.80 | $ 12,128.40 | Not in Union at this time | |
| Fernando Brenes | 38.5 | | 38.5 | $ 10.80 | $ 415.80 | Not in Union at this time | |
| Johnny Ortiz | 619 | | 619 | $ 10.80 | $ 6,685.20 | Not in Union at this time | |
| Jose Lemus | 1768 | | 1768 | $ 10.80 | $ 19,094.40 | Not in Union at this time | |
| Antonio Rodriguez | 178 | | 178 | $ 10.80 | $ 1,922.40 | Not in Union at this time | |
| Carlos Arturo Gutierrez | 105 | | 105 | $ 10.80 | $ 1,134.00 | Not in Union at this time | |
| Total Non Union Hours | 30016 | | | | | | |
| TOTAL | 65,077.00 | 11,672.00 | 53,405.00 | | $ 576,774.00 | $ 252,601.20 | |

*According to Lanco

| LANCO LABORERS PAYROLL 2003 (FBI) | | | | | | EXHIBIT 7 |
|---|---|---|---|---|---|---|
| Name | Hours Worked | Hours Reported | Difference | Rate | Total | Total* |
| Jose Aristides Romero | 1701 | 1760 | -59 | $ 11.85 | -$699.15 | -$699.15 |
| Pedro Romero | 1597.5 | 1760 | -162.5 | $ 11.85 | -$1,925.63 | -$1,925.63 |
| Nery Ortiz | 1842.5 | 1760 | 82.5 | $ 11.85 | $ 977.63 | $ 977.63 |
| Marcos Lima | 3126.5 | 1760 | 1366.5 | $ 11.85 | $ 16,193.03 | $ 16,193.03 |
| Mario Perlera | 1746.5 | 1760 | -13.5 | $ 11.85 | -$159.98 | -$159.98 |
| Hector Castaneda | 1829.5 | 1760 | 69.5 | $ 11.85 | $ 823.58 | $ 823.58 |
| Wilfredo Romero | 1689.5 | 1760 | -70.5 | $ 11.85 | -$835.43 | -$835.43 |
| C. Armando Ortiz | 1601 | | 1601 | $ 11.85 | $ 18,971.85 | $ 18,971.85 |
| Oscar Ortiz | 1625.5 | | 1625.5 | $ 11.85 | $ 19,262.18 | $ 19,262.18 |
| Mario Gutierrez | 1860.5 | | 1860.5 | $ 11.85 | $ 22,046.93 | $ 22,046.93 |
| Jose Perlera | 1442 | | 1442 | $ 11.85 | $ 17,087.70 | $ 17,087.70 |
| Ubesindo Perlera | 1602.5 | | 1602.5 | $ 11.85 | $ 18,989.63 | $ 18,989.63 |
| Carlos Manuel Perlera | 1786 | | 1786 | $ 11.85 | $ 21,164.10 | $ 21,164.10 |
| Manuel Perlera | 1725 | | 1725 | $ 11.85 | $ 20,441.25 | $ 20,441.25 |
| Total Union Hours | 25175.5 | | | | | |
| Francisco Plietez | 1310.5 | | 1310.5 | $ 11.85 | $ 15,529.43 | Not in Union at this time* |
| Jose Monterrosu | 318.5 | | 318.5 | $ 11.85 | $ 3,774.23 | Not in Union at this time |
| Jose Leonel Aguilar (Guevara) | 1649.5 | | 1649.5 | $ 11.85 | $ 19,546.58 | Not in Union at this time |
| Jose Plietez | 1909 | | 1909 | $ 11.85 | $ 22,621.65 | Not in Union at this time |
| Miguel Rodriguez | 307 | | 307 | $ 11.85 | $ 3,637.95 | Not in Union at this time |
| Tulio Reyes | 954 | | 954 | $ 11.85 | $ 11,304.90 | Not in Union at this time |
| Bryon De Leon | 1625 | | 1625 | $ 11.85 | $ 19,256.25 | Not in Union at this time |
| Oscar Martinez | 1734 | | 1734 | $ 11.85 | $ 20,547.90 | Not in Union at this time |
| Milton Granado | 2054.5 | | 2054.5 | $ 11.85 | $ 24,345.83 | Not in Union at this time |
| Daniel Pleitez | 1805 | | 1805 | $ 11.85 | $ 21,389.25 | Not in Union at this time |
| Patrocinio Ortiz | 1835 | | 1835 | $ 11.85 | $ 21,744.75 | Not in Union at this time |
| Jose Santos | 1245.5 | | 1245.5 | $ 11.85 | $ 14,759.18 | Not in Union at this time |
| Fernando Brenes | 1919.5 | | 1919.5 | $ 11.85 | $ 22,746.08 | Not in Union at this time |
| Johnny Ortiz | 40 | | 40 | $ 11.85 | $ 474.00 | Not in Union at this time |
| Carlos Arturo Gutierrez | 2132.5 | | 2132.5 | $ 11.85 | $ 25,270.13 | Not in Union at this time |
| Alberto Monterroso | 266.5 | | 266.5 | $ 11.85 | $ 3,158.03 | Not in Union at this time |
| Total Non Union Hours | 21106 | | | | | |
| TOTAL | $ 46,281.50 | 12,320.00 | 33,961.50 | | $ 402,443.78 | $ 152,337.69 |

*According to Lanco

# MASSACHUSETTS LABORERS' DISTRICT COUNCIL

### of the Laborers' International Union of North America, AFL-CIO

7 Laborers' Way
Hopkinton, Massachusetts 01748
Fax (508) 435-7982

Hopkinton Telephones:
(508) 435-4164
(508) 435-4253



Boston Telephones:
(617) 969-4018
(617) 969-4019

June 9, 2005

The Honorable George A. O'Toole, Jr.
United States District Court for the District of Massachusetts
John Joseph Moakley U.S. Courthouse
1 Courthouse Way
Boston, MA 02210

Dear Judge O'Toole:

I write this letter in support of Carlos Gomez and his wife, Mary Gildea, who are the principals of Lanco Scaffolding, Inc.

I am the Business Manager for the Massachusetts Laborers District Counsel of the Laborers' International Union of North America (hereinafter referred to as the "Laborers"), which is the largest Union in the Commonwealth with approximately 21,000 active members. I am also the Chairman of the Delinquency Committee for the Laborers in this district. I am aware that Lanco, a union shop, maintained an under-the-table payroll for a period of years that resulted in the underpayment of benefits to the Laborers' Union. While I do not in any way condone Lanco's actions, I respectfully ask that Carlos and Mary be afforded the utmost leniency in determining their sentence because of the following facts.

<u>First</u>, based on my 30 years of experience in the industry and my understanding of the operations of Lanco from various sources, Carlos and Mary are indispensable to Lanco: Carlos is the public face of the business and does all of the employee training; and Mary performs all operations and administration. In my opinion, their incarceration would cause Lanco to close immediately.

<u>Second</u>, Carlos and Mary currently provide approximately 24 predominantly Spanish-speaking individuals with safe, well-paying jobs (seventeen of these employees are members of the Laborers Union; and 5 are members of the Carpenter's Union). Their employees, in turn, are able to support their families and are proud, productive members

of society. Lanco's closing would impose extraordinary hardship on these innocent employees and their families because they would immediately lose their jobs.

Third, by all accounts, Carlos has exceptional experience, knowledge and skill in the field. Many reputable, leading contractors throughout Massachusetts (e.g., Payton Construction Co., Shawmut Design and Construction and William A. Berry & Sons, Inc.) consider Lanco indispensable for difficult, challenging, large scale and/or specialized jobs. Lanco's closing would create a void in the industry and leave many contractors without a proven, reliable service provider.

Fourth, over the past 20 years, Lanco has trained dozens of employees in the highly specialized field of scaffolding. There are precious few employers today which, like Lanco, invest the time, effort and expense to train their employees. Lanco's closing would eliminate an important source of worker training.

Fifth, because of this training, Lanco has a truly exceptional safety record. The safe erection of scaffolding is important not only to Lanco's employees but also to all of the other trades (e.g. masons, iron workers, welders, electricians, plumbers, HVAC, and painters) that work in, on and around the scaffolding during a project. Lanco's closing could result in less-safe jobsites throughout the Commonwealth.

Sixth, Carlos and Mary are committed to making amends with the Laborers. Lanco has offered to repay all unpaid union benefits for their employees who were Laborers for a period of years to be determined and cooperate in an audit. Based on the information that I now have, this is a reasonable manner in which to hold Lanco responsible to the Laborers and will result in substantial restitution (over $400,000) to the Union. The Laborers are amenable to Lanco paying this amount out over time to facilitate repayment and to avoid further straining the business.

Seventh, but for this legal problem, Lanco is a stable company and is poised for substantial growth (and new hires) in the near future because of its backlog of work and the sustained demand for its services. The continued operation of Lanco benefits its employees, its customers, the community, and the Commonwealth in so many ways.

In sum, I believe that Carlos and Mary are good people who were caught up in a regrettable situation that is currently being remedied and that ought not bring down Lanco (a company that they worked tirelessly to build), separate them from their three children, and define them for the rest of their lives.

*The Honorable George A. O'Toole, Jr.*
*June 9, 2005*
*Page 2*


        If I can be of any further assistance, please do not hesitate to contact me at (508) 435-4164. Also, I would be available to testify on their behalf regarding the above issues, and/or any others to which I am familiar and that may be of assistance to the Court in this case.

        Thank you for your time and consideration.



                                        Sincerely,


                                        Paul J. McNally
                                        Business Manager



PJM/jmc



                                        Janet M Conlon signed on this day
                                        June 9, 2005 in
                                        Middlesex County

        JANET M. CONLON
        Notary Public
        Commonwealth of Massachusetts
        My Commission Expires
        February 5, 2010

July 7, 2005

The Honorable George A. O'Toole, Jr.
United States District Court
John Joseph Moakely U.S. Courthouse
1 Courthouse Way
Boston, MA 02210

Dear Judge O'Toole:

I write this letter (my second) in support of Carlos Gomez and his wife, Mary Gildea, who are the principals of Lanco Scaffolding, Inc. I previously submitted a letter dated June 9, 2005 addressed to your Honor setting forth certain very unique facts pertaining to Lanco and the Gomezes, which I respectfully asked this Court to consider in determining the appropriate sentence in this case.

As indicated in my previous letter to this Honorable Court, I am the Business Manager for the Massachusetts Laborers District Counsel of the Laborers' International Union of North America (hereinafter the "Laborers"). I have reviewed the letter of Daniel J. McGrath, CPA, dated July 7, 2005, wherein he states "the unpaid contributions for *Laborers' Union* members using the *adjusted rate* is $315,104.04", as well as the exhibits to that letter. I have also reviewed various spreadsheets that purportedly quantify the "loss" to the Laborers' Union as a result of Lanco's under-the-table payroll from 1998 through 2003 as $1,660,258.

While I understand how the latter figure ($1.6 million) was calculated, and that technically it may be correct, I respectfully suggest that the former number ($315,104.04) is a far more accurate barometer of the impact of Lanco's actions on the Union. I say this because the $315,104.04 figure accounts for two important facts: first, Laborers' Union is not responsible to Lanco's employees who were not members of the Union for any unpaid remittances; and second, even for those employees who were members of the Union, the Laborers are not responsible to them for a majority percentage of unpaid remittances (as explained in the letter of Thomas Masiello, Administrator of the Massachusetts Laborers' Benefit Funds, which was submitted to the Probation Office on May 12, 2005). Accordingly, I respectfully ask that $315,104.04 be considered the "loss" to the Union for the purpose of determining a sentence in this matter because this calculation appropriately backs-out remittances not due to non-Union members and the share attributable to uncollectible Health and Welfare and Annuity Funds.

In conclusion, it is my lay opinion that $315,104.04 is the far more appropriate measure of the seriousness of the offense in this case and is a much more just figure upon which to determine a sentence.

Thank you for your consideration and attention to this matter.

Sincerely,

Paul J. McNally
Business Manager

Exhibit K

## SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

This Settlement Agreement and Release of Claims ("Agreement") is made and entered into by and among Byron de Leon, Oscar M. Martinez ("the Plaintiffs"), Lanco Scaffolding, Inc., Carlos Gomez and Mary Gildea ("the Defendants") (collectively, the "Parties") as of September 27, 2005 ("Effective Date").

**WHEREAS**, the Plaintiffs have commenced a putative class action lawsuit against the Defendants in the Trial Court of the Commonwealth of Massachusetts, Middlesex Superior Court, entitled Byron de Leon, Oscar M. Martinez, and all others similarly situated v. Lanco Scaffolding, Inc., Carlos Gomez and Mary Gildea, Civil Action No. 05-2050 (the "Litigation"), alleging the Defendants violated M.G.L. ch. 149, § 27, M.G.L. ch. 151, § 1A and M.G.L. ch. 149, § 150 by (among other things) failing to pay the Plaintiffs and others similarly situated certain wages for all hours worked (these claims are collectively referred to hereinafter as the "Claims").

**WHEREAS**, Defendants denied all the allegations.

**WHEREAS**, the Litigation has not been certified as a class action.

**WHEREAS**, the Parties desire to settle this dispute and to have the Plaintiffs release the Defendants from all claims of every kind and nature which the Plaintiffs have or may have had

1

against the Defendants.

NOW, **THEREFORE**, in consideration of the promises and
covenants herein set forth, the Parties covenant and agree as
follows:

1.  The Defendants agree upon the execution and delivery of
    this Agreement to Defendants' counsel to deliver the
    following payments via certified or cashier's check:

    a.  thirty thousand dollars ($30,000.00) to Byron de Leon;

    b.  thirty thousand dollars ($30,000.00) to Oscar M.
        Martinez; and

    c.  twenty thousand dollars ($20,000.00), as Plaintiffs'
        attorneys' fees and expenses, to the firm of Pyle,
        Rome, Lichten, Ehrenberg & Liss-Riordan (the payments
        referred to in paragraphs 1(a)-(c) are hereinafter
        collectively referred to as the "Settlement Payment").

    d.  This Settlement Payment is made subject to terms
        provided in Paragraph 2(c).

2.  Plaintiffs agree as follows:

    a.  Upon receipt of payment of Settlement Payment in the
        manner set forth in Paragraph 1 of this Agreement, the
        Parties will execute and their counsel will file with
        the Court pursuant to Mass.R.Civ.P. 41(a) a
        Stipulation of Dismissal with prejudice and without
        costs, in the form attached as Exhibit A.

2

b.   Subject to receipt of payment of Settlement Payment in
     the manner set forth in Paragraph 1 of this Agreement,
     the Plaintiffs (Byron de Leon and Oscar M. Martinez),
     their predecessors, subsidiaries, affiliates, parent
     companies, officers, directors, shareholders,
     partners, joint ventures, agents, employees, servants,
     and their respective heirs and successors and assigns,
     hereby irrevocably and unconditionally remise,
     release, acquit, and forever discharge the Defendants
     (Lanco Scaffolding, Inc., Carlos Gomez and Mary
     Gildea), and any of their subsidiaries, affiliates,
     parent companies, officers, directors, shareholders,
     partners, joint ventures, agents, employees, servants,
     and their respective heirs and successors and assigns,
     from any and all claims, demands, debts, actions,
     causes of action, agreements, damages, and
     liabilities, if any, both in law and in equity, of any
     jurisdiction, foreign, or domestic, known or unknown,
     whether vicarious, derivative, or direct, which the
     Plaintiffs have or at any time heretofore may have had
     against the Defendants from the beginning of the world
     until the date of this Agreement, including without
     limiting the generality of the foregoing, any claims
     arising from or relating to the Plaintiffs' employment

3

with Lanco Scaffolding, Inc., or any other occurrence
to the date of this Agreement; any claims arising
under the Massachusetts Wage Act (M.G.L. ch. 149, §
148 et seq.); the Massachusetts Minimum Fair Wage and
Overtime Law (M.G.L ch. 151, § 1 et seq.); Title VII
of the Civil Rights Act of 1964, as amended; the Age
Discrimination in Employment Act of 1967, as amended;
The Equal Pay Act, as amended; the Employment
Retirement Income Security Act, as amended; the
Americans with Disabilities Act of 1990, as amended;
the Civil Rights Act of 1991, as amended; the Family
and Medical Leave Act, as amended; any claims under 42
U.S.C. §§ 1981, 12001; the Massachusetts Equal Rights
Act; and any claims arising under any statutory,
common law or other claims of any nature whatsoever;
and the Claims alleged or which could have been
alleged in the Litigation.

c.    If for any reason, the Release referred to in the
previous paragraph (Paragraph 2(b)) is deemed
unenforceable, in part or in whole, the Parties agree
that the Plaintiffs (and their attorneys) shall refund
the Settlement Payment to the Defendants in its
entirety, this Agreement shall be null and void, the
Parties shall withdraw the Stipulation and Order of

4

Dismissal with Prejudice, and the Litigation shall be reinstated in all respects as if the Agreement had not occurred.

3.   The Parties' release does not apply to any obligations arising hereunder.

4.   Neither the fact of this Agreement nor anything contained herein shall constitute or be construed as an admission of liability by any Party, and all Parties specifically acknowledge that it does not constitute such an admission.

5.   Each party has consulted with counsel of its choosing regarding the scope and contents of this Agreement.  Each party declares that his or its respective decision in executing this Agreement is not predicated on or influenced by any declaration or representation of the other party, except as expressly provided herein and that this Agreement constitutes the entire agreement between the Parties hereto and supersedes and replaces all prior negotiations and any proposed agreements.

6.   Each party to this Agreement represents that he, she or it has full power and authority to enter into and consummate the obligations contemplated hereby.  Each party warrants that no other person or entity, with the exception of a parent, subsidiary or affiliate of any party, has claimed or now claims any interest in the subject of the Agreement

and that it has the sole right and exclusive authority to
execute this Agreement and to receive the consideration
hereunder and, with the exception of a parent, subsidiary
or affiliate of any party, that it has not sold, assigned
or otherwise set over to any other person or entity, any
claim, lien, demand, cause of action, obligation, damage or
liability covered hereby.

7.  The Parties represent and warrant that they have not
assigned, transferred, pledged or otherwise granted an
ownership or security interest in any of the claims
asserted by them in the above-referenced litigation.

8.  Each party has cooperated in the drafting and preparation
of this Agreement.  Hence, if any construction is to be
made of this Agreement, the same shall not be construed
against any party based on the identity of the party
drafting the Agreement.

9.  This Agreement shall operate as a sealed instrument.

10. This Agreement shall be construed, interpreted and enforced
in accordance with the laws of the Commonwealth of
Massachusetts.  The Parties agree that the federal or state
courts located in Massachusetts shall have jurisdiction
over any dispute arising from this Agreement, and that any
action arising from the Agreement shall be brought in
Massachusetts.  Each party consents to personal

6

jurisdiction over it by such courts and to service of process.

11. This Agreement may be executed in multiple identical counterparts, each of which when duly executed shall be deemed an original, and all of which shall be construed together as one Agreement. The Parties may rely upon facsimile copies as if they were originals.

12. None of the terms or provisions of this Agreement may be changed, waived, modified, discharged, or terminated except by an instrument or instruments in writing executed by the party against whom or which enforcement of the change, waiver, modification, discharge or termination is asserted. None of the terms or provisions of this Agreement shall be deemed to have been abrogated or waived by reason of any failure or failures to enforce the same.

13. With the exception of the terms of Paragraph 2(b)-(c), the invalidity or unenforceability of any other provision in the Agreement shall not affect the validity or enforceability of any other provision of this Agreement and this Agreement shall be construed in all respects as if such invalid or unenforceable provision, if any, had never been in the Agreement.

14.  The provisions of this Agreement shall be binding upon, and

     shall inure to the benefit of, the Parties and their

     respective successors, assigns, heirs, agents, and

     representatives.

EACH PERSON SIGNING THIS SETTLEMENT AGREEMENT ATTESTS THAT HE OR
SHE HAS READ AND UNDERSTOOD THE AGREEMENT, INCLUDING THAT THE
AGREEMENT CONTAINS A RELEASE OF CLAIMS, HAS RECEIVED THE ADVICE
OF COUNSEL REGARDING ITS TERMS AND CONDITIONS, IS DULY
AUTHORIZED TO SIGN FOR THE PARTY THAT HE OR SHE PURPORTS TO
REPRESENT AND SIGNS THIS SETTLEMENT AGREEMENT AS HIS OR HER FREE
ACT AND DEED.

Signed under seal.

**Plaintiffs,**                              **Defendants,**


_Byron de Leon_
Byron de Leon                               Lanco Scaffolding, Inc.
Dated:  September 27, 2005                   Dated:  September __, 2005


_Oscar Martinez_
Oscar M. Martinez                           Mary Gildea
Dated:  September 27, 2005                   Dated:  September __, 2005


                                            Carlos Gomez
                                            Dated:  September __, 2005


146740

8

14. The provisions of this Agreement shall be binding upon, and

    shall inure to the benefit of, the Parties and their

    respective successors, assigns, heirs, agents, and

    representatives.

EACH PERSON SIGNING THIS SETTLEMENT AGREEMENT ATTESTS THAT HE OR
SHE HAS READ AND UNDERSTOOD THE AGREEMENT, INCLUDING THAT THE
AGREEMENT CONTAINS A RELEASE OF CLAIMS, HAS RECEIVED THE ADVICE
OF COUNSEL REGARDING ITS TERMS AND CONDITIONS, IS DULY
AUTHORIZED TO SIGN FOR THE PARTY THAT HE OR SHE PURPORTS TO
REPRESENT AND SIGNS THIS SETTLEMENT AGREEMENT AS HIS OR HER FREE
ACT AND DEED.

Signed under seal.

**Plaintiffs,**                              **Defendants,**

_____          _____
Byron de Leon                    Lanco Scaffolding, Inc.
Dated: September __, 2005         Dated: September __, 2005   10/4/05

_____          _____
Oscar M. Martinez                Mary Gildea
Dated: September __, 2005         Dated: September __, 2005   10/4/05

                                 _____
                                 Carlos Gomez
                                 Dated: September __, 2005   10/4/05

146740

8

COMMONWEALTH OF MASSACHUSETTS

Middlesex, ss.                          Superior Court
                                        Civil Action No. 05-2050

```
                                    )
BYRON de LEON, OSCAR                 )
M. MARTINEZ, and all others          )
similarly situated,                  )
                                     )
                Plaintiffs,          )
                                     )
v.                                   )
                                     )
LANCO SCAFFOLDING, INC.,             )
CARLOS GOMEZ AND                     )
MARY GILDEA,                         )
                                     )
                Defendants.          )
                                     )
```

## STIPULATION AND ORDER OF DISMISSAL WITH PREJUDICE

The Parties, Byron de Leon, Oscar M. Martinez, Lanco

Scaffolding, Inc., Carlos Gomez and Mary Gildea, stipulate that

this action is dismissed, **with prejudice** and without costs.


BYRON de LEON, OSCAR M. MARTINEZ,        LANCO SCAFFOLDING, INC.,
and all others similarly situated,       CARLOS GOMEZ and MARY GILDEA,

By their attorneys,                      by their attorneys,


_____                _____
Warren H. Pyle, BBO # 408400             Christopher J. Cunio, BBO #
Pyle, Rome, Lichten, Ehrenberg &         634518
Liss-Riordan, P.C.                       Barbara H. Chuang, BBO #
18 Tremont Street, Suite 500             660080
Boston, MA 02108                         COOLEY MANION JONES LLP
Tel: (617) 367-7200                      21 Custom House Street
                                         Boston, MA 02110
                                         Tel:  (617) 737-3100


Dated: September 29, 2005
148984v1

1

**EAST CAMBRIDGE SAVINGS BANK**

**TREASURER CHECK**

53-7041
2113

122167

Date September 27, 2005

Pay to the
Order of    **Byron DeLeon**

Amount $ ******30,000.00

Thirty Thousand and 00/100****************************************************** DOLLARS

Memo

Two signatures required over $50,000

⑈122167⑈ ⑊211370419⑊ ⑉300236 7⑈

---

**EAST CAMBRIDGE SAVINGS BANK**

**TREASURER CHECK**

53-7041
2113

122168

Date September 27, 2005

Pay to the
Order of    **Oscar M Martinez**

Amount $ ******30,000.00

Thirty Thousand and 00/100****************************************************** DOLLARS

Memo

Two signatures required over $50,000

⑈122168⑈ ⑊211370419⑊ ⑉300236 7⑈

---

**EAST CAMBRIDGE SAVINGS BANK**

**TREASURER CHECK**

53-7041
2113

122169

Date September 27, 2005

Pay to the
Order of    *Pyle,Rome,Lichten,Ehrenberg & Liss-Riordan***

Amount $ ******20,000.00

Twenty Thousand and 00/100****************************************************** DOLLARS

Memo

Two signatures required over $50,000

⑈122169⑈ ⑊211370419⑊ ⑉300236 7⑈

# Exhibit L

# Frederick K. Funk
Attorney at Law
24 Polly Drummond Hill Road
Newark, DE 19711
302-368-6233
Fax: 302-368-6238

March 7, 2003

Ms. Graceann M. Gildea
2 Hialeah Court
Wilmington, DE 19808

RE:   Our file: S-03-85

Dear Ms. Gildea:

Enclosed please find original Deed to you from Mary E. Gildea, Trustee of 2 Hialeah Court Realty Trust, dated the 28th of January, 2003, and recorded in the Office of the Recorder of Deeds in and for New Castle County, State of Delaware, in Mortgage Instrument 20030130-0013086.

Very truly yours,

Frederick K. Funk
Attorney at Law

FKF/llw
Enclosure

20030130-0013086
Pages: 2    F: $27.00
01/30/03 01:45:55 PM
T20030058929
Michael E. Kozikowski
New Castle Recorder    DEE

TAX MAP #08-031.10-168
Prepared by and return to:
Frederick K. Funk, Esquire
24 Polly Drummond Hill Road
Newark, DE 19711
File No. S-03-85

**THIS DEED**, made this 28th day of January, 2003,

## BETWEEN

Mary E. Gildea, Trustee of 2 Hialeah Court Realty Trust, of *Middlesex County,* Massachusetts, party of the first part,

## AND

Graceann M. Gildea ,of New Castle County, Delaware. party of the second part.

## WITNESSETH:

That the said party of the first part, for and in consideration of the sum of Two Hundred Thirty Five Thousand Dollars and 00/100 ($235,000.00), lawful money of the United States of America, the receipt whereof is hereby acknowledged, hereby grants and conveys unto the said party of the second part, as sole owner, and her heirs and assigns, in fee simple, the following-described lands, situate, lying and being in New Castle County, State of Delaware:

ALL that certain lot, piece or parcel of land, with the dwelling thereon erected, known as 2 Hialeah Court, situate in Mill Creek Hundred, New Castle County and State of Delaware, being Lot No. 661, as shown on the Record major Land Development Plan of Phase 10, Limestone Hills, as said Plan is of record in the Office of the Recorder of Deeds in and for New Castle County, Delaware, in Microfilm no. 8782, and being more particularly bounded and described in accordance with a recent survey prepared by East Coast Survey dated January 2003, as follows, to-wit:

BEGINNING at a point on the northeasterly side of Hialeah Court, at 50 feet wide, said point being the northwesterly end of a 25 foot radius junction curve joining the said northeasterly side of Hialeah Court with the northwesterly side of Steeplechase Circle, at 50 feet wide; thence from said point of beginning along the said northeasterly side of Hialeah Court by a curve to the right having a radius of 125 feet in a northwesterly direction an arc distance of 52.36 feet to a corner for Lot No. 662; thence thereby and passing. in part, through the party wall of the building on this lot and the building adjoining on the northeast, South 81 degrees 1 minute 51 seconds East, 138.94 feet to a point in line of Lot No. 132; thence thereby, in part, along Lot No. 131, in part, and along the easterly side of a 20 foot wide drainage easement, South 13 degrees 30 minutes 00 seconds West 60.71 feet to a point on the northeasterly side of said Steeplechase Circle; thence along the said northeasterly side and the said northwesterly side of Steeplechase Circle by a curve to the left having the radius of 280 feet in a westerly direction an arc distance of 93.63 feet to the point of reverse curvature of the previously mentioned 25 feet radius junction curve joining the said northwesterly side of Steeplechase Circle with the said northeasterly side of Hialeah Court; thence by said 25 feet radius junction curve to the right in a northwesterly direction an arc distance of 39.27 feet to the point of compound curvature of said curve, the point and place of Beginning. Containing within said described metes and bounds 0.19 acres of land be the same more or less.

SUBJECT to Restrictions as recorded in the Office aforesaid in Deed Record E, Volume 112, Page 112; Deed Record G, Volume 116, Page 310; Deed Record U, Volume 123, Page 293; Deed Record O, Volume 117, Page 68; Deed Record L, Volume 121, Page 16; Deed Record Y, Volume 124, Page 265; Deed Book 453, Page 219 and Deed Book 453, Page 235.

SUBJECT to Utility Agreements with Delmarva Power and Light Company, recorded in the Office aforesaid, in Deed Book 340, Page 340; Deed Record N, Volume 123, Page 49; Deed Record

SUBJECT to Utility Agreement with Diamond State Telephone Company, recorded in the Office aforesaid in Deed Record Z, Volume 122, Page 107.

SUBJECT to Agreements with New Castle County as recorded in the Office aforesaid, in Deed Record I, Volume 82, Page 135; Deed Record H, Volume 123, Page 106; Deed Book 420, Page 60; Deed Book 598, Page 63 and Deed Book 696, Page 316.

SUBJECT to Agreements with Levy Court of New Castle County as recorded in the Office aforesaid in Deed Record N, Volume 76, Page 84; Deed Record E, Volume 77 Page 57; Deed Record O, Volume 77, Page 553.

SUBJECT to Maintenance Agreements as recorded in the Office aforesaid in Deed Record O, Volume 117, page 87 and Deed Record O, Volume 117, page 85.

BEING the same lands and premises which were conveyed unto Mary E. Gildea, Trustee of 2 Hialeah Court Realty Trust by deed of Mary Gildea dated June 5, 2001 and recorded in the Office of the Recorder of Deeds in and for New Castle County and State of Delaware in Deed Instrument 20010621-0048727.

IN WITNESS WHEREOF, the party of the first part has set her hand and seal the day and year first above written.

Signed, Sealed and Delivered
in the presence of:

_____ (SEAL)
Mary E. Gildea, Trustee of 2 Hialeah Court
Realty Trust

STATE OF M A S S

COUNTY OF M I D D L E S E X : ss.

BE IT REMEMBERED, that on January 2 , 2003, personally came before me, the subscriber, Mary E. Gildea, Trustee of 2 Hialeah Court Realty Trust, party of the first part to this Indenture, known to me personally to be such, and acknowledged this Indenture to be her act and deed.

GIVEN under my Hand and Seal of Office the day and year aforesaid.

_____
Notary Public
Printed Name: _____
My commission expires _____

Grantee's Mailing Address
2 Hialeah Court
Wilmington, DE 19808

ALLEN C. EIGENSTEIN
Notary Public, Massachusetts
My Commission Expires January 21, 2005